Julie C. Erickson, State Bar No. 293111 (julie@eko.law)
Elizabeth A. Kramer, State Bar No. 293129 (elizabeth@eko.law)
Kevin M. Osborne, State Bar No. 261367 (kevin@eko.law)
**ERICKSON KRAMER OSBORNE LLP**
959 Natoma Street
San Francisco, CA 94103
Phone: 415-635-0631
Fax: 415-599-8088

*Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JANE DOE 1, individually and on behalf of others similarly situated,<br><br>　　　　Plaintiff,<br><br>vs.<br><br>UNITED STATES OF AMERICA and GOOGLE LLC,<br><br>　　　　Defendants. | Case No.: 5:26-cv-02624<br><br><br>CLASS ACTION COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES, AND DEMAND FOR JURY TRIAL |

CLASS ACTION COMPLAINT FOR INJUNCTIVE RELIEF　　　　Case No.: 5:26-cv-02624
AND DAMAGES, AND DEMAND FOR JURY TRIAL

Plaintiff JANE DOE 1 ("Plaintiff"), on behalf of herself and others similarly situated ("the Class"), bring this action against Defendants UNITED STATES OF AMERICA ("United States") and GOOGLE LLC ("Google") (collectively, "Defendants") for injunctive relief, for actual damages suffered by Plaintiff and the Class, and for other recovery specified herein, and alleges upon information and belief, except as to her own actions, the investigation of her counsel, and the facts that are a matter of public record, as follows:

## INTRODUCTION

1.      This is a class action for injunctive relief and damages arising from the wrongful disclosure and republication of victim-identifying information of Jeffrey Epstein's sexual abuse survivors.

2.      In late 2025 and early 2026, the United States Department of Justice ("DOJ") outed approximately 100 survivors of the convicted sexual predator, publishing their private information and identifying them to the world. Even after the government acknowledged the disclosure violated the rights of the survivors and withdrew the information, online entities like Google continuously republish it, refusing victim's pleas to take it down.

3.      Survivors now face renewed trauma. Strangers call them, email them, threaten their physical safety, and accuse them of conspiring with Epstein when they are, in reality, Epstein's victims.

4.      Plaintiff brings this action individually and on behalf of a class of all Jeffrey Epstein survivors whose personally identifying information ("PII") was wrongfully disclosed in the recent federal document releases. Plaintiff brings claims under the Privacy Act of 1974, 5 U.S.C. § 552a, against the United States.

5.      Plaintiff further brings this action for damages and to enjoin Google, which continues to display Plaintiff and Class members' PII in search results and AI-generated content, despite having actual knowledge of the unauthorized and unlawful nature of the disclosure and the severe harm to Plaintiff and Class members, who are crime victims entitled to privacy protections under federal and state law.

CLASS ACTION COMPLAINT FOR INJUNCTIVE RELIEF          Case No.: 5:26-cv-02624
AND DAMAGES, AND DEMAND FOR JURY TRIAL

1

6.      As a direct and proximate result of Defendants' actions, Plaintiff and Class members have suffered severe emotional distress, reputational harm, invasion of privacy, harassment, threats to their physical safety, economic losses, and other compensable damages.

7.      This action is properly maintainable as a class action under Federal Rule of Civil Procedure 23(a) and 23(b)(3), and under Rule 23(b)(2), as each Defendant's course of conduct gives rise to common claims among Plaintiff and Class members and presents common questions of law and fact, and Plaintiff will fairly and adequately represent the Class.

## JURISDICTION AND VENUE

8.      This action is brought against the United States government under the Privacy Act of 1974, 5 U.S.C. § 552a for monetary damages and under California constitutional, statutory, and common law claims for equitable relief and monetary relief.

9.      This Court has subject matter jurisdiction over Plaintiff's Privacy Act claims against the United States pursuant to 5 U.S.C. § 552a(g)(1)(D) and 28 U.S.C. § 1331.

10.     This Court has supplemental jurisdiction over Plaintiff's state-law claims against Defendant Google pursuant to 28 U.S.C. § 1367(a), as they arise from the same case or controversy as Plaintiff's federal question claims.

11.     This Court has personal jurisdiction over United States pursuant to the Privacy Act's waiver of sovereign immunity, 5 U.S.C. § 552a(g).

12.     This Court has personal jurisdiction over Defendant Google, which is headquartered in California, maintains substantial and continuous contacts with California, conducts extensive business in this District, maintains servers and operations in California, and the tortious conduct at issue was directed at and caused harm to a California resident within this District.

13.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) and (e), as Plaintiff resides in California. The principle place of business of Defendant Google is within this District. All or a substantial part of the events giving rise to Plaintiff's claims occurred in this District, including Google's design, policy approval, and deployment of the features that exposed Plaintiff's PII, and the online publication of Plaintiff's PII by Google.

## THE PARTIES

### Plaintiff and the Class

14.    Plaintiff Jane Doe 1 is a natural person and a resident of California. Plaintiff is a survivor of sexual abuse perpetrated by Jeffrey Epstein. Plaintiff proceeds pseudonymously to protect her identity and privacy interests, which are the subject of this litigation. Plaintiff will move for leave to proceed under pseudonym pursuant to Fed. R. Civ. P. 10(a) and the factors articulated in *Does I thru XXIII v. Advanced Textile Corp.*, 214 F.3d 1058 (9th Cir. 2000).

15.    Plaintiff brings this action individually and as the representative of a class of others similarly situated pursuant to Federal Rule of Civil Procedure 23. Plaintiff's claims are typical of the claims of the Class members, and Plaintiff will fairly and adequately represent the interests of the Class.

### Defendants

16.    Defendant United States is sued pursuant to the Privacy Act of 1974, 5 U.S.C. § 552a(g), which waives sovereign immunity for certain Privacy Act violations. The DOJ is a component of the United States and is responsible for the collection, maintenance, and disclosure of records in federal systems of records related to the Epstein investigation and prosecutions. The DOJ is responsible for publications of Epstein survivors' PII that took place in December 2025 and January 2026.

17.    Defendant Google is a Delaware limited liability company with its principal place of business at 1600 Amphitheatre Parkway in Mountain View, California. Google operates the world's predominant internet search engine through its primary website (http://google.com), artificial intelligence search tool (Google AI Mode), and web-indexing and caching systems. The Google website republished and continues to index and host information derived from the records related to the Epstein investigation that were initially released by the DOJ. Google controls the content of the Google website and is responsible for the content it generates and publishes, including all content it generates and publishes containing the PII of Jeffrey Epstein survivors. Google conducts substantial business in this District.

# FACTUAL ALLEGATIONS

**Plaintiff and Class Members' Status as Epstein Survivors**

18.    Jeffrey Epstein was a convicted sex offender who operated a decades-long scheme of sexual abuse and trafficking of minor girls and young women. Epstein died in federal custody in August 2019 while awaiting trial on federal sex-trafficking charges in *United States v. Jeffrey Epstein*, 19-cr-490 (RMB) (S.D.N.Y.).

19.    Plaintiff Jane Doe 1 and Class members are survivors of sexual abuse perpetrated by Jeffrey Epstein. Their identities as Epstein survivors are deeply private matters involving the most sensitive and intimate details of their personal histories.

20.    Plaintiff and Class members have identified themselves or were otherwise identified to the United States government as Epstein victims. Plaintiff and Class members' identities and personally identifiable information must be protected from public disclosure under federal law, including the Privacy Act, 5 U.S.C. § 552a; the Crime Victims' Rights Act, 18 U.S.C. § 3771; and other state and federal victim-protection, constitutional provisions, and common-law privacy protections and data-security requirements.

**The Government's Unlawful Disclosure**

21.    From on or about December 19, 2025 until January 30, 2026, pursuant to the Epstein Files Transparency Act and in response to Freedom of Information Act (FOIA) requests and congressional demands, the DOJ and other federal agencies undertook several massive public releases of unredacted records related to the investigation into Jeffrey Epstein's criminal conduct.

22.    These releases included millions of pages of investigative files, victim statements, witness interviews, correspondence, and other materials posted on a publicly accessible DOJ website and transmitted to Congress.

23.    After the January 30, 2026 release, the United States acknowledged for the first time that it had released several thousand pages of unredacted records revealing the personally identifiable information of Epstein's survivors, including Plaintiff and Class members.

CLASS ACTION COMPLAINT FOR INJUNCTIVE RELIEF                Case No.: 5:26-cv-02624
AND DAMAGES, AND DEMAND FOR JURY TRIAL

24.    As a result, Plaintiff and Class members' PII, including some combination of their full names, telephone numbers, email addresses, cities of residence, occupations, and photographic images, were disclosed publicly in unredacted documents released by the DOJ.

25.    The United States claimed the disclosure of Plaintiff and the Class members' PII was caused by "human errors," "technical errors," and "quality control measures" being "hampered" by limitations of their document review platform. *United States v. Jeffrey Epstein United States v. Jeffrey Epstein*, 19-cr-490 (RMB) (S.D.N.Y.), Dkt. 105 at p. 5.

26.    United States governmental agencies are required to comply with the Privacy Act and are subject to civil remedies when they fail to comply. An agency violates the Privacy Act when it discloses records contained in a system of records without the written consent of the individual to whom the record pertains, subject to certain exceptions. 5 U.S.C. § 552a(b).

27.    A "systems of records," as defined by the Privacy Act, is "a group of any records under the control of any agency from which information is retrieved by the name of the individual or by some identifying number, symbol, or other identifying particular assigned to the individual." 5 U.S.C. § 552a(a)(5). Plaintiff and Class members' PII was contained among a group of records that were under the control of the DOJ and related law enforcement agencies. These agencies used victims' PII, such as their names, victim IDs, phone numbers, email addresses, etc., to retrieve victims' information from within such systems as the Major Crimes Division Investigative Files, Criminal Case Files, and other victim/witness files. This constituted a "system of records" subject to the protections of 5 U.S.C. § 552a.

28.    The DOJ released Plaintiff and the Class members' PII without permission or justification. No victim was consulted prior to the release and no authorization was requested, let alone granted. The DOJ's disclosure of the victims' PII was, therefore, a violation of subsection (b) of the Privacy Act.

29.    No exception to the Privacy Act's prohibition on disclosure without consent applied to the release of Plaintiff's and Class members' PII. In particular, the disclosure was not required under FOIA, as FOIA Exemption 6 (5 U.S.C. § 552(b)(6)) and Exemption 7(C) (5 U.S.C. § 552(b)(7)(C)) protect against unwarranted invasions of personal privacy, particularly for crime

CLASS ACTION COMPLAINT FOR INJUNCTIVE RELIEF          Case No.: 5:26-cv-02624
AND DAMAGES, AND DEMAND FOR JURY TRIAL

5

victims. The disclosure was not covered by any "routine use" published in the Federal Register. No court order compelled disclosure of Plaintiff or Class members' unredacted identifying information. To the contrary, Congress expressed an intent to withhold the PII of sexual abuse survivors in the Epstein Files Transparency Act, specifically referring to the disclosure of victim PII as "a clearly unwarranted invasion of personal privacy." 139 STAT. 656 § (c)(1)(A).

30.     Several Epstein survivors complained to the U.S. District Court for the Southern District of New York and the Department of Justice in February 2026 that their names and personal information had been improperly disclosed in the document releases. Despite these complaints, the United States has failed to adequately remediate the prior disclosures. While it removed the improperly redacted files from its own website, it is aware that the unredacted documents remain available on publicly available websites, including those hosted and maintained by Defendant Google, and it has done nothing to demand their removal.

31.     In February 2026, Judge Richard M. Berman of the Southern District of New York held hearings in *United States v. Jeffrey Epstein*, 19-cr-490 (RMB) (S.D.N.Y.), regarding the improper disclosure of victims' identities and directed the government to take corrective action. On February 5, 2026, DOJ officials reported to Judge Berman that the Department had retracted no less than 9,500 documents from public access. Notwithstanding this retraction, Plaintiff and Class members' PII remained publicly accessible and continued to be republished by third parties, including Google.

**The Government's Disclosure Was Intentional or Willful**

32.     While the United States has claimed the disclosure of victim-identifying information was "inadvertent," the disclosures at issue were intentional or willful within the meaning of 5 U.S.C. § 552a(g)(4).

33.     The United States, acting through the DOJ, made a deliberate policy choice to prioritize rapid, large-volume disclosure over protection of Epstein survivors' privacy. Attorney General Pamela Bondi publicly committed that the Department was "following through on President Trump's commitment to transparency and lifting the veil on the disgusting actions of Jeffrey Epstein and his co-conspirators," signaling that speed and breadth of disclosure were paramount

CLASS ACTION COMPLAINT FOR INJUNCTIVE RELIEF           Case No.: 5:26-cv-02624
AND DAMAGES, AND DEMAND FOR JURY TRIAL

6

goals, even in the face of obvious risks to crime victims whose identities were embedded throughout the files.

34.    Similarly, FBI Director Kash Patel declared that under his leadership "we will bring everything we find to the DOJ to be fully assessed and transparently disseminated to the American people as it should be," reinforcing an institutional focus on maximal disclosure of "everything" rather than a careful, victim-centered approach that scrubbed personally identifying information from public releases.

35.    Consistent with these directives, the DOJ proceeded to dump millions of pages of Epstein-related records online from December 2025 to January 2026 in reckless disregard of Plaintiff's and other survivors' statutory privacy rights. These disclosures occurred with inadequate review and redaction protocols. For example:

    a.    DOJ's redactions were inconsistent and incomplete, indicating that coherent criteria for imposing redactions was either not properly established, not properly applied, or both;

    b.    DOJ relied on prior third-party redactions imposed by other government agencies or by private litigants, which were accepted as-is, revealing that DOJ failed to independently assess and screen for victim identifiers in legacy materials;

    c.    DOJ used superficial black boxes instead of permanent redaction tools that remove underlying data, such that by simply copying and pasting text from the PDF into a plain text editor, the supposedly redacted sections became visible;

    d.    DOJ did not "sanitize" or delete all metadata from files, meaning metadata containing sensitive information (such as file properties that contain original text from the document) remained accessible despite redactions on the face of the documents;

    e.    DOJ imposed partial redactions such that survivor PII could be easily reconstructed by reference to multiple documents where portions were left visible;

    f.    Entire tranches of foreign-language documents and files that were technically incompatible with DOJ's software were simply not reviewed at all for victim-identifying information; and

g.   The FBI had, for an extended period, failed even to disclose the existence of thousands of pages of files housed in the New York field office to DOJ, notwithstanding direct requests from DOJ leadership, underscoring that the process was not only operationally porous at the review stage but structurally unreliable at the front-end identification stage and ill-suited to deliver the level of victim-privacy protection DOJ represented to Congress.

36.     In a January 30, 2026 letter to Congress, Deputy Attorney General Todd Blanche confirmed several of the protocol flaws described above, explaining that it was "releasing the over 3 million responsive pages, including more than 2,000 videos and 180,000 images" and that it "erred on the side of over-collecting materials from various sources to best ensure maximum transparency […]." In the same letter, Mr. Blanche told Congress that the DOJ's document identification process "was substantially manual and iterative," that it was constrained by "the capabilities and limitations of its document management systems," and that it continually updated its protocol and FAQs "as the Department learned more about the scope and type of potentially responsive materials [and] the various types of information that could identify victims." Despite this awareness of both the sensitivity of victim-identifying information and the limitations of its review tools, DOJ chose to "over-collect" from six different investigative sources and then publicly release millions of pages and hundreds of thousands of images and videos in a compressed timeframe.

37.     The public statements above, viewed together with DOJ's subsequent document-dump, demonstrate that the United States intentionally prioritized volume and speed of public disclosure over the safety and privacy of Epstein survivors, adopting a *release now, retract later* approach that made unlawful disclosures of victim PII not merely foreseeable, but inevitable.

38.     Plaintiff alleges that this self-described priority of "maximum transparency" and mass release, coupled with the decision to proceed despite known limitations of the document-management and review systems reflects an intentional and willful policy choice that subordinated victims' privacy to political and public-relations goals. This was especially egregious given the extreme sensitivity of the material involved and the well-documented

CLASS ACTION COMPLAINT FOR INJUNCTIVE RELIEF          Case No.: 5:26-cv-02624
AND DAMAGES, AND DEMAND FOR JURY TRIAL

publicity circus surrounding the underlying Epstein investigation. Any agency preparing to release such sensitive material would necessarily be aware that a haphazard over-disclosure would flagrantly disregard the legally mandated protection of the victims' privacy.

39.    Plaintiff alleges that DOJ's choice to move forward under these conditions, knowing its systems could not reliably detect and redact all victim PII, was intentional or willful within the meaning of 5 U.S.C. § 552a(g)(4).

40.    Plaintiff additionally alleges that the government's conduct is indicative of retaliatory motives behind the release of victim PII. Plaintiff is informed and believes, and on that basis alleges, that DOJ officials recognized that the Epstein Files Transparency Act and the intense public and political pressure for disclosure were driven in substantial part by a small but vocal group of survivors who demanded the release of the files to expose the breadth of Epstein's criminal enterprise.

41.    In this context, DOJ's decision to proceed with a massive, improperly redacted release constituted, at minimum, a willful and deliberate indifference to survivors' privacy and, at worst, a punitive response to survivors' public advocacy for transparency, effectively "doxxing" victims who spoke out by exposing their identities and contact information.

42.    Several victims, speaking with media outlets, stated as much, calling the release "a calculated attempt to intimidate survivors," and stating, "I don't think this is just about rushing to get this information out. It feels like they want us to give up on transparency."

43.    Further evidence of the government's retaliatory motives is revealed by the fact that the government is aware that victim-identifying records remain in the public domain on websites hosted and maintained by platforms like Google, but has done nothing to force these entities to take down the material. This refusal to act indicates that decision makers within the government want the victims' PII to be public.

44.    Even if individual attorney or contractor redaction errors were not specifically intended to reveal Plaintiff and Class member information, the decision to launch a 3.5-million-page public release on an accelerated timeline, under Director Mr. Patel's banners of "no cover-ups," "no withholdings," and "no stone left unturned," without adequate safeguards to prevent the exposure

CLASS ACTION COMPLAINT FOR INJUNCTIVE RELIEF                Case No.: 5:26-cv-02624
AND DAMAGES, AND DEMAND FOR JURY TRIAL

of victim identities, was an intentional and willful act within the meaning of 5 U.S.C. § 552a(g)(4). The United States knowingly created and executed a disclosure process in which the unlawful release of survivors' PII was a near certainty, and then implemented a remediation model where they would simply remove it later if someone complained, rather than honoring its statutory obligation to prevent such disclosures in the first place.

45.     After survivors notified DOJ that their PII had appeared in the DOJ release, the Department responded by stating it had taken down thousands of documents from the public site already, confirming that the Department proceeded with the initial release despite knowing that its redaction protocols were inadequate and that victim-identifying information remained embedded in the records. Proceeding with the release under those conditions, and only belatedly withdrawing a subset of documents once publicly exposed, further shows an intentional or willful disregard for Plaintiff's rights under the Privacy Act, rather than innocent human error or technical mistake.

46.     In light of top officials' public commitments to "transparently disseminat[e]" "everything" about Epstein, DOJ's repeated assurances to Congress and the public that it was "lifting the veil" on Epstein's crimes, and the Department's decision to prioritize rapid disclosure over robust pre-release redactions, Plaintiff alleges that Defendant United States' unlawful release of her and the Class members' PII was the product of an intentional, high-level policy choice that subordinated survivor privacy to political and public-relations goals. The Department willfully disregard of the substantial risk that its chosen disclosure process would expose the identities and contact information of Epstein survivors, including Plaintiff.

**Google's AI Mode Generates Content that Enables Anyone to Contact Victims**

47.     Google operates the world's predominant internet search engine, which indexes, caches, and displays web content from across the internet. Google's search results and cached pages are accessed billions of times daily worldwide.

48.     Google AI Mode is an enhanced search experience where Google's AI breaks a user's query into sub-questions, runs many related searches in parallel, and then generates a single, conversational answer as unique, Google-created content.

CLASS ACTION COMPLAINT FOR INJUNCTIVE RELIEF        Case No.: 5:26-cv-02624
AND DAMAGES, AND DEMAND FOR JURY TRIAL

10

49. Following the DOJ's public release of unredacted Epstein files, Google indexed and cached the materials containing Plaintiff's and Class members' PII. As a result, searches for Plaintiff's and Class members' names, or searches combining their names with terms such as "Epstein," "victim," or "survivor," produce content in Google AI Mode displaying victims' full names, contact information, cities of residence, and association with Jeffrey Epstein.

50. In Plaintiffs' case, Google AI Mode responded to the query "Does the name [Plaintiff's name] appear in the DOJ's released Epstein files?" by stating:

> Yes, the name [Plaintiff's name] appears in the Jeffrey Epstein files officially released by the U.S. Department of Justice (DOJ) in early 2026. Based on the unredacted documents and searchable databases like Jmail, her name is associated with private email correspondence:

> Email Evidence: The name appears as the sender of multiple messages from the address [link to Plaintiff's email address]. These emails were included in the 3.5 million pages published under the Epstein Files Transparency Act."

As a part of this response, generated repeatedly on multiple platforms and across various devices, Google's AI Mode included Plaintiff's full name, displayed her full email address, and generated a hypertext link allowing anyone to send direct email to Plaintiff with the click of a button.

51. Plaintiff, individually and through counsel, provided notice to Google of the unlawful disclosure and the presence of her and the other Class members' PII in its AI Mode content on multiple occasions in February and March 20206. The notice included specific URLs and identification of the unlawful content. But the content remains viewable on Google's website

52. The response quoted above and similarly revealing responses were generated weeks after Plaintiff first requested Google remove reference to her in relation to the Epstein files. Despite receiving actual notice of the violations, the substantial harm caused by its continued dissemination, and the status of many Class members as sexual abuse survivors entitled to heightened privacy protections under the law, Google has failed and refuses to remove, de-index, or block access to the offending materials.

53. Google continues even now to display Plaintiff and Class members' PII in search results, cached pages, and archived materials, effectively republishing the unlawful disclosure and making it permanently and globally accessible.

CLASS ACTION COMPLAINT FOR INJUNCTIVE RELIEF        Case No.: 5:26-cv-02624
AND DAMAGES, AND DEMAND FOR JURY TRIAL

54.     Google has the technological capability to remove or de-index specific URLs and content from search results and caches. The company maintains policies and procedures for removing content in response to legal demands, court orders, and certain categories of sensitive personal information. Google's refusal to use such tools in this case shows its conduct is reckless, in wonton disregard for the wellbeing of Plaintiff and other victims, and willful.

55.     Notably, several other publicly available AI tools that generate content by analyzing online sources, such as ChatGPT, Claude, and Perplexity, provided no victim-related information whatsoever in similar repeated testing.

56.     California law prohibits both the reckless disclosure of another person's private facts and intentional act of "doxxing," or intentionally disclosing PII with the intent to place a person in fear for their safety or to cause third-party harassment. Google violates these laws when its AI Mode takes a victim's name and other PII from the Epstein files and publishes that PII to users in a way that predictably facilitates harassment, unwanted contact, or fear. When AI Mode responds to user prompts about Epstein with generated text that identifies specific survivors by name and links that name to a highly consumable, amplified format that makes further harassment, online abuse, and further doxxing substantially more likely.

57.     California Civil Code § 1708.89 targets doxxing, and it expressly recognizes that disclosure of a name, contact details, and account-linking information can qualify when weaponized. If, despite notice that Epstein survivors have already faced harassment and threats after their identities appeared in the DOJ releases, Google continues to surface AI Mode answers that identify those survivors by name and contextual PII (for example, "Jane Doe, a former [occupation] from [city]," with links or signals that make her online accounts easy to find), Google is intentionally furnishing that PII in a way designed, or at least substantially certain, to fuel harassment and fear, satisfying the statute's intent and harm elements. In that posture, AI Mode is not a neutral search index; it is an active recommender and content generator that packages victim PII as part of a narrative output, and that conduct can be pleaded as actionable

CLASS ACTION COMPLAINT FOR INJUNCTIVE RELIEF          Case No.: 5:26-cv-02624
AND DAMAGES, AND DEMAND FOR JURY TRIAL

12

"doxxing" under § 1708.89 when the other statutory elements (malicious intent or substantial certainty, resulting fear or harassment) are met.[1]

**Re-traumatization and Other Harms Caused by the Disclosure and Republication**

58.   As a result of Google's actions, Plaintiff and Class members' PII remains easily discoverable by anyone with internet access, perpetuating the privacy invasion and enabling ongoing harassment, stalking, and reputational harm.

59.   As a direct and proximate result of Defendants' unlawful conduct, Plaintiff and Class members have suffered and continue to suffer severe harm, including but not limited to:

   a.   Severe emotional distress, anxiety, depression, fear, and humiliation arising from the public disclosure of their identities as sexual-abuse survivors and the unwanted attention associated with the Epstein matter;

   b.   Invasion of privacy and loss of anonymity in connection with highly traumatic experiences;

   c.   Harassment, unwanted contact, threatening communications, and intrusive inquiries from media, strangers, and online actors;

   d.   Damage to their personal and professional reputations, including interference with employment opportunities and professional relationships;

   e.   Fear for their physical safety and the safety of those close to them, necessitating changes in contact information and security measures;

   f.   Economic losses, including costs associated with changing their phone numbers and other contact information, identity monitoring and cybersecurity measures, legal fees, lost time, lost income, and diminished earning capacity;

   g.   Exacerbation of pre-existing trauma and psychological injuries related to the underlying sexual abuse; and

---

[1] Plaintiff intends to conduct discovery into Google's intent for revealing victims' PII and will seek to amend this Complaint to include a claim for violation of § 1708.89 if evidence shows an intent to cause victims to fear for their safety or to cause third-party harassment.

CLASS ACTION COMPLAINT FOR INJUNCTIVE RELIEF                    Case No.: 5:26-cv-02624
AND DAMAGES, AND DEMAND FOR JURY TRIAL

h.  Loss of the ability to control the timing and manner of any public disclosure related to their abuse.

60.  Plaintiff and Class members' damages are ongoing and will continue as long as their PII remains publicly accessible via Google's website and as the consequences of the disclosure continue to unfold.

61.  Plaintiff and Class members have incurred and will continue to incur expenses for psychological counseling, legal representation, reputation management, relocation, and other measures necessary to mitigate the harm caused by Defendants' conduct.

## CLASS ALLEGATIONS

62.  Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and 23(b)(3), and alternatively pursuant to Rule 23(b)(2), on behalf of herself and all others similarly situated.

63.  Plaintiff seeks to certify the following Classes:

**Class Definition:** All Jeffrey Epstein survivors whose personally identifiable information, including their name, photographic image, telephone number, email address, or physical address or place of residence, was disclosed without their consent in unredacted documents released by the United States between December 2025 and the present. This Class seeks relief under Rule 23(b)(3) for Privacy Act damages and other damages described herein.

**Injunctive Relief Subclass:** All Class members whose disclosed personally identifiable information is indexed, cached, hosted, or otherwise made available to the public through any service operated by Google. This Subclass seeks injunctive relief under Rules 23(b)(2) only.

64.  **Numerosity (Rule 23(a)(1)):** The Class is so numerous that joinder of all members is impracticable. On information and belief, the improperly disclosed documents contained PII of approximately 100 Epstein survivors. The exact number of Class members is unknown to Plaintiff at this time but can be determined from Defendants' records, including records of victims who reported their status as Epstein survivors to Defendants.

65.  **Commonality (Rule 23(a)(2)):** There are questions of law and fact common to the Class, including but not limited to:

CLASS ACTION COMPLAINT FOR INJUNCTIVE RELIEF          Case No.: 5:26-cv-02624
AND DAMAGES, AND DEMAND FOR JURY TRIAL

14

a.  Whether injunctive relief requiring removal and de-indexing of Class members' PII is appropriate;

b.  Whether the DOJ violated the Privacy Act, 5 U.S.C. § 552a, by disclosing Class members' PII without consent and outside any applicable exception;

c.  Whether the DOJ's disclosures were intentional or willful within the meaning of 5 U.S.C. § 552a(g)(4);

d.  Whether Class members' PII was contained in Privacy Act "systems of records;"

e.  Whether Google tortiously and unlawfully indexed, cached, displayed, and continue to display Class members' PII in violation of California statutory law, common law, and constitutional privacy protections;

f.  Whether Google owed duties of care under California law to Class members and breached those duties;

g.  Whether Google violated California Civil Code § 1798.100, *et seq.* by failing to protect PII from unauthorized access;

h.  Whether Defendants' conduct caused actual damages to Class members; and

i.  Whether punitive damages against Google are warranted.

66.  **Typicality (Rule 23(a)(3)):** Plaintiff's claims are typical of the claims of the Class members. Plaintiff and all Class members had their PII wrongfully disclosed by the United States in the same document releases, and their information continues to be disseminated by Google through the same indexing, caching, and search-result systems. Plaintiff's injuries arise from the same course of conduct as those of Class members, and Plaintiff and Class members are entitled to the same forms of relief.

67.  **Adequacy of Representation (Rule 23(a)(4)):** Plaintiff will fairly and adequately protect the interests of the Class, and has no interests antagonistic to the interests of other Class members. Plaintiff is committed to vigorously prosecuting this action and has retained counsel skilled and experienced in complex class actions, and in data privacy litigation specifically.

68.  **Rule 23(b)(3) Predominance and Superiority:** Common questions of law and fact predominate over questions affecting only individual Class members, and a class action is

CLASS ACTION COMPLAINT FOR INJUNCTIVE RELIEF    Case No.: 5:26-cv-02624
AND DAMAGES, AND DEMAND FOR JURY TRIAL

15

superior to other available methods for the fair and efficient adjudication of this controversy. The common questions identified above, particularly the lawfulness of Defendants' conduct under the Privacy Act and California law, predominate over any individual issues. Prosecution as a class action will eliminate the possibility of repetitious litigation while providing redress for claims that may be too small to support the burden of individual litigation. Class members share a strong interest in litigating their claims together to ensure consistent adjudication and to avoid the risk of inconsistent or varying adjudications. Management of this action as a class action presents no unusual difficulties.

69.    **Alternative Rule 23(b)(2) Certification:** Additionally, this action is maintainable as a class action under Rule 23(b)(2) because Defendant Google has acted or refused to act on grounds generally applicable to the Class, making appropriate final injunctive relief or corresponding declaratory relief with respect to the Class as a whole. The Class seeks, among other relief, an injunction requiring Google to remove, de-index, and cease displaying Class members' PII.

70.    **Notice:** Plaintiff will provide notice to Class members as required by Federal Rule of Civil Procedure 23(c)(2) and as directed by the Court. The United States and Defendant Google maintain records sufficient to identify Class members, including records of the disclosures and indexed content.

## CAUSES OF ACTION

### First Cause of Action

### Violation of the Privacy Act of 1974, 5 U.S.C. § 552a(b) and (g)(1)(D)

71.    Plaintiff repeats and realleges each and every allegation above as if fully set forth herein.

72.    Plaintiff brings this claim against Defendant United States on behalf of herself and the Class.

73.    The Privacy Act, 5 U.S.C. § 552a(b), prohibits federal agencies from disclosing records contained in a system of records without the written consent of the individual to whom the record pertains, subject to certain enumerated exceptions. Section 552a(g)(4) creates a private right of action for any intentional or willful violation of the Act, including a violation of subsection (b).

74.    Plaintiff and Class members' PII, including their names, telephone numbers, email addresses, cities of residence, and occupations, was contained in one or more Privacy Act "systems of records" maintained by the Department of Justice and other federal agencies.

75.    The United States, through the DOJ, disclosed Plaintiff and Class members' records publicly, including via the DOJ's Epstein Files website and in productions to Congress, without Plaintiff or Class members' consent.

76.    No exception to the Privacy Act's consent requirement authorized the disclosure of Plaintiff or Class members' PII. The disclosure was not required by FOIA or any other statute, was not pursuant to a routine use, and was not compelled by court order.

77.    The disclosure was intentional or willful within the meaning of 5 U.S.C. § 552a(g)(4). Federal officials charged with reviewing, redacting, and releasing the materials prioritized a maximal disclosure of "everything" in order to create a perception of transparency, despite their knowledge that the records contained sensitive victim-identifying information, that they had erred on the side of over-inclusion in collecting records, and that the systems they had in place would inevitably fail under the stress of a rushed release. Moreover, the fact that the very victims whose PII was released were the same women who had demanded the government release the files in the first place motivated the government to react by over-releasing without regard for victim privacy, a contention supported by the government's indifference to the ongoing publication of victim-identifying information on platforms such as Google.

78.    The disclosure has had an adverse effect on Plaintiff and Class members, as required by 5 U.S.C. § 552a(g)(1)(D), in that it resulted in the public identification of Plaintiff and Class members as sexual-abuse survivors, subjected them to harassment and unwanted contact, damaged their reputations, invaded their privacy, caused severe emotional distress, and resulted in economic harm.

79.    Plaintiff and Class members have suffered actual damages as a direct and proximate result of the United States' Privacy Act violation, including but not limited to the compensable injuries set forth above.

CLASS ACTION COMPLAINT FOR INJUNCTIVE RELIEF        Case No.: 5:26-cv-02624
AND DAMAGES, AND DEMAND FOR JURY TRIAL

80.     Pursuant to 5 U.S.C. § 552a(g)(4), Plaintiff and each Class member is entitled to recover actual damages sustained as a result of the violation, but in no case less than the sum of $1,000 per Class member, together with reasonable attorney fees and costs.

**Second Cause of Action**

**Violation of California's Unfair Competition Law (Cal. Bus. & Prof. Code § 17200, *et seq.*)**

81.     Plaintiff repeats and realleges each and every allegation above as if fully set forth herein.

82.     Plaintiff brings this claim against Defendant Google on behalf of herself and the Injunctive Relief Subclass.

83.     By reason of the conduct alleged herein, Google engaged and continues to engage in unfair and unlawful "business practices" within the meaning the meaning of California's Unfair Competition Law ("UCL"), Business and Professions Code § 17200, *et seq.*

**Unlawful Business Practices**

84.     Section 5 of the FTCA required Defendant Google to take reasonable measures to protect Plaintiff and the Injunctive Relief Subclass member's PII and is a further source of Google's duty to Plaintiff and the Class Members.

85.     Section 5 prohibits unfair practices in or affecting commerce, including, as interpreted and enforced by the FTC, the unfair act or practice by persons or businesses like Google of failing to implement and use reasonable measures to protect Sensitive Information. Defendant Google, therefore, was required and obligated to take reasonable measures to protect the victim-identifying information they possessed, held, or otherwise used. The FTC publications described herein further form the basis of Google's duty to adequately protect sensitive information. By failing to adequately protect this information from dissemination, Google acted in violation of § 5 of the FTCA.

86.     Additionally, the California Consumer Privacy Act of 2018, California Civil Code § 1798.100, *et seq.* ("CCPA"), as amended by the California Privacy Rights Act ("CPRA"), requires any business that owns or licenses computerized data that includes sensitive personal information about a California resident to implement and maintain reasonable procedures and practices appropriate to the nature of the information, to protect the information from

unauthorized access, use, or disclosure. It further requires any such business to provide notice to individuals prior to disclosure of sensitive personal information and prohibits any such business from disclosing sensitive personal information after in individual has directed it not to disclose their sensitive personal information. The CCPA applies to Google because it is a for-profit entity doing business in California that: (a) has more than $26.6 million in annual gross revenue; (b) buys, sells, or shares the personal information of 100,000 or more California residents or households in a year; and (c) derives 50% or more of its annual revenue from selling or sharing California consumers' personal information. Any one of these three characteristics render Google subject the CCPA's requirements. Moreover, Google owns or licenses computerized data and maintains sensitive personal information, making it specifically liable for the violations alleges herein.

87.    Defendant Google's acts alleged herein were unlawful and in violation of, *inter alia*, Section 5(a) of the Federal Trade Commission Act and the CCPA.

**Unfair Business Practices**

88.    Google's conduct is "unfair" within the meaning of the UCL because it offends established public policy protecting crime victims' privacy and is causing ongoing substantial injury to survivors that is not outweighed by any legitimate utility.

89.    By building and maintaining platforms that collect, index, and republish investigatory materials without effective safeguards for victim PII, Google has transformed an already unlawful government disclosure into a persistent, amplified, and easily searchable exposure of survivors' identities, contact information, and trauma. This conduct is immoral, unethical, oppressive, and unscrupulous in light of widely recognized norms requiring heightened protection of sexual-assault survivors.

90.    Google's practices also violate the "unfair" prong because the gravity of the harm to Plaintiff and the Injunctive Relief Subclass members far outweighs any countervailing benefits. Whatever marginal value there may be in allowing the public to sift through millions of pages of technical or duplicative Epstein-related records, that benefit does not require tying sexual-abuse survivors' identities and PII to those materials and pushing that information to users through

CLASS ACTION COMPLAINT FOR INJUNCTIVE RELIEF                Case No.: 5:26-cv-02624
AND DAMAGES, AND DEMAND FOR JURY TRIAL

19

search results, or AI-generated answers. Any claimed benefit to "transparency" or "public understanding" could be achieved equally well—or better—by publishing redacted materials that protect victim identities. Google's refusal to adopt such reasonable measures, even after notice, renders their conduct unfair.

91.     Google's actions are also unfair because they undermine and circumvent specific statutory schemes designed to protect both privacy and crime victims. California's constitutional right to privacy, the California doxxing statute (Civil Code § 1708.89), California's data-security and privacy regime (including Civil Code § 1798.81.5 and the CCPA), and federal victim-protection statutes all reflect a strong public policy that the identities and contact information of sexual abuse survivors should not be gratuitously exposed or used as raw material for public consumption. By continuing to display, highlight, and algorithmically recombine victim PII, even after government actors and survivors themselves acknowledged that such information "should not have been posted," Defendant Google frustrates the objectives of these laws.

92.     Google's conduct is unfair because it uses its dominant search, indexing, caching, and AI-generation capabilities to take already exposed victim PII and project it to a vastly larger audience, in more powerful and synthesized ways, than the underlying government site ever could. Google's search engine, caching, and AI Mode can respond to ordinary user queries about Epstein or related public figures without generating content that outs survivors. When Google does this despite receiving specific notice from survivors and their counsel that these uses are causing concrete harm, it is not simply operating a neutral index; it is unfairly leveraging its infrastructure and algorithms in a way that deepens and prolongs the privacy invasion.

93.     Google's unfair practices also take advantage of the extreme power imbalance between itself and the survivors whose data it exploits. Plaintiff and the Injunctive Relief Subclass members had no meaningful opportunity to consent to or control Google's use of their PII, which was originally obtained through governmental misconduct that they did not authorize. Once Google collected those materials, survivors lacked any realistic way to monitor how their identities were being surfaced across multiple products, let alone to secure timely removal. By

CLASS ACTION COMPLAINT FOR INJUNCTIVE RELIEF          Case No.: 5:26-cv-02624
AND DAMAGES, AND DEMAND FOR JURY TRIAL

20

contrast, Google possesses ample technical capability to identify, suppress, or anonymize victim-identifying content at scale, yet chose not to deploy those capabilities for the benefit of survivors.

94.     Further, the harms inflicted by these practices are substantial, ongoing, and not reasonably avoidable by Plaintiff and the Injunctive Relief Subclass. Once Google displayed and propagated survivors' PII across search results, archives, and AI-generated answers, survivors could not meaningfully "opt out" or protect themselves through reasonable self-help. They cannot undo the knowledge imparted to thousands or millions of users, nor can they individually monitor every repost, screenshot, or scrape that originates from Google's services. Because these injuries are so severe, encompassing fear for physical safety, harassment, and exacerbation of trauma, and because survivors cannot reasonably avoid them, they satisfy the substantial-injury test for unfairness under the UCL.

95.     Defendant Google's conduct is also unfair in light of available, less harmful alternatives that it consciously declined to implement. Google has the technical ability to (a) exclude specified URLs or documents from indexing and display, (b) apply filters or flags to remove or obfuscate contact information and other PII associated with sexual-assault survivors, and (c) adjust ranking and AI-generation systems so that victim-identifying content is not surfaced in response to generic Epstein-related queries. Implementing such safeguards would have materially reduced the harm to survivors while preserving the public's ability to access non-identifying information about Epstein's crimes and enablers. Google's choice not to pursue these less restrictive alternatives, despite notice of the consequences, further supports a finding that its conduct is unfair.

96.     Finally, Google's refusal to correct course after notice underscores the unfair nature of its practices. Plaintiff and the Injunctive Relief Subclass members, through counsel and public statements, alerted Google that unredacted government releases had exposed victim PII and that Google's continued indexing and repackaging of those materials was causing concrete harms. Rather than promptly remove, or anonymize the offending content, Google persisted, treating survivors' objections as an acceptable collateral cost of maintaining its products. Continuing a

CLASS ACTION COMPLAINT FOR INJUNCTIVE RELIEF                Case No.: 5:26-cv-02624
AND DAMAGES, AND DEMAND FOR JURY TRIAL

harmful practice in the face of specific, credible complaints from those uniquely vulnerable to that harm is the kind of conduct the UCL's unfair prong is designed to deter.

97.    As a direct and proximate result of Google's conduct, Plaintiff and the Injunctive Relief Subclass members have suffered, and will continue to suffer, economic damages and other injury and actual harm, described above.

98.    Unless restrained and enjoined, Google will continue to engage in the unlawful and unfair conduct described herein and more dissemination of victim-identifying information will occur.

99.    As such, Plaintiff, on behalf of herself and the Injunctive Relieve Subclass members, seeks an injunction, including public injunctive relief prohibiting Google from continuing such wrongful conduct, requiring Google to remove all documents containing victim-identifying information from its websites, and to implement comprehensive protocols to identify and remove any victim names, images, contact information, and other personally identifying details that may be disclosed in the future, as well as all other relief the Court deems appropriate, consistent with Bus. & Prof. Code § 17203.

**Third Cause of Action**

**Invasion of Privacy – Public Disclosure of Private Facts**

100.    Plaintiff repeats and realleges each and every allegation above as if fully set forth herein.

101.    Plaintiff brings this claim against Defendant Google on behalf of herself and the Class.

102.    Under California common law, the tort of public disclosure of private facts requires proof that: (a) the defendant publicly disclosed private information; (b) the disclosed facts would be highly offensive to a reasonable person; and (c) the information disclosed is not of legitimate public concern.

103.    Plaintiff and Class members' identities, names, likenesses, contact information, and locations of residence constitute private facts that a reasonable person would find highly offensive if publicly disclosed, particularly given that the information was and continues to be disclosed in conjunction with their status as sexual-abuse survivors in one of the highest profile sexual abuse scandals in modern history.

104.    Plaintiff and Class members had a reasonable expectation of privacy in this information, particularly given their status as crime victims and the sensitive nature of sexual-assault victimization.

105.    Google, knowing that that the information generated by AI Mode was unlawfully disclosed by the United States in violation of the Privacy Act and crime-victims' rights statutes, intentionally and voluntarily publicly disclosed and continue to disclose Plaintiff and Class members' private information by generating content that can be used to contact and harass Plaintiff and Class members.

106.    Google's publication of Plaintiff and Class members' private information was not newsworthy or of legitimate public concern. While public interest in the Epstein matter generally may exist, there is no legitimate public interest in the identification of individual survivors or the disclosure of their contact information and personal details.

107.    The publication of Plaintiff and Class members' private information would be highly offensive to a reasonable person in their position.

108.    Google acted with actual malice or reckless disregard for Plaintiff and Class members' privacy rights, having received notice of the unlawful disclosure, their status as crime victims and California residents, and the severe harm caused by continued dissemination, yet refusing to remove or de-index the offending content.

109.    As a direct and proximate result of Google's tortious conduct, Plaintiff and Class members have suffered and continue to suffer severe harm as set forth above.

**Forth Cause of Action**

**Negligence**

110.    Plaintiff repeats and realleges each and every allegation above as if fully set forth herein.

111.    Plaintiff brings this claim against Google on behalf of herself and the Class.

112.    Defendant Google owed a duty of reasonable care toward Plaintiff and the California Subclass based on the requirements of California Civil Code § 1714, requiring all "persons," including Google, to act in a reasonable manner toward others.

113.    Additionally, Google owed a duty of reasonable care toward Plaintiff and the California Subclass not to negligently publish or maintain unlawfully disclosed private information concerning California residents who are crime victims based on Google's operation of a widely-used internet platform that indexes, caches, and disseminates information worldwide.

114.    Additionally, said duty is based on Google's right to control information in its possession, exercise of control over the information in its possession, authority to control the information in its possession, and the commission of affirmative acts that resulted in harms and losses.

115.    Additionally, said duty is based on the specific statutory duties imposed on it under the CCPA. The CCPA requires any business that owns or licenses computerized data that includes sensitive personal information about a California resident to implement and maintain reasonable procedures and practices appropriate to the nature of the information, to protect the information from unauthorized access, use, or disclosure. It further requires any such business to provide notice to individuals prior to disclosure of sensitive personal information and prohibits any such business from disclosing sensitive personal information after in individual has directed it not to disclose their sensitive personal information.

116.    Upon receiving actual notice of violations and the presence of Plaintiff and California Subclass members' unlawfully disclosed PII in their systems, Google owed heightened duties to exercise reasonable care to remove or block access to the offending materials.

117.    Defendant Google breached their statutory and common-law duties by:

    a.    Failing to implement reasonable review and redaction procedures for sensitive personal information of crime victims;

    b.    Failing to remove, de-index, or otherwise restrict access to the unlawfully disclosed information after receiving actual notice;

    c.    Continuing to generate, display, cache, and make searchable Plaintiff and Class members' PII despite having actual knowledge of the violations, their status as crime victims, the unlawful nature of the disclosure, and the severe harm to Plaintiff and Class members; and

    d.   Failing to implement adequate policies and procedures to protect individual's personal information from unauthorized republication.

118.   Google's breaches were a substantial factor in causing Plaintiff and Class members' damages.

119.   As a direct and proximate result of Google's negligent conduct, Plaintiff and Class members have suffered and continue to suffer severe harm as set forth above.

**Fifth Cause of Action**

**Negligent Infliction of Emotional Distress**

120.   Plaintiff repeats and realleges each and every allegation above as if fully set forth herein.

121.   Plaintiff brings this claim against Defendant Google on behalf of herself and the Class.

122.   Under California law, negligent infliction of emotional distress requires proof that: (a) the defendant owed a duty of care to the plaintiff; (b) the defendant breached that duty; (c) the breach was a substantial factor in causing plaintiff's emotional distress; and (d) the emotional distress was serious.

123.   Defendant Google owed Plaintiff and Class members a duty of reasonable care not to negligently cause foreseeable emotional distress by continuing to publish unlawfully disclosed private information concerning California residents who are sexual-abuse survivors.

124.   Google breached that duty by failing to remove or restrict access to Plaintiff and Class members' PII after receiving actual notice of the unlawful disclosure, their California residency, their status as crime victims, and the severe harm to them.

125.   Google knew or should have known that its continued publication of Plaintiff and Class members' private information was substantially certain to cause severe emotional distress to crime victims in their position.

126.   Google's breach of the duty of care was a substantial factor in causing Plaintiff and Class members' severe emotional distress.

127.   As a direct and proximate result of Google's negligent conduct, Plaintiff and Class members have suffered and continue to suffer severe emotional distress, anxiety, depression, fear, humiliation, and exacerbation of trauma.

CLASS ACTION COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES, AND DEMAND FOR JURY TRIAL     Case No.: 5:26-cv-02624

128.    Plaintiff and Class members' emotional distress is serious, severe, and of a nature that no reasonable person could be expected to endure.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff Jane Doe 1, individually and on behalf of the Class, respectfully requests that this Court enter judgment in her favor and in favor of the Class and grant the following relief:

a) An order certifying this case as a class action under Federal Rule of Civil Procedure 23(a) and 23(b)(3), and additionally, under Rule 23(b)(2), appointing Plaintiff as Class Representative, and appointing Plaintiff's counsel as Class Counsel;

b) Preliminary and permanent injunctive relief requiring Defendant Google to remove, de-index, and cease displaying Plaintiff's and Class members' PII and the unlawfully disclosed materials;

c) Compensatory damages in amounts to be determined at trial against all Defendants, jointly and severally as appropriate, on behalf of Plaintiff and the Class;

d) Statutory minimum damages of not less than $1,000 per Class member against the United States pursuant to 5 U.S.C. § 552a(g)(4)(A);

e) Punitive damages in amounts sufficient to punish and deter on behalf of Plaintiff and the Class against Google;

f) Declaratory relief that Defendants violated the Privacy Act, California constitutional and common-law privacy rights, and other applicable laws;

g) Reasonable attorney fees and costs pursuant to 5 U.S.C. § 552a(g)(4)(B), 42 U.S.C. § 1988 (as appropriate), California Civil Code § 1021.5, and other applicable law;

h) Pre-judgment and post-judgment interest as allowed by law;

i) A trial by jury on all issues so triable; and

j) For such other and further relief as this Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff, on behalf of herself and the Class, demands a trial by jury on all issues so triable.

Dated this March 25, 2026.               Erickson Kramer Osborne LLP


/s/ Kevin M. Osborne
Julie C. Erickson
Elizabeth A. Kramer
Kevin M. Osborne
Attorneys for Plaintiff JANE DOE 1