Sonal N. Mehta, State Bar No. 222086
sonal.mehta@wilmerhale.com
**WILMER CUTLER PICKERING
HALE AND DORR LLP**
2600 El Camino Real, Suite 400
Palo Alto, CA 94306
Telephone: (650) 858-6000

Emily Barnet (*pro hac vice*)
emily.barnet@wilmerhale.com
**WILMER CUTLER PICKERING
HALE AND DORR LLP**
250 Greenwich Street
New York, NY 10007
Telephone: (212) 230-8800

Allison Schultz (*pro hac vice*)
allison.schultz@wilmerhale.com
**WILMER CUTLER PICKERING
HALE AND DORR LLP**
2100 Pennsylvania Avenue NW
Washington, DC 20037
Telephone: (202) 663-6000

*Attorneys for Defendant Google LLC*

Robert E. Dunn, State Bar No. 275600
rdunn@eimerstahl.com
**EIMER STAHL LLP**
1999 S. Bascom Ave. Suite 1025
Campbell, CA 95008
Telephone: (408) 889-1690

*Attorney for Defendant X.AI Corp.*

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JANE DOE 1, JANE DOE 2, JANE DOE 3, JANE DOE 4, and JANE DOE 5, individually and on behalf of others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>UNITED STATES OF AMERICA, GOOGLE LLC, and X.AI Corp.,<br><br>Defendants. | Case No. 5:26-cv-02624-VKD<br><br>**DEFENDANTS GOOGLE AND X.AI's JOINT MOTION TO STAY DISCOVERY**<br><br>Judge: Hon. Virginia K. DeMarchi<br>Courtroom 2, 5th Floor<br><br>Date: August 18, 2026<br>Time: 10:00 a.m. |

**TABLE OF CONTENTS**

Page

TABLE OF AUTHORITIES ................................................................................................................. ii

NOTICE OF MOTION AND MOTION ........................................................................................... 1

MEMORANDUM OF POINTS AND AUTHORITIES ................................................................. 1

BACKGROUND ................................................................................................................................... 1

ARGUMENT ......................................................................................................................................... 2

I.      There Is Good Cause For A Stay Because Google And xAI's Joint Motion
        To Dismiss Is Potentially Dispositive And Requires No Discovery .................................. 3

        A.      All Of The Claims Against Google Should Be Dismissed ..................................... 3

                1.      Section 230 Bars All Of Plaintiffs' Claims Against Google ...................... 3

                2.      The First Amendment Independently Bars All The Claims
                        Against Google ................................................................................................ 6

                3.      Plaintiffs' Claims Against Google Fail On The Merits ............................. 8

        B.      Plaintiffs' Claims Against xAI Also Fail As A Matter of Law............................. 11

II.     The Balance Of Harms Warrants Staying Discovery ........................................................ 12

CONCLUSION .................................................................................................................................... 15

SIGNATURE ATTESTATION

## TABLE OF AUTHORITIES

### CASES

Page(s)

*Arnold v. Metropolitan Life Insurance Co.*,
 2025 WL 2300440 (N.D. Cal. July 9, 2025)................................................................... 2

*Barnes v. Yahoo!, Inc.*, 570 F.3d 1096 (9th Cir. 2009)................................................................. 4

*Bogard v. TikTok Inc.*, 2025 WL 604972 (N.D. Cal. Feb. 24, 2025) ......................................... 10

*Bouck v. Meta Platforms, Inc.*, 2026 WL 810036 (N.D. Cal. Mar. 24, 2026) ............................... 6

*Broadcom Corp. v. Qualcomm Inc.*, 2005 WL 5925584 (C.D. Cal. Oct. 19, 2005).................... 14

*Burgess v. Superior Court*, 2 Cal.4th 1064 (1992) ........................................................... 10

*Cel-Tech Communications, Inc. v. Los Angeles Cellular Telephone Co.*,
 20 Cal.4th 163 (Cal. 1999)..................................................................................... 8

*Cellwitch, Inc. v. Tile, Inc.*, 2019 WL 5394848 (N.D. Cal. Oct. 22, 2019) ............................... 2, 3

*Century Surety Co. v. Crosby Insurance, Inc.*, 124 Cal. App. 4th 116 (2004) ............................. 10

*Committee for Immigrant Rights of Sonoma County v. County of Sonoma*,
 2009 WL 10692620 (N.D. Cal. Apr. 20, 2009) .................................................. 13

*Davidson v. Hewlett-Packard Company*,
 2021 WL 4222130 (N.D. Cal. Sept. 16, 2021) ...................................................... 9

*Davidson v. Hewlett-Packard Company*,
 2022 WL 17352186 (9th Cir. Dec. 1, 2022) ......................................................... 9

*Davis v. HSBC Bank Nevada, N.A.*, 691 F.3d 1152 (9th Cir. 2012).............................................. 9

*Dyroff v. Ultimate Software Group, Inc.*, 934 F.3d 1093 (9th Cir. 2019)...................................... 4

*Fair Housinh Council of San Fernando Valley v. Roommates.com, LLC*,
 521 F.3d 1157 (9th Cir. 2008)................................................................. 2, 4, 5, 13

*Flores v. Cruz*, 2017 WL 415345 (E.D. Cal. Jan. 30, 2017)....................................................... 12

*Forrest v. Meta Platforms, Inc.*, 737 F. Supp. 3d 808 (N.D. Cal. 2024) ........................................ 6

*Gentry v. eBay, Inc.*, 99 Cal.App.4th 816 (Cal. App. 2002) ............................................................ 6

*Ginsberg v. Google Inc.*, 586 F. Supp. 3d 998 (N.D. Cal. 2022)................................................. 10

*Goddard v. Google, Inc.*, 2008 WL 5245490 (N.D. Cal. Dec. 17, 2008) ...................................... 4

*Google LLC v. Equustek Solutions Inc.*,
　　2017 WL 5000834 (N.D. Cal. Nov. 2, 2017)..........................................................................4

*Goyet v. Dean*, 2003 WL 21470318 (Cal. App. 4th June 26, 2003)...........................................10

*Green v. Miss United States of America, LLC*, 52 F.4th 773 (9th Cir. 2022)...........................2, 3

*Harlow v. Fitzgerald*, 457 U.S. 800 (1982)...............................................................................13

*Huang v. Futurewei Technologies, Inc.*, 2018 WL 1993503 (N.D. Cal.
　　April 27, 2018)....................................................................................................................13

*Kimzey v. Yelp! Inc.*, 836 F.3d 1263 (9th Cir. 2016)...................................................................5

*Lydo Enterprises Inc. v. City of Las Vegas*, 745 F.2d 1211 (9th Cir.1984)................................14

*M. K. v. Google LLC*, 2023 WL 4937287 (N.D. Cal. Aug. 1, 2023)............................................8

*Marshall's Locksmith Service Inc. v. Google, LLC*,
　　925 F.3d 1263 (D.C. Cir. 2019)........................................................................................5, 6

*Maynard v. United Services Automobile Association Federal Savings Bank*,
　　2022 WL 1283153 (N.D. Cal. Feb. 11, 2022)....................................................................10

*Miranda v. Field Asset Services*, 2013 WL 3283701 (S.D. Cal. June 27, 2013).......................10

*Mireskandari v. Daily Mail & General Trust*, 2013 WL 1212994 (C.D. Cal.
　　Jan. 14, 2013).....................................................................................................................13

*Moldea v. New York Times Company*, 137 F.R.D. 1 (D.D.C. 1990)..........................................13

*Moody v. NetChoice, LLC*, 603 U.S. 707 (2024)..............................................................6, 7, 13

*Moreno v. Hanford Sentinel, Inc.*, 172 Cal.App.4th 1125 (Cal. App. 5th 2009).........................9

*Nelson v. Tucker Ellis, LLP*, 48 Cal. App. 5th 827 (Cal. App. 1st 2020)....................................9

*New York Times Company v. Sullivan*, 376 U.S. 254 (1964).......................................................3

*O'Kroley v. Fastcase, Inc.*, 831 F.3d 352 (6th Cir. 2016).......................................................3, 5

*Oakland Tribune, Inc. v. Chronicle Publishing Company*,
　　762 F.2d 1374 (9th Cir. 1985)............................................................................................14

*Obado v. Magedson*, 612 F. App'x 90 (3d Cir. 2015).................................................................3

*Onuoha v. Facebook*, 2017 WL 11681325 (N.D. Cal. Apr. 7, 2017).........................................13

*Parker v. Google, Inc.*, 422 F. Supp. 2d 492 (E.D. Pa. 2006).....................................................3

*Realtek Semiconductor Corp. v. MediaTek, Inc.*,
    732 F. Supp. 3d 1101 (N.D. Cal. 2024) ............................................................. 13

*Ryan v. X Corp.*, 2024 WL 5058526 (N.D. Cal. Dec. 9, 2024) ....................................... 4

*Sipple v. Chronicle Publishing Company*, 154 Cal. App. 3d 1040 (1984) ................................... 12

*Smith. v. Daily Mail Publishing Company*, 443 U.S. 97 (1979) ...................................... 11

*Suddeth v. Meta Platforms, Inc.*, 2026 WL 810252 (N.D. Cal. Mar. 24, 2026) ............................ 6

*The Florida Star v. B.J.F.*, 491 U.S. 524 (1989) ........................................................ 7, 11

*Tremblay v. OpenAI, Inc.*, 716 F. Supp. 3d 772 (N.D. Cal. 2024) ................................................ 12

*Varnado v. Midland Funding LLC*, 43 F. Supp. 3d 985 (N.D. Cal. 2014) .................................... 10

*Wenger v. Monroe*, 282 F.3d 1068 (9th Cir. 2002) ........................................................ 3

**STATUTES, AND RULES**

15 U.S.C. § 45 ...................................................................................................... 8

47 U.S.C. § 230 ................................................................................................... 3, 12

Cal. Bus. & Prof. Code § 17204 ............................................................................. 8

Cal. Civ. Code
    § 1780.89 ................................................................................................ 9
    § 1798.81.5 .............................................................................................. 8
    § 1798.100 .............................................................................................. 8
    § 1798.140 .............................................................................................. 8
    § 17200 .................................................................................................. 9

Fed. R. Civ. P. 26(f) .............................................................................................. 2

**OTHER AUTHORITY**

Reid, Elizabeth, *AI in Search: Going Beyond Information to Intelligence*, The
    Keyword (May 20, 2025), https://blog.google/products-and-
    platforms/products/search/google-search-ai-mode-update/#ai-mode-search .................. 14

**NOTICE OF MOTION AND MOTION**

PLEASE TAKE NOTICE THAT, on August 18, 2026 at 10:00 a.m., or at the Court's convenience, in Courtroom 2 of the U.S. District Court for the Northern District of California, San Jose Division, at 280 South 1st Street, San Jose, CA, Defendants Google LLC and xAI (collectively "Defendants") will and hereby do move for an order staying discovery pending resolution of their anticipated joint motion to dismiss.  This motion is based on this notice of motion, the below memorandum of points and authorities, all pleadings and papers on file in this action, and such additional facts and arguments as may be presented at or before the time of hearing.

**MEMORANDUM OF POINTS AND AUTHORITIES**

Defendants Google and xAI respectfully request that the Court stay all discovery until the Court has ruled on their anticipated joint motion to dismiss, which is set for a hearing on November 17, 2026.  Dkt. No. 44.  There is good cause for a stay of discovery because Defendants' motion may dispose of the entire suit, no discovery is necessary to adjudicate the motion, and the balance of harms weighs in favor of a stay.  Plaintiffs oppose this motion.

**BACKGROUND**

Plaintiffs allege that the U.S. Department of Justice improperly disclosed their personal information when it published investigation files relating to Jeffrey Epstein on its "'Epstein Library' website."  *See* Dkt. No. 16 ¶¶ 15-20, 21 (First Amended Complaint) ("FAC"); *see also id.* ¶ 29 (describing release of documents on "publicly accessible DOJ website").  The DOJ released these records "pursuant to the Epstein Files Transparency Act … and in response to Freedom of Information Act … requests and congressional demands."  *Id.* ¶ 28.  Plaintiffs also allege that Google and xAI "again disclosed" that information on their platforms.  *Id.* ¶¶ 15-19.  Plaintiffs allege that Google "indexed and cached the materials" such that Google Search (including Google AI Mode) displays results that identify Plaintiffs with Epstein and show the personal information disclosed in the Epstein files in response to search queries about Plaintiffs and the Epstein files.  *Id.* ¶¶ 54-69.  And Plaintiffs allege that xAI's chatbot, Grok, identifies

Plaintiffs with Epstein and displays their personal information "[i]n response to user prompts regarding the Epstein files," after "drawing on" publicly available sources. *Id.* ¶ 74.

Plaintiffs filed this suit on March 26, 2026. Dkt. No. 1. They never served Google with the original complaint. Declaration of Emily Barnet ("Decl.") ¶ 4. Nearly two and a half months later, on June 8, 2026, Plaintiffs filed their First Amended Complaint ("FAC") and sought a waiver of service from Google. Dkt. No. 16; Decl. ¶¶ 5-6. The FAC also added xAI as a defendant. *See* Dkt. No. 16. Plaintiffs insisted on proceeding with a Rule 26(f) conference shortly after Google waived service, against Google's objection that the initial case management conference should be adjourned until after resolution of Defendants' forthcoming joint motion to dismiss. Decl. ¶ 5; *see also* Dkt. No. 27 at 9-10 (joint case management statement). This Court held an initial case management conference several weeks later, on June 30, 2026. Dkt. No. 42. That same day, Plaintiffs served Google and xAI with their First Sets of Requests for Production. Decl. ¶ 10.

## ARGUMENT

There is "good cause" to stay discovery pending resolution of Google and xAI's forthcoming joint motion to dismiss. *Arnold v. Metro. Life Ins. Co.*, 2025 WL 2300440, at *1 (N.D. Cal. July 9, 2025) ("A district court has 'wide discretion in controlling discovery,' and may issue an order staying discovery upon a showing of 'good cause.'"). Good cause exists to stay discovery pending resolution of a motion where (1) the motion is potentially dispositive, and (2) the Court can decide the pending motion absent discovery. *See Cellwitch, Inc. v. Tile, Inc.*, 2019 WL 5394848, at *1 (N.D. Cal. Oct. 22, 2019); *Arnold*, 2025 WL 2300440, at *1-2. That is the case here: the Defendants will jointly move to dismiss all the claims against them and no discovery is necessary to resolve that motion. Moreover, discovery stays are especially warranted in cases where defendants assert Section 230 and the First Amendment defenses—as Google and xAI will do here. Section 230 "must be interpreted to protect websites not merely from ultimate liability, but from having to fight costly and protracted legal battles." *Fair Hous. Council of San Fernando Valley v. Roommates.com, LLC*, 521 F.3d 1157, 1175 (9th Cir. 2008). And, "[a]s recognized in … countless … cases, the First Amendment's protections extend to not only unconstitutional laws, but also to unnecessary *litigation* that chills speech." *Green v. Miss United*

*States of Am., LLC*, 52 F.4th 773, 800 (9th Cir. 2022) (citing *New York Times Co. v. Sullivan*, 376 U.S. 254, 279 (1964)) (emphasis in original).  The costs of prolonged discovery would undermine these protections.  *See id.* at 802.  On the other hand, any claim of harm to Plaintiffs from delay is undermined by Plaintiffs' failure to serve Google, name xAI as a defendant, or raise the prospect of a preliminary injunction until over two months after filing this case.

**I.      There Is Good Cause For A Stay Because Google And xAI's Joint Motion To Dismiss Is Potentially Dispositive And Requires No Discovery**

Judicial economy is best served by staying discovery because Google and xAI's anticipated joint motion to dismiss is "potentially dispositive of the entire case."  *Cellwitch*, 2019 WL 5394848, at \*1; *accord Wenger v. Monroe*, 282 F.3d 1068, 1077 (9th Cir. 2002) (a stay of discovery is appropriate where plaintiff is "unable to state claim for relief").  A motion is "potentially dispositive" if, based on a "preliminary peek" at the merits of the motion, the Court concludes that the motion, if granted, would dispose of the entire action.  *Cellwitch*, 2019 WL 5394848, at \*1.  That "preliminary peek" demonstrates that there are multiple grounds for dismissing the claims in the First Amended Complaint without any need for discovery.  *See, e.g.*, *id.* at \*2 (granting stay where no discovery was needed to resolve the motion to dismiss).[1]

**A.      All Of The Claims Against Google Should Be Dismissed**

Plaintiffs' claims against Google are barred by Section 230 of the Communications Decency Act and the First Amendment.  They also fail to state a claim.

**1.      Section 230 Bars All Of Plaintiffs' Claims Against Google**

All of Plaintiffs' claims against Google are barred by 47 U.S.C. § 230 ("Section 230") because they seek to hold Google liable as the publisher of information provided by a third party, namely, the DOJ.  Courts have repeatedly held that Section 230 bars claims against Google based on Google Search results, and the same outcome is warranted here.  *See, e.g.*, *O'Kroley v. Fastcase, Inc.*, 831 F.3d 352, 355 (6th Cir. 2016); *Parker v. Google, Inc.*, 422 F. Supp. 2d 492, 501 (E.D. Pa. 2006); *Obado v. Magedson*, 612 F. App'x 90, 93-94 (3d Cir. 2015) (per curiam).  Section 230's

---

[1] Defendants anticipate moving to dismiss the claims for at least the reasons outlined in this motion but may raise additional arguments.

immunity "exists for '(1) a provider or user of an interactive computer service (2) whom a plaintiff seeks to treat, under a state law cause of action, as a publisher or speaker (3) of information provided by an information content provider.'" *Dyroff v. Ultimate Software Grp., Inc.*, 934 F.3d 1093, 1097 (9th Cir. 2019) (quoting *Barnes v. Yahoo!, Inc.*, 570 F.3d 1096, 1100-1101 (9th Cir. 2009)).  Each part of that test is satisfied.

*First*, Google is an interactive computer service provider.  *See Google LLC v. Equustek Sols. Inc.*, 2017 WL 5000834, at *2 (N.D. Cal. Nov. 2, 2017) (holding, in case involving Google Search, that "there is no question that Google is a 'provider' of an 'interactive computer service'"); *Goddard v. Google, Inc.*, 2008 WL 5245490, at *2 n.2 (N.D. Cal. Dec. 17, 2008) (similar); *Roommates.com*, 521 F.3d at 1167 (describing Google as a "search engine[]" that would have Section 230 immunity).

*Second*, Plaintiffs' causes of action seek to hold Google liable as a publisher or speaker.  A claim treats a defendant as a publisher when it requires the defendant to remove third-party content.  *See Barnes*, 570 F.3d at 1103.  That is what each of Plaintiffs' claims seeks to do.  *See* FAC ¶ 127 (alleging UCL violation based on the allegation that Google did not "promptly remove, or anonymize the offending content"); FAC ¶ 139 (alleging public disclosure of private facts because Google allegedly "refus[ed] to remove or de-index" the content at issue); FAC ¶ 146 (alleging negligence based on the allegation that "Google owed a heightened duty to exercise reasonable care to remove or block access to the offending materials"); FAC ¶ 151 (alleging negligent infliction of emotional distress because Google "continu[ed] to publish" the disputed content).

*Third*, the content at issue—Plaintiffs' private information and affiliation with Epstein— was created by the Government, not Google.  The mere fact that Google uses AI to present certain search results does not transform Google into the information content provider of the content that allegedly harmed Plaintiffs.  "[N]o authority suggests that [Defendant]'s use of a generative AI model to do content regulation deprives it of section 230 immunity."  *Ryan v. X Corp.*, 2024 WL 5058526, at *8 (N.D. Cal. Dec. 9, 2024).  Plaintiffs themselves allege that "Google AI Mode is an enhanced search experience," and that the "content in Google AI Mode [that] display[ed] victims' private information and association with Epstein" is "a result" of "Google [having] indexed and

4

DEFENDANTS GOOGLE AND X.AI'S JOINT MOTION TO STAY DISCOVERY

cached the materials" that were provided by the Government.  FAC ¶¶ 55-56.  Indeed, Plaintiffs allege that the conduct at issue here consists of Google "effectively republishing *the [G]overnment's* unlawful disclosures."  *Id.* ¶ 84 (emphasis added).  Thus, it is undisputed that Google did not create the information that is the basis of Plaintiffs' claims.

Plaintiffs' allegation that "Google AI Mode" is an "active recommender[] and content generator[]," FAC ¶ 88, also does not take Google outside of Section 230's ambit.  Indeed, most search engines could be described as active recommenders or content generators, just as "the broadest sense of the term 'develop' could include the functions of an ordinary search engine." *Roommates.com*, 521 F.3d at 1167.  And they are immune under Section 230 for these functions. Section 230 protects service providers that display content supplied by third parties so long as the service provider does not "materially contribut[e] to [the content's] alleged unlawfulness."  *Id.* at 1167-1168.  A service provider does not materially contribute to content's alleged unlawfulness when the allegedly harmful content is "created and developed" by a third party and the provider merely provides "neutral tools" while doing "absolutely nothing to encourage the posting of [such] content."  *Id.* at 1171-1172.  That describes Google Search to a tee.  In *O'Kroley v. Fastcase, Inc.*, the Sixth Circuit applied this material contribution test to hold that Google cannot be held liable "for merely providing access to, and reproducing, … allegedly defamatory text," even where Google "performed some automated editorial acts on the content" and "kept the search result up even after [Plaintiff] complained about it."  831 F.3d at 355.

Section 230 likewise bars claims holding Google liable for allegedly reproducing Plaintiffs' personal information and connection to Epstein through Google Search's AI Mode. Courts have repeatedly rejected arguments that a platform's presentation of information provided by a third-party make the platform operator "responsible" for the "development" of that user-submitted information.  Courts have rejected these arguments even where platforms have "translat[ed]" information provided by a third-party. *Marshall's Locksmith Service Inc. v. Google, LLC*, 925 F.3d 1263, 1269 (D.C. Cir. 2019).  For example, in *Kimzey v. Yelp! Inc.*, 836 F.3d 1263, 1269-1270 (9th Cir. 2016), the Ninth Circuit held that Yelp's creation of a star-rating based on "user-generated data" did not constitute "'creation' or 'development' of information" sufficient to

5

defeat Section 230 immunity.  In *Gentry v. eBay, Inc.*, 99 Cal.App.4th 816 (Cal. App. 2002), a California Court of Appeal held that Section 230 protected eBay from liability for eBay's provision of a "color-coded star symbol" next to the username of a seller based on eBay's assessment of the amount of positive feedback the seller received from third-party user responses to eBay's own "Feedback Forum," *id.* at 833-834.  And in *Marshall's Locksmith*, the D.C. Circuit rejected the argument that Google had become an information content provider by virtue of its "translation of [street address] information that c[ame] from… scam locksmiths' webpages… into map pinpoints."  925 F.3d at 1269.  As the court explained, Google's "decision to present third-party data in a particular format—a map—d[id] not constitute the 'creation' or 'development' of information," even though Google made a "choice of presentation" and processed the address data into another "textual or pictorial form."  *Id.*  Here too, Google's "choice of presentation" and "process[ing]" of information provided by a third party does not constitute "creation" or "development" of the information.  The disclosure of private facts is what is allegedly unlawful, and the DOJ—not Google—first disclosed that information.  Google Search's AI Mode is precisely the kind of "neutral tool[]" operating on "voluntary inputs" that does not amount to content development or creation.  *Id.* at 1271.[2]  Plaintiffs' claims are thus barred by Section 230.[3]

### 2.    The First Amendment Independently Bars All The Claims Against Google

Plaintiffs' claims against Google are also independently barred by the First Amendment. The Supreme Court has held that a platform's decisions about what "third-party speech … will be included in or excluded from a compilation" are expressive activities subject to First Amendment protection.  *Moody v. NetChoice, LLC*, 603 U.S. 707, 731 (2024).  This is because the decision

---

[2] Plaintiffs' allegation that Google "is intentionally furnishing … PII in a way designed, or at least substantially certain, to fuel harassment and fear," and is therefore "not [a] neutral search index[]," FAC ¶ 88, is not plausible.  As Plaintiffs elsewhere allege, "Google AI mode is an enhanced search experience," FAC ¶ 55, and that search experience applies neutrally across subject matter areas.

[3] Plaintiffs may point to recent decisions holding that Section 230 fails to protect a service provider in the generative AI context, *see Forrest v. Meta Platforms, Inc.*, 737 F. Supp. 3d 808 (N.D. Cal. 2024); *Bouck v. Meta Platforms, Inc.*, 2026 WL 810036 (N.D. Cal. Mar. 24, 2026), but those cases are distinguishable. Unlike in *Forrest* and *Bouck*, Plaintiffs have not alleged that the "core illegality" of the public disclosure of private facts was undertaken by Google.  *Suddeth v. Meta Platforms, Inc.*, 2026 WL 810252, at *3 (N.D. Cal. Mar. 24, 2026).  Plaintiffs' claims are still precluded by Section 230.

6

whether "to convey posts having a certain content or viewpoint … rest[s] on a set of beliefs about which messages are appropriate and which are not." *Id.* at 738. Here, Plaintiffs fault Google for failing to "remove, de-index, or block access" to content from the Epstein files displaying their personal information, FAC ¶ 69, and for refusing to "implement[] … comprehensive protocols to identify and remove … personally identifying details" from its search platform, *id.* ¶ 130. But as Plaintiffs acknowledge, "Google … maintain[s] policies and procedures for removing content in response to legal demands … and certain categories of sensitive personal information." *Id.* ¶ 85. Google's decision not to remove the content that Plaintiffs think should be removed reflected its expressive judgment about "which messages are appropriate and which are not." *Moody*, 603 U.S. at 738.

The First Amendment also protects Google's publication of truthful information from the public record, particularly given the tremendous public interest in the Epstein investigation. In *The Florida Star v. B.J.F.*, the Supreme Court held that the First Amendment protected a local newspaper's right to re-publish the full name of a sexual assault victim, since the name was "lawfully obtained" from a public police report, and "the article generally, as opposed to the specific identity contained within it, involved a matter of paramount public import." 491 U.S. 524, 536-537 (1989). The fact that the police department had "erroneous[ly], if inadvertent[ly]" published the victim's name in violation of a Florida statutory policy against disclosure did not undercut the newspaper's First Amendment defense. *Id.* at 538; *see also id.* (punishing the press for the government's "fail[ure] to police itself in disseminating information … can hardly be said to be a narrowly tailored means of safeguarding anonymity"). Here, too, the information that Google re-published on its platform had been publicly reported by a government agency, FAC ¶¶ 21, 84, and concerned a "decades-long scheme of sexual abuse and trafficking," *id.* ¶ 24, that is "a matter of paramount public import," *Florida Star*, 491 U.S. at 536-37. Indeed, the Epstein files were of such public importance that Congress specifically required their disclosure, members of the public requested the files through Freedom of Information Act (FOIA) requests, and Congress followed up with additional demands. FAC ¶ 28; *see also id.* ¶ 51 (describing a "well-documented publicity circus surrounding the underlying Epstein investigation").

7

DEFENDANTS GOOGLE AND X.AI'S JOINT
MOTION TO STAY DISCOVERY

### 3.    Plaintiffs' Claims Against Google Fail On The Merits

**UCL.**   Plaintiffs' claim under the unlawful and unfair prongs of California's Unfair Competition Law ("UCL") (Count II) fails as a matter of law.  At the outset, Plaintiffs lack standing to assert a private cause of action against Google under the UCL.  The UCL requires Plaintiffs to demonstrate that they have "suffered injury in fact and [] lost money or property as a result of the unfair competition."  Cal. Bus. & Prof. Code § 17204.  But Plaintiffs do not allege any economic losses caused by Google and xAI, as opposed to the Government.  *Compare* FAC ¶ 90(f) (alleging economic losses as a result of the Government's conduct) *with* FAC ¶ 91 (not alleging economic losses as a result of Google's conduct).  Plaintiffs therefore fail to "allege a causal connection between Google's alleged unlawful or unfair conduct and the economic harm" that Plaintiffs alleged.  *M. K. v. Google LLC*, 2023 WL 4937287, at *8 (N.D. Cal. Aug. 1, 2023) (granting motion to dismiss on the basis that plaintiff failed to state a UCL violation against Google where "the harm result[ed] directly from the [Defendant school district]'s decision to suspend [plaintiff]" for his conduct over Google Classroom, not "Google's alleged unlawful or unfair conduct.").

Plaintiffs also fail to adequately plead a violation of any law, as required under the "unlawful" prong.  *Cel-Tech Communications, Inc. v. Los Angeles Cellular Telephone Co.*, 20 Cal.4th 163, 180 (Cal. 1999).  Plaintiffs mention the California Consumer Privacy Act of 2018 ("CCPA"), FAC ¶ 118, but the CCPA applies to specific types of information not at issue here, such as social security numbers, precise geolocation, or genetic data.  *See* Cal. Civ. Code § 1798.140(ae) (defining "sensitive personal information"); § 1798.100(e) (describing the duty to implement reasonable security procedures "in accordance with" § 1798.81.5); § 1798.81.5 (defining "personal information").  Plaintiffs also mention Section 5(a) of the Federal Trade Commission Act, 15 U.S.C. § 45(a), but they do not explain how the conduct at issue constitutes "unfair practices in or affecting commerce," *id.*, other than to conclusorily assert that Google was "required and obligated to take reasonable measures to protect the victim-identifying information," FAC ¶ 116.  Plaintiffs point to "FTC publications described herein," but no such publications are discussed or described in the complaint.  FAC ¶ 116.

5:26-cv-02624-VKD

DEFENDANTS GOOGLE AND X.AI'S JOINT
MOTION TO STAY DISCOVERY

Plaintiffs also do not plausibly allege any conduct by Google that is "unfair." *See Davis v. HSBC Bank Nevada, N.A.*, 691 F.3d 1152, 1169-1170 (9th Cir. 2012) (describing tests). Plaintiffs have not alleged a threatened impact on competition. FAC ¶¶ 119-130. Nor do the statutes that Plaintiffs invoke evince a public policy that would require Google to affirmatively take down or de-list the public information at issue, as California's doxxing statute prohibits only disclosure of personal identifying information taken "with intent to place another person in reasonable fear for their safety, or the safety of the other person's immediate family," § 1780.89, and the cited "data-security and privacy" statutes, FAC ¶ 122, pertain to dissemination of information not at issue here, as explained above. *See supra* at 8. Additionally, the UCL requires an examination of whether the specific "business act or practice" at issue is unfair. § 17200. While Plaintiffs would understandably prefer that the Government never have publicly disclosed their information, this preference does not demonstrate that *Google*'s indexing and display of otherwise publicly available information is an "immoral, unethical, oppressive, and unscrupulous" business practice. FAC ¶ 120.

**Invasion of Privacy.** Plaintiffs' invasion of privacy claim (Count III) also falls short. A public disclosure claim requires "(1) public disclosure (2) of a private fact (3) which would be offensive and objectionable to the reasonable person and (4) which is not of legitimate public concern. The absence of any one of these elements is a complete bar to liability." *Nelson v. Tucker Ellis, LLP*, 48 Cal. App. 5th 827, 843 (Cal. App. 1st 2020) (quoting *Moreno v. Hanford Sentinel, Inc.*, 172 Cal.App.4th 1125, 1129-1130 (Cal. App. 5th 2009), *as modified* (Apr. 30, 2009)) (emphasis removed) (internal quotations omitted). This claim fails as to Google because Plaintiffs do not allege that Google disclosed any private fact. "A matter that is already public or that has previously become part of the public domain is not private." *Davidson v. Hewlett-Packard Co.*, 2021 WL 4222130, at *8 (N.D. Cal. Sept. 16, 2021), *aff'd*, 2022 WL 17352186 (9th Cir. Dec. 1, 2022) (quoting *Moreno*, 172 Cal. App. 4th at 1130). Here, the information that Google disclosed indisputably was already public when Google disclosed it. Plaintiffs allege that "Google indexed and cached" the relevant materials "*[f]ollowing* the DOJ's public release." FAC ¶ 56 (emphasis added). Accordingly, that information was not "private," and the public disclosure claim fails.

DEFENDANTS GOOGLE AND X.AI'S JOINT
MOTION TO STAY DISCOVERY

*See Goyet v. Dean*, 2003 WL 21470318, at *19 (Cal. App. 4th June 26, 2003) (statements were "not actionable because the conveyed information was a matter of public record" and so "are not statements of *private* fact") (emphasis in original).

**Negligence.** Plaintiffs have not plausibly alleged a negligence claim against Google because Google does not have a duty to refrain from publishing information taken from the public record. *See Bogard v. TikTok Inc.*, 2025 WL 604972, at *8-9 (N.D. Cal. Feb. 24, 2025) (rejecting theory that defendant platforms "had a duty ... to protect users from an unreasonable risk of harm arising out of the use of their apps," including by removing allegedly harmful content in response to takedown requests). Contrary to Plaintiffs' assertion, FAC ¶ 145, the CCPA does not create such a duty for the reasons stated above. *Supra* at 8. And Google is not aware of any authority supporting the other theories of duty discussed in the complaint. *See* FAC ¶¶ 142-146. A negligence claim also requires proximate cause between the breach and injury, *see Century Surety Co. v. Crosby Insurance, Inc.*, 124 Cal. App. 4th 116, 127 (2004), which Plaintiffs have failed to plausibly allege. The alleged connection between Google's conduct and Plaintiffs' injury is attenuated because the Government, not Google, made the information at issue public. *See Ginsberg v. Google Inc.*, 586 F. Supp. 3d 998, 1009-1010 (N.D. Cal. 2022) (holding that "the alleged connection between Google's conduct [of failure to remove an app from the Play Store] and [Plaintiff]'s emotional distress [of living in apprehension of religiously motivated violence] is too attenuated to satisfy the causation element" for "the tort of negligence") (quotations omitted).

**Negligent Infliction of Emotional Distress.** The negligent infliction of emotional distress claim (Count V) fails for the same reasons because "California law … does not recognize negligent infliction of emotional distress as a separate tort" and instead treats it as a negligence claim. *See Maynard v. United Servs. Auto. Ass'n Fed. Sav. Bank*, 2022 WL 1283153, at *1 (N.D. Cal. Feb. 11, 2022) (citing *Burgess v. Superior Court*, 2 Cal.4th 1064, 1072 (1992)). Moreover, Plaintiffs have not plausibly alleged any "malice, breach of a fiduciary duty, physical injury or impact, or some other unusually extreme or outrageous circumstance" necessary to support a claim for NIED specifically. *Varnado v. Midland Funding LLC*, 43 F. Supp. 3d 985, 990 (N.D. Cal. 2014) (quoting *Miranda v. Field Asset Servs.*, 2013 WL 3283701, at *5 (S.D. Cal. June 27, 2013)).

**B.    Plaintiffs' Claims Against xAI Also Fail As A Matter of Law**

xAI's and Google's forthcoming joint motion to dismiss will show that Plaintiffs' claims fail as a matter of law—multiple times over.  Even under Plaintiffs' telling, xAI did nothing more than reproduce information that was already public due to the Department of Justice's posting.  Plaintiffs may or may not have claims against the federal government, but the First Amendment and Section 230 of the Communications Decency Act foreclose any claim against xAI for allegedly displaying information in public records.  For similar reasons, Plaintiffs also fail to state a claim under California law.  For the Court's convenience, xAI incorporates Google's arguments and provides only a short summary of its anticipated arguments with respect to xAI here.

The First Amendment bars Plaintiffs' claims because they seek to impose liability for allegedly displaying information that appeared in public records.  The Supreme Court's decision in *The Florida Star v. B.J.F.*, 491 U.S. 524 (1989), is directly on point.  In that case, a newspaper published the name of a rape victim that it obtained from a report that the police department accidentally—and unlawfully—released to the public.  The Court rejected the claim against the newspaper, explaining that "if a newspaper lawfully obtains truthful information about a matter of public significance then state officials may not constitutionally punish publication of the information." *Id.* at 533 (quoting *Smith. v. Daily Mail Publ'g. Co.*, 443 U.S. 97, 103 (1979)).  The Court reasoned that holding the newspaper liable would be especially inappropriate where the government is the party that inadvertently published the sensitive information: "Where, as here, the government has failed to police itself in disseminating information, it is clear under *Cox Broadcasting*, *Oklahoma Publishing*, and *Landmark Communications* that the imposition of damages against the press for its subsequent publication can hardly be said to be a narrowly tailored means of safeguarding anonymity." *Id.* at 538.  Accordingly, "[o]nce the government has placed such information in the public domain," any "restitution must rest upon the willingness of the government to compensate victims for their loss of privacy and to protect them from the other consequences of its mishandling of the information which these victims provided in confidence." *Id.*  Here, Plaintiffs attempt to hold xAI liable for displaying information lawfully obtained from a government website on an issue of such public significance that Congress passed a law requiring

11

its disclosure. Whether the Government acted unlawfully when it made some of that information public is irrelevant as far as Plaintiffs' claims against xAI are concerned. *Florida Star* forecloses liability either way.

The Communications Decency Act independently bars Plaintiffs' claims. Section 230 states that "[n]o provider . . . of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider." 47 U.S.C. § 230(c)(1). But that is exactly what Plaintiffs attempt here: they seek to hold xAI liable as the publisher of information posted online by a third party—the Department of Justice. Whatever the merits of Plaintiffs' claims against the Government, Section 230 forbids holding xAI responsible as a publisher just because information posted online by the Government appeared on its platform.

Finally, Plaintiffs fail to state any plausible claim to relief against xAI. The invasion of privacy claim is deficient because—as the complaint repeatedly acknowledges—the disputed information was already public. *See Sipple v. Chronicle Publishing Co.*, 154 Cal. App. 3d 1040, 1047 (1984) (explaining that a matter already in the public domain cannot support a claim for public disclosure of private fact). The negligence claims fail because Plaintiffs have not adequately alleged that xAI owed them any cognizable duty not to disclose already-public facts. *See Tremblay v. OpenAI, Inc.*, 716 F. Supp. 3d 772 (N.D. Cal. 2024) (dismissing negligence claims where Plaintiffs failed to adequately identify a recognized legal duty). And Plaintiffs' unfair competition law claim fails because they have not plausibly alleged any predicate "unlawful" or "unfair" conduct.

For these reasons, Defendants' anticipated joint motion to dismiss is potentially dispositive of the claims in this case.

## II.    The Balance Of Harms Warrants Staying Discovery

The balance of the harms weighs in favor of staying discovery. "The parties' time and resources are better spent" resolving Defendants' anticipated joint motion to dismiss rather than "expend[ing] resources on discovery which may not ultimately be required." *Flores v. Cruz*, 2017 WL 415345, at *1 (E.D. Cal. Jan. 30, 2017). A stay will prevent "costly and wasteful" discovery into claims that will likely be dismissed and allow for more "tailored and efficient discovery" on

12

any claims that might remain. *Mireskandari v. Daily Mail & General Trust*, 2013 WL 1212994, at *4 (C.D. Cal. Jan. 14, 2013). Indeed, "first resolving the motion to dismiss is the better course" because, even if not case dispositive, "resolution on the Motion to Dismiss may narrow the issues," and so a short stay of discovery will best "serve judicial economy and efficiency for the parties." *Huang v. Futurewei Techs., Inc.*, 2018 WL 1993503, at *4 (N.D. Cal. April 27, 2018) (quotation marks omitted); *accord Committee for Immigrant Rights of Sonoma Cty. v. County of Sonoma*, 2009 WL 10692620, at *2 (N.D. Cal. Apr. 20, 2009).

The relevant harms of the burden and expense of unnecessary discovery are particularly important here, where Google and xAI plan to assert that Section 230 and the First Amendment bar each of Plaintiffs' claims against them. In cases where Section 230 is asserted as a defense, courts routinely stay discovery while a motion to dismiss is pending. *See, e.g.*, *Onuoha v. Facebook*, 2017 WL 11681325, at *1-2 (N.D. Cal. Apr. 7, 2017). This is because Section 230 "'must be interpreted to protect websites not merely from ultimate liability, but from having to fight costly and protracted legal battles.'" *Id.* at *1 (quoting *Roommates.com*, 521 F.3d at 1175); *see also Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982) (holding in the qualified immunity context that "discovery should not be allowed" until the "threshold immunity question is resolved"). It would undermine Section 230's purpose to permit discovery to proceed while the Court resolves the issue of Section 230 immunity. Google and xAI's First Amendment defenses provide further justification for a stay of discovery. Courts have stayed discovery in cases where a First Amendment defense is asserted because of a concern about burdening First Amendment rights. *See Realtek Semiconductor Corp. v. MediaTek, Inc.*, 732 F. Supp. 3d 1101, 1118 (N.D. Cal. 2024) ("substantial" burdens would result from denial of discovery stay in antitrust lawsuit, including, among other things, the "chilling of defendants' First Amendment-protected petitioning activity"); *Moldea v. New York Times Co.*, 137 F.R.D. 1, 2 (D.D.C. 1990) (granting stay of discovery in part because of "significant First Amendment issues raised in this case"). Allowing discovery to proceed here would risk burdening Google and xAI for their exercise of free-speech rights, which, as discussed above, include their right to determine what third-party content should be included on their platforms. *See Moody*, 603 U.S. at 731.

Finally, Plaintiffs will not be prejudiced by a stay. If the Court permits any of Plaintiffs' claims to go forward, Plaintiffs' ability to obtain discovery for those claims at that time would not be prejudiced. Plaintiffs have represented that they may file a preliminary injunction motion, and that their decision whether to file may turn on the discovery they obtain. But Plaintiffs' delay of two-and-a-half months after filing this suit to even serve Google or request waiver of service belies the notion that injunctive relief is urgently needed. *See Broadcom Corp. v. Qualcomm Inc.*, 2005 WL 5925584, at \*4, 6 (C.D. Cal. Oct. 19, 2005) (denying injunctive relief where movant "unduly delayed bringing the instant motion") (citing *Lydo Enterprises Inc. v. City of Las Vegas*, 745 F.2d 1211, 1213 (9th Cir.1984)); *see also Oakland Trib., Inc. v. Chron. Pub. Co.*, 762 F.2d 1374, 1377 (9th Cir. 1985) ("Plaintiff's long delay before seeking a preliminary injunction implies a lack of urgency and irreparable harm."). So too does the contingent nature of their potential motion.

Discovery is also likely to be irrelevant to Plaintiffs' preliminary injunction motion. Plaintiffs are seeking an injunction requiring Google and xAI to "remove, de-index, and cease displaying" their personal information from the Epstein files. FAC at p. 47. But Plaintiffs can simply search Google to determine whether their personal information is still being displayed, just as they did before filing suit. *See* FAC ¶¶ 57-69. The FAC does not appear to raise any other allegations requiring factual discovery from Google or xAI. At best, Plaintiffs' allegations depend on facts that are either public or within their own possession—including, for example, their allegations that Plaintiffs suffered "severe harm caused by continued dissemination," FAC ¶ 139, and that they maintained a "reasonable expectation of privacy" in the information disclosed on Google Search, FAC ¶ 134. This is just as true for technical descriptions of how Google Search and AI Mode operate, to the extent that is even at issue. *See, e.g.*, Reid, *AI in Search: Going beyond information to intelligence*, THE KEYWORD (May 20, 2025), https://blog.google/products-and-platforms/products/search/google-search-ai-mode-update/#ai-mode-search (public Google resource describing operation of AI Mode). Finally, Defendants expect that, like their anticipated motion to dismiss, a preliminary injunction motion could be denied on purely legal grounds and would fail even if the allegations in the complaint are presumed to be true.

14

DEFENDANTS GOOGLE AND X.AI'S JOINT MOTION TO STAY DISCOVERY

**CONCLUSION**

For the foregoing reasons, Defendants Google and xAI respectfully request that this Court stay discovery against them until the Court has resolved their anticipated motion to dismiss.

Dated: July 8, 2026                                        Respectfully submitted,

/s/ Robert E. Dunn                                      /s/ Emily Barnet
Robert E. Dunn, State Bar No. 275600      Emily Barnet (*pro hac vice*)
rdunn@eimerstahl.com                           emily.barnet@wilmerhale.com
**EIMER STAHL LLP**                             **WILMER CUTLER PICKERING**
1999 S. Bascom Ave. Suite 1025             **HALE AND DORR LLP**
Campbell, CA 95008                              250 Greenwich Street
Phone: 408-889-1690                             New York, NY 10007
                                                         Telephone: (212) 230-8800
*Attorney for Defendant X.AI Corp.*
                                                         Sonal N. Mehta, State Bar No. 222086
                                                         sonal.mehta@wilmerhale.com
                                                         **WILMER CUTLER PICKERING**
                                                         **HALE AND DORR LLP**
                                                         2600 El Camino Real, Suite 400
                                                         Palo Alto, CA 94306
                                                         Telephone: (650) 858-6000

                                                         Allison Schultz (*pro hac vice*)
                                                         allison.schultz@wilmerhale.com
                                                         **WILMER CUTLER PICKERING**
                                                         **HALE AND DORR LLP**
                                                         2100 Pennsylvania Avenue NW
                                                         Washington, DC 20037
                                                         Telephone: (202) 663-6000

                                                         *Attorneys for Defendant Google LLC*

15

**SIGNATURE ATTESTATION**

Pursuant to Civil L.R. 5-1(i), I hereby attest that concurrence in the filing of the document was obtained from the document's signatories.  I declare under penalty of perjury that the foregoing is true and correct.

Dated: July 8, 2026                                    By:  */s/ Emily Barnet*
                                                            Emily Barnet (*pro hac vice*)

16