Julie C. Erickson, State Bar No. 293111 (julie@eko.law)
Elizabeth A. Kramer, State Bar No. 293129 (elizabeth@eko.law)
Kevin M. Osborne, State Bar No. 261367 (kevin@eko.law)
**ERICKSON KRAMER OSBORNE LLP**
959 Natoma Street
San Francisco, CA 94103
Phone: 415-635-0631
Fax: 415-599-8088

*Attorneys for Plaintiffs*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN JOSE DIVISION

| | |
|---|---|
| JANE DOE 1, JANE DOE 2, JANE DOE 3, JANE DOE 4, and JANE DOE 5, individually and on behalf of others similarly situated,<br><br>    Plaintiffs,<br><br>vs.<br><br>UNITED STATES OF AMERICA, GOOGLE LLC, and X.AI CORP.,<br><br>    Defendants. | Case No.: 5:26-cv-02624-VKD<br><br>**PLAINTIFFS' OPPOSITION TO DEFENDANTS GOOGLE LLC AND X.AI CORP.'S JOINT MOTION TO STAY DISCOVERY**<br><br>Judge: Hon. Virginia K. DeMarchi<br>Courtroom 2, 5th Floor<br><br>Date: August 18, 2026<br>Time: 10:00 a.m. |

## TABLE OF CONTENTS

I.   INTRODUCTION ...................................................................................................................1

II.  FACTUAL BACKGROUND ....................................................................................................1

III. ANALYSIS ..........................................................................................................................3

    A.   Under the Applicable Standard, Discovery Stays Are Disfavored......................................3

    B.   The Court Cannot Grant a Stay Based on a Motion It Has Not Seen .................................4

    C.   Google and xAI's "Anticipated" Arguments Show Why Discovery Should Proceed........5

        1)   Section 230 Does Not Extend to Content Generated by AI Mode and Grok..................5

        2)   Defendants' Disclosures of Victims' Personal Information Are Not Protected by the First Amendment ........................................................................................................8

        3)   Defendants' Fail to Show Their Other Anticipated Arguments Warrant a Stay...........11

    D.   Discovery Is Relevant to Anticipated Motions .................................................................14

IV.  CONCLUSION ..................................................................................................................15

PLAINTIFFS' OPPOSITION TO DEFENDANTS GOOGLE LLC    Case No.: 5:26-cv-02624-VKD
AND X.AI CORP.'S JOINT MOTION TO STAY DISCOVERY

i

# TABLE OF AUTHORITIES

**CASES**

*Anderson v. TikTok, Inc.*,
116 F.4th 180 (3d Cir. 2024) ...............................................................................................6, 8

*Blankenship v. Hearst Corp.*,
519 F.2d 418 (9th Cir. 1975) ....................................................................................................4

*Bloomberg v. Interinsurance Exchange*,
162 Cal.App.3d 571 (Ct. App. 1984) ......................................................................................13

*Bogard v. TikTok Inc.*,
2025 WL 604972 (N.D. Cal. Feb. 24, 2025) ...........................................................................12

*Bouck v. Meta Platforms, Inc.*,
2026 WL 810036 (N.D. Cal. Mar. 24, 2026) .............................................................................6

*Diaz v. Oakland Trib., Inc.*,
139 Cal. App. 3d 118 (Cal. Ct. App. 1983) .............................................................................10

*DiGiacinto v. RB Health (US) LLC*,
2022 WL 20087460 (N.D. Cal. Dec. 5, 2022) ...........................................................................4

*EHang Inc. v. Wang*,
2021 WL 3934325 (N.D. Cal. Aug. 20, 2021) ...........................................................................5

*Fair Hous. Council of San Fernando Valley v. Roommates.Com, LLC*,
521 F.3d 1157 (9th Cir. 2008) ..............................................................................................1, 5

*Fed. Trade Comm'n v. Roomster Corp.*,
654 F. Supp. 3d 244 (S.D.N.Y. 2023) .......................................................................................6

*Florida Star v. B.J.F.*,
491 U.S. 524 (1989) ...............................................................................................................8, 9

*Forrest v. Meta Platforms, Inc.*,
737 F. Supp. 3d 808 (N.D. Cal. 2024)....................................................................................5, 6

*Fraley v. Facebook, Inc.*,
830 F. Supp. 2d 785 (N.D. Cal. 2011)........................................................................................5

*Gilmore v. Jones*,
370 F. Supp. 3d 630 (W.D. Va. 2019)........................................................................................6

*Gray v. First Winthrop Corp.*,
133 F.R.D. 39 (N.D. Cal. 1990) .................................................................................................4

*In re Apple Inc. App Store Simulated Casino-Style Games Litig.*,
806 F. Supp. 3d 1015 (N.D. Cal. 2025)......................................................................................5

*Kinderstart.com LLC v. Google, Inc.*,
2006 WL 3246596 (N.D. Cal. July 13, 2006) ...........................................................................9

PLAINTIFFS' OPPOSITION TO DEFENDANTS GOOGLE LLC    Case No.: 5:26-cv-02624-VKD
AND X.AI CORP.'S JOINT MOTION TO STAY DISCOVERY

ii

*Mitchell v. Gonzales*,
  54 Cal. 3d 1041 (1991) ............................................................................................ 13

*Molien v. Kaiser Found. Hosps.*,
  27 Cal. 3d 916 (1980) .............................................................................................. 13

*Moody v. NetChoice, LLC*,
  603 U.S. 707 (2024) ................................................................................................... 8

*NetChoice v. Griffin*,
  812 F. Supp. 3d 905 (W.D. Ark. 2025) ..................................................................... 6

*Optronic Techn., Inc. v. Ningbo Sunny Electronic Co., Ltd.*,
  2018 WL 1569811 (N.D. Cal., Feb. 16, 2018) .......................................................... 4

*Pac. Lumber Co. v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA*,
  220 F.R.D. 349 (N.D. Cal. 2003) ............................................................................ 14

*Pace v. Baker-White*,
  432 F. Supp. 3d 495 (E.D. Pa. 2020) ........................................................................ 6

*People v. Bryant*,
  94 P.3d 624 (Colo. 2004) ....................................................................................... 8, 9

*Perkins v. Linkedin Corp.*,
  53 F. Supp. 3d 1222 (N.D. Cal. 2014) ...................................................................... 5

*Rabin v. Google LLC*,
  725 F. Supp. 3d 1028 (N.D. Cal. 2024) ..................................................................... 7

*Roland v. Letgo, Inc.*,
  644 F. Supp. 3d 907 (D. Colo. 2022) ........................................................................ 6

*San Francisco Tech. v. Kraco Enterprises LLC*,
  2011 WL 2193397 (N.D. Cal. June 6, 2011) .......................................................... 3, 4

*Serenium, Inc. v. Zhou*,
  2021 WL 7541379 (N.D. Cal. Feb. 11, 2021) ........................................................... 4

*Shulman v. Grp. W Prods., Inc.*,
  18 Cal. 4th 200 (1998) ............................................................................................. 10

*Sipple v. Chronicle Publishing Co.*,
  154 Cal.App.3d 1040 (1984) ................................................................................... 11

*Small Just. LLC v. Xcentric Ventures LLC*,
  99 F. Supp. 3d 190 (D. Mass. 2015) ......................................................................... 6

*Tradebay, LLC v. eBay, Inc.*,
  278 F.R.D. 597 (D. Nev. 2011) ............................................................................... 14

*Tremblay v. OpenAI, Inc.*,
  716 F. Supp. 3d 772 (N.D. Cal. 2024) .................................................................... 12

PLAINTIFFS' OPPOSITION TO DEFENDANTS GOOGLE LLC       Case No.: 5:26-cv-02624-VKD
AND X.AI CORP.'S JOINT MOTION TO STAY DISCOVERY

iii

**STATUTES**

47 U.S.C. § 230 ....................................................................................................................1

Cal. Bus. & Prof. Code § 17200 ........................................................................................11

Epstein Files Transparency Act,
    Pub. L. 119-38, November 19, 2025, 139 Stat 656 .....................................................10

Fed. R. Civ. P. 26(b) ............................................................................................................3

Fed. R. Civ. P. 26(c)(1) ........................................................................................................4

PLAINTIFFS' OPPOSITION TO DEFENDANTS GOOGLE LLC          Case No.: 5:26-cv-02624-VKD
AND X.AI CORP.'S JOINT MOTION TO STAY DISCOVERY

iv

## STATEMENT OF ISSUES TO BE DECIDED

Pursuant to the Local Rules of Practice in Civil Proceedings before the United States District Court for the Northern District of California, Rule 7-4(a)(3), Plaintiffs asks the Court to rule on the following issues:

(1) Whether the Court should deny the motion to stay because Google and xAI's dispositive motion is not pending but, instead, is only anticipated;

(2) Whether a stay of discovery should be denied where Defendants Google LLC and X.AI Corp.'s anticipated defense under Section 230 of the Communications Decency Act does not extend to immunize their own original self-generated AI content;

(3) Whether a stay of discovery should be denied where Defendants Google LLC and X.AI Corp.'s anticipated defense under the First Amendment does not immunize their disclosure of the identities of Jeffrey Epstein victims, because the identities and private information of these sexual abuse victims, which no American newspaper has disclosed, are not newsworthy; and

(4) Whether discovery is necessary to oppose Defendants Google LLC and X.AI Corp.'s anticipated motion to dismiss.

PLAINTIFFS' OPPOSITION TO DEFENDANTS GOOGLE LLC    Case No.: 5:26-cv-02624-VKD
AND X.AI CORP.'S JOINT MOTION TO STAY DISCOVERY

v

## I.    INTRODUCTION[1]

As a matter of black letter law, Section 230 of the Communications Decency Act does not shield the creator of online content. 47 U.S.C. § 230(c) (no immunity for an "information content provider"); *see also Fair Hous. Council of San Fernando Valley v. Roommates.Com, LLC*, 521 F.3d 1157, 1162 (9th Cir. 2008) ("*Roommates.Com*") ("immunity applies only if the interactive computer service provider is not also an information content provider, which is defined as someone who is responsible, in whole or in part, for the creation or development of the offending content").

Defendants Google LLC ("Google") and X.AI Corp. ("xAI") both used AI tools that scoured the Internet, collected private information about victims of sexual abuse, and generated "unique" and "original" content. Nevertheless, they are so certain that Section 230 will give them a free pass that they propose this case end before it even begins. By Google and xAI's logic, the mere existence of information in another place allows immunity of all other content based in any way on that source information. This would be an absurd result, immunizing essentially every content provider who expressed, in its own words, illegal content, just because those same words appeared elsewhere, rearranged and in another context. Their Section 230 defense is likely to fail. Similarly, Google and xAI assert a defense under the First Amendment, claiming their disclosure of victims' private information, without any surrounding context or newsworthiness, is protected speech. That is not the law, and it is not grounds to dismiss a complaint before discovery. Ultimately, Plaintiffs' need to secure discovery outweighs the imagined burdens of Google and xAI's participation in the case. Their motion to stay should be denied.

## II.    FACTUAL BACKGROUND

Plaintiffs JANE DOEs 1-5 are Jeffrey Epstein victims. ¶¶ 15-19.[2] Their identities were supposed to be shielded from public disclosure. ¶ 31. The U.S. government, acting with reckless

---

[1] In all quotations, all internal quotation marks, citations, and alterations have been removed, and all emphases added, unless otherwise noted.

[2] All citations using the "¶" symbol refer to paragraphs in Plaintiffs' First Amended Complaint, Dkt. No. 16 ("Complaint"), unless otherwise noted.

PLAINTIFFS' OPPOSITION TO DEFENDANTS GOOGLE LLC          Case No.: 5:26-cv-02624-VKD
AND X.AI CORP.'S JOINT MOTION TO STAY DISCOVERY

1

disregard for victims' rights and retaliatory motives, released thousands of unredacted documents publicly disclosing approximately 100 victims' identities. ¶¶ 2, 32, 45, 53.

Google and xAI recently deployed AI chatbots known as AI Mode and Grok, respectively. These new AI tools are trained on warehouses of electronic data and constantly add to their store of knowledge by scouring the Internet to collect and index information. ¶¶ 54, 71. When a user prompts them, these platforms generate specific, unique, tailored responses using the essentially infinite body information available to them. ¶ 55, 71.

When the Department of Justice disclosed the unredacted Epstein files, Google and xAI collected and indexed the names and private information Plaintiffs. ¶ 56, 74. Plaintiffs allege no less than twenty times in their Complaint that AI Mode and Grok "produced," "generated," or "created" victim-identifying content using the private information they collected from the Department of Justice and elsewhere on the web. *See*, *e.g.*, ¶¶ 5, 22, 23, 55, 74, 123, 147, 167, 179. Testing conducted on AI Mode and Grok, which is quoted extensively in Plaintiffs' Complaint, demonstrated that AI Mode and Grok were not merely publishing content created by others—they were generating unique answers in response to specific prompts with original content. ¶¶ 57-67 (AI Mode stating that Plaintiffs were included in the Epstein files in ways that were not stated elsewhere by third parties); ¶¶ 75-81 (same with respect to Grok). As a result, countless Internet users were able to see Plaintiffs' names, contact information, photos, and private emails, all in connection with one of history's most prolific sex traffickers. ¶¶ 15-19.

Plaintiffs, on their own and through counsel, contacted Google and xAI and demanded they cease and desist from generating content that displays their private information in connection with Epstein. ¶¶ 15-19. Google and xAI ignored these demands. ¶ 5. Left with no choice, Plaintiffs filed suit against Google in March 2026 and xAI in June 2026, each time demanding the same injunctive relief sought in their pre-filing correspondence. *Id*.

On June 30, 2026, Plaintiffs served Google and xAI with three requests for production of documents, aimed at obtaining information Plaintiffs intend to use in seeking injunctive relief.

PLAINTIFFS' OPPOSITION TO DEFENDANTS GOOGLE LLC      Case No.: 5:26-cv-02624-VKD
AND X.AI CORP.'S JOINT MOTION TO STAY DISCOVERY

2

Osborne Dec., ¶ 15; Ex. 1; Ex. 2.[3] On July 8, 2026, all Defendants moved to stay discovery pending the outcomes of their yet-to-be-filed motions to dismiss. Dkt. No. 46 at 1; Dkt. No. 47 at 1. None of the Defendants attached their motions to dismiss to their motions to stay, instead only alluding to the arguments they "anticipated" making in those motions. *Id*.

### III.    <u>ANALYSIS</u>

First and foremost, the Court should deny Google and xAI's motion to stay because there is no pending dispositive motion. Google and xAI merely hint at what their motion to dismiss may argue, making it impossible for the Court to examine (and Plaintiffs to oppose) its merits. Assuming Google and xAI's motion to dismiss makes the arguments they pose here, it is likely to fail. Their claim to immunity under Section 230 asks the Court to break the statute and protect content that Google and xAI themselves created. Their First Amendment defense likewise claims protections to which they are not entitled, asking the Court to treat them as newspapers when the content at issue has no public import whatsoever. Their other abbreviated arguments for dismissal each fail for their own shortcomings. Finally, while impossible to say whether discovery is necessary for an unfiled motion no one has seen, discovery is necessary for Plaintiffs to carry out the important objective of this litigation: to enjoin Google and xAI's ongoing disclosures of Plaintiffs' private, sexual abuse-related information. The Court should deny this motion and allow discovery to carry on.

### A. Under the Applicable Standard, Discovery Stays Are Disfavored

Under Rule 26(b) of the Federal Rules of Civil Procedure, parties "may obtain discovery regarding any nonprivileged matter that is relevant to any party's claims or defense." Fed. R. Civ. P. 26(b). The Federal Rules of Civil Procedure "do not provide for automatic or blanket stays of discovery" when a potentially dispositive motion is pending. *San Francisco Tech. v. Kraco Enterprises LLC*, 2011 WL 2193397, at *2 (N.D. Cal. June 6, 2011). Rather, stays of discovery are "the exception to the ordinary rule that discovery may proceed, even if a

---

[3] These exhibits are attached to the Declaration of Kevin Osborne in Support of this Opposition ("Osborne Dec."), filed herewith. Plaintiffs also rely on this Declaration to refute arguments that Plaintiffs' delay in this litigation moots their potential motion for preliminary injunction.

PLAINTIFFS' OPPOSITION TO DEFENDANTS GOOGLE LLC          Case No.: 5:26-cv-02624-VKD
AND X.AI CORP.'S JOINT MOTION TO STAY DISCOVERY

3

dispositive motion is filed." *Serenium, Inc. v. Zhou*, 2021 WL 7541379, at *1 (N.D. Cal. Feb. 11, 2021). In fact, "district courts tend to look unfavorably upon such blanket stays" while motions to dismiss are pending because they are "directly at odds with the need for expeditious resolution of litigation." *Id.* at *2.

A party seeking to stay discovery pending the resolution of a dispositive motion bears a "heavy burden" of proving that the stay is warranted by making a "strong showing" of good cause. *Gray v. First Winthrop Corp.*, 133 F.R.D. 39, 40 (N.D. Cal. 1990) (quoting *Blankenship v. Hearst Corp.*, 519 F.2d 418, 429 (9th Cir. 1975)). In this context, "good cause" means protecting a party or person from "annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c)(1). "The moving party must show a particular and specific need for the protective order, as opposed to making stereotyped or conclusory statements." *Optronic Techn., Inc. v. Ningbo Sunny Electronic Co., Ltd.*, 2018 WL 1569811, at*1 (N.D. Cal., Feb. 16, 2018). Where, as here, the party moving to stay discovery justifies its motion not with a defect in the plaintiff's complaint but on its own affirmative defense, this burden is even higher.

### B.  The Court Cannot Grant a Stay Based on a Motion It Has Not Seen

In this District, a party moving to stay discovery based on a pending dispositive motion must satisfy the following two-part test: (1) the pending motion is potentially dispositive of the entire case, and (2) the pending motion can be decided absent additional discovery. *San Francisco Tech.*, 2011 WL 2193397, at *2. Critically, this test applies only where there is a pending motion. *See DiGiacinto v. RB Health (US) LLC*, 2022 WL 20087460, at *2 (N.D. Cal. Dec. 5, 2022) ("In this case, as Defendant's motion to dismiss has not yet been filed, the court cannot assess the merits of the motion").

Here, no one no one knows what Google and xAI will ultimately argue in their motion to dismiss—it hasn't been filed. Nevertheless, they ask the Court to evaluate whether the motion to dismiss is dispositive, whether discovery is necessary to rule on it, and to do both on blind faith. Rest assured, however, they "anticipate" the motion will be dispositive without discovery. Dkt. No. 46 at 3, fn 1 & 12. Compounding the problem, Google and xAI claim they "may raise additional arguments" in the motion to dismiss besides those foreshadowed in their motion to

PLAINTIFFS' OPPOSITION TO DEFENDANTS GOOGLE LLC          Case No.: 5:26-cv-02624-VKD
AND X.AI CORP.'S JOINT MOTION TO STAY DISCOVERY

stay. *Id*. at 3, fn 1. So not only do they ask the Court to rule based on "anticipated" arguments, they ask the Court to rule based on completely unknown arguments. Without seeing the motion to dismiss, Plaintiffs cannot be expected to oppose, and the Court cannot be expected to grant, a motion to stay discovery. Based on this alone, the motion to stay should be denied.[4]

**C. Google and xAI's "Anticipated" Arguments Show Why Discovery Should Proceed**

Assuming Google and xAI's motion to dismiss will be based on the arguments presented here, the Court should deny the stay. A "preliminary peek" into the merits of the anticipated motion confirms that Google and xAI have "not made the strong showing required to warrant a discovery stay." *EHang Inc. v. Wang*, 2021 WL 3934325, at *2 (N.D. Cal. Aug. 20, 2021).

*1) Section 230 Does Not Extend to Content Generated by AI Mode and Grok*

"Section 230 is an affirmative defense that does not compel dismissal at the pleading stage unless the plaintiff pleads itself out of court." *In re Apple Inc. App Store Simulated Casino-Style Games Litig.*, 806 F. Supp. 3d 1015, 1033 (N.D. Cal. 2025) (citing *Forrest v. Meta Platforms, Inc.*, 737 F. Supp. 3d 808 (N.D. Cal. 2024)).

As a matter of settled Ninth Circuit law, an internet service provider that generates its own content has no protection for that content under Section 230.

> A website operator can be both a service provider and a content provider: If it passively displays content that is created entirely by third parties, then it is only a service provider with respect to that content. But as to content that it creates itself, or is responsible, in whole or in part for creating or developing, the website is also a content provider.

*Roommates.Com*, 521 F.3d at 1165; *see also Perkins v. Linkedin Corp.*, 53 F. Supp. 3d 1222, 1247 (N.D. Cal. 2014) (LinkedIn had no immunity under Section 230 for what plaintiff alleged was "new, original, and unique content created and developed in whole or in part by LinkedIn");

---

[4] Had Google and xAI followed the Court's Standing Order and sought the a protective order staying discovery through the discovery dispute process, as Plaintiffs urged (Osborne Dec., ¶ 16), this motion may have been avoided. *See* Standing Order for Civil Cases, Magistrate Judge Virginia K. Demarchi, No. 4. ("[t]he following procedures shall govern the resolution of discovery disputes, <u>including disputes about proposed protective orders</u>"). Google and xAI insisted on filing this motion, notwithstanding the Court's Standing Order. Osborne Dec., ¶ 16.

PLAINTIFFS' OPPOSITION TO DEFENDANTS GOOGLE LLC    Case No.: 5:26-cv-02624-VKD
AND X.AI CORP.'S JOINT MOTION TO STAY DISCOVERY

5

*Fraley v. Facebook, Inc.*, 830 F. Supp. 2d 785, 802 (N.D. Cal. 2011) ("CDA immunity applies only if the interactive computer service provider is not also an information content provider").

Courts throughout the country reach the same conclusion. *See*, *e.g.*, *NetChoice v. Griffin*, 812 F. Supp. 3d 905, 930 (W.D. Ark. 2025) ("Section 230 does not immunize information content providers from liability for their own content"); *Anderson v. TikTok, Inc.*, 116 F.4th 180, 184 (3d Cir. 2024) ("Section 230 immunizes only information provided by another"); *Fed. Trade Comm'n v. Roomster Corp.*, 654 F. Supp. 3d 244, 267 (S.D.N.Y. 2023) ("Section 230 only provides immunity if the interactive service provider is not also an information content provider of the content which gives rise to the underlying claim"); *Roland v. Letgo, Inc.*, 644 F. Supp. 3d 907, 916 (D. Colo. 2022), *aff'd,* 2024 WL 372218 (10th Cir. Feb. 1, 2024) ("If a website passively displays content that is created entirely by third parties, then it is only a service provider with respect to that content. But as to content that it creates itself the website is also a content provider."); *Pace v. Baker-White*, 432 F. Supp. 3d 495, 506 (E.D. Pa. 2020), *aff'd*, 850 F. App'x 827 (3d Cir. 2021) ("if an entity is responsible, in whole or in part, for the creation or development of information that forms the subject matter of the lawsuit, it is *itself* a content provider and is not protected" (original emphasis)); *Gilmore v. Jones*, 370 F. Supp. 3d 630, 662 (W.D. Va. 2019) ("Section 230 immunity does not cover content which the defendant created himself or other content, although originating with a third party, which the defendant significantly altered"); *Small Just. LLC v. Xcentric Ventures LLC*, 99 F. Supp. 3d 190, 200 (D. Mass. 2015), *aff'd,* 873 F.3d 313 (1st Cir. 2017) ("CDA immunity does not apply if the interactive computer service provider is also an information content provider, which is defined in the CDA as an entity that is responsible, in whole or in part, for the creation or development of any allegedly fraudulent information").

Where, as here, the defendant's generative AI created the content in question, the law is no different. In *Forrest v. Meta Platforms, Inc.*, Judge Pitts denied a motion to dismiss where the plaintiff alleged Facebook ads were generated in part using Meta's generative AI tools. 737 F. Supp. 3d 808, 818 (N.D. Cal. 2024). Similarly, in *Bouck v. Meta Platforms, Inc.*, Meta moved to dismiss claims that it aided advertisers a fraudulent investment scheme. 2026 WL 810036 (N.D.

PLAINTIFFS' OPPOSITION TO DEFENDANTS GOOGLE LLC      Case No.: 5:26-cv-02624-VKD
AND X.AI CORP.'S JOINT MOTION TO STAY DISCOVERY

6

Cal. Mar. 24, 2026). Judge Seeborg denied the motion based on the complaint's allegation that "Meta participated in the construction of the ads by literally *generating*, using artificial intelligence, the images and text in the advertisements." *Id*. at *4 (original emphasis). Even the authors of Section 230 have gone on record as stating Section 230 does not protect tools like AI Mode and Grok. *See* Cristiano Lima-Strong, *AI Chatbots Won't Enjoy Tech's Legal Shield, Section 230 Authors Say*, WASH. POST (Mar. 17, 2023)[5] (quoting Sen. Ron Wyden's conclusion that AI chatbots "should not be protected by Section 230. And it isn't a particularly close call.").

Plaintiffs' allegations that AI Mode and Grok created the offending content in this case are too numerous to count. They include allegations that AI Mode "generates a single, conversational answer as unique, Google-created content" (¶ 55); that "Grok takes a user's prompt, augments it with real-time data from public X posts and web searches, and then writes text, or generates images or video by selecting the most likely next token to form coherent and contextually relevant responses" (¶ 71); that "Google AI Mode and Grok are not neutral search indexes; they are active recommenders and content generators that package victim PII as part of a narrative output" (¶ 88); and that Google and xAI "are not simply operating neutral platforms of other creators' content; they are unfairly leveraging their infrastructure and algorithms to generate unique content […]" (¶ 123, 167).

"Plaintiffs do not need to plead facts that would *prove* (or even plausibly suggest) that Google's [and xAI's] affirmative defense does not apply; they simply need to plead facts demonstrating a potential factual dispute that could affect whether the defense applies." *Rabin v. Google LLC*, 725 F. Supp. 3d 1028, 1031 (N.D. Cal. 2024) (original emphasis). Plaintiffs' allegations here are more than enough to show a potential factual dispute that will affect whether AI Mode and Grok created the content at issue and whether Section 230 will protect them. Accordingly, Google and xAI's anticipated motion to dismiss is unlikely to prevail.

---

[5]The article, last viewed July 15, 2026, is available at: available at: https://www.washingtonpost.com/politics/2023/03/17/ai-chatbots-wont-enjoy-techs-legal-shield-section-230-authors-say/.

PLAINTIFFS' OPPOSITION TO DEFENDANTS GOOGLE LLC          Case No.: 5:26-cv-02624-VKD
AND X.AI CORP.'S JOINT MOTION TO STAY DISCOVERY

7

2) *Defendants' Disclosures of Victims' Personal Information Are Not Protected by the First Amendment*

Google and xAI's second "anticipated" argument is based on the protections of the First Amendment, as articulated by the Supreme Court in *Moody v. NetChoice, LLC*, 603 U.S. 707 (2024). Dkt. No. 46 at 6-7. Notably, if Google and xAI advance this argument in a motion to dismiss, they will argue their Section 230 defense into a brick wall. By claiming the protections of the First Amendment, Google and xAI concede that they are not merely publishers of a third party's content—they are first-party content producers. This point was recognized by the Third Circuit in *Anderson v. TikTok, Inc.*, which held a that a social media platform engaged in first-party speech when it curated compilations of others' content, conduct which falls outside the protections of Section 230. 116 F.4th 180, 183-84 (3d Cir. 2024) (relying on *Moody*). Regardless, a motion to dismiss based on First Amendment protections is unlikely to prevail and does not warrant a stay.

Citing *The Florida Star v. B.J.F.*, 491 U.S. 524 (1989), Google and xAI claim they are free to disclose the identities of sexual abuse victims because, as they argue, they are matters of "tremendous public interest." Dkt. No. 46 at 7. *Florida Star* is not the life raft Google and xAI would have the Court believe. In that case, a newspaper challenged the constitutionality of a Florida law prohibiting the disclosure of rape victims' identities in an "instrument of mass communication." 491 U.S. at 526. The Supreme Court struck down the law based on the fact that it prohibited disclosures only by certain instruments and not by other means, and because its negligence *per se* standard imposed liability automatically upon publication. *Id*. at 540. But the Court refused to hold, as the newspaper requested (and as Google and xAI imply), "that the press may never be punished, civilly or criminally, for publishing the truth." *Id*. at 531. Instead, opinion was careful to note that it should "sweep no more broadly than the appropriate context of the instant case." *Id*. at 533; *see also id.* at 532 (the "future may bring scenarios which prudence counsels our not resolving anticipatorily"); *id.* at 530 (the Court is resolving "this conflict only as it arose in a discrete factual context"); *id.* at 541 ("[o]ur holding today is limited"). Other courts have refused to follow *Florida Star*, prohibiting private actors from disclosing sexual abuse victims' identities. *See, e.g., People v. Bryant*, 94 P.3d 624, 634 (Colo. 2004) (distinguishing

PLAINTIFFS' OPPOSITION TO DEFENDANTS GOOGLE LLC    Case No.: 5:26-cv-02624-VKD
AND X.AI CORP.'S JOINT MOTION TO STAY DISCOVERY

8

*Florida Star* and finding narrowly tailored court order forbidding publication of sexual abuse victims' private information was constitutional).

The applicability of *Florida Star* to the present case is tenuous at best. To begin with, AI Mode and Grok are neither newspapers nor members of the press. *See Kinderstart.com LLC v. Google, Inc.*, 2006 WL 3246596, at *10 (N.D. Cal. July 13, 2006) (refusing to apply the media's First Amendment protections to Google because "Google is not a media defendant"). If they were, perhaps they would have adhered to the standards of other American news media and abstained from disclosing the victims' identities. *See* ¶¶ 57-67, ¶¶ 75-81 (noting the only American "sources" that disclosed Plaintiffs' identities withdrew or retracted those references when notified that they identified victims); *see also* ¶ 86 (testing of other AI chatbots did not disclose victims' private information). Second, unlike in *Florida Star*, there is no state law creating penal sanctions that Google and xAI are challenging, let alone one that applies unevenly to different instruments of communication or creates a negligence *per se* standard for the publication of victims' personal information. Perhaps the most useful language from *Florida Star* is its affirmation that "the privacy of victims, the safety of victims, and encouraging victims to report crimes [are] interests of the highest public order." *Bryant*, 94 P.3d at 634 (paraphrasing *Florida Star*, 491 U.S. at 537). Here, Plaintiffs assert rights based on established privacy torts, rather than on state laws that unevenly attempt to impose prior restraints on speech.

Furthermore, a motion seeking First Amendment protections in this case is likely to fail because, as Google and xAI acknowledge, such a defense relies on the speech at issue being newsworthy. *See* Dkt. No. 46 at 7. In *Florida Star*, the victim's identity was disclosed in a news article reporting on the commission and investigation of a violent crime that had been reported to authorities, which the Court found concerned a "matter of public significance." 197 U.S. at 536. But the Court expressly distinguished the newsworthiness of the "article generally" from the "specific identity" of the victim contained within it. *Id*.

Here, unlike in *Florida Star*, the speech at issue consists only of the private information of Epstein victims. ¶¶ 57-67, ¶¶ 75-81. Their identities and private information did not appear within the greater context of a news article reporting on a matter of paramount public import. *Cf.*

PLAINTIFFS' OPPOSITION TO DEFENDANTS GOOGLE LLC       Case No.: 5:26-cv-02624-VKD
AND X.AI CORP.'S JOINT MOTION TO STAY DISCOVERY

*Florida Star*, 491 U.S. at 536-537 ("the article generally, as opposed to the specific identity contained within it, involved a matter of paramount public import"); *see also Shulman v. Grp. W Prods., Inc.*, 18 Cal. 4th 200, 242 (1998), *as modified on denial of reh'g* (July 29, 1998) (recordings of car accident scene and rescue efforts were protected free speech because they were "substantially relevant to the newsworthy subject of the piece and their intrusiveness was not greatly disproportionate to their relevance"). By contrast, AI Mode and Grok are responding to prompts like "Is [JANE DOE 3] in the Epstein files?" with responses like "Yes, [JANE DOE 3], a former [profession] of [demonym] origin, is mentioned in the unsealed Jeffrey Epstein documents," and proceeding to discuss JANE DOE 3's appearance in the files. ¶ 63. This is not newsworthy information.

"[W]hen a person is involuntarily involved in a newsworthy incident, not all aspects of the person's life, and not everything the person says or does, is thereby rendered newsworthy." *Shulman*, 18 Cal. 4th at 223. A person's sexual history is not newsworthy as a matter of law, even if other facts about that person are newsworthy. *See, e.g., Diaz v. Oakland Trib., Inc.*, 139 Cal. App. 3d 118, 134 (Cal. Ct. App. 1983). Plaintiffs allege here that, "[w]hile public interest in the Epstein matter generally may exist, there is no legitimate public interest in the identification of individual victims or the disclosure of their contact information and personal details." ¶ 137. An AI chatbot's response that discloses only a sexual abuse victim's personal information without more is not newsworthy at all—it is pure harassment bait—and the effect of giving it First Amendment protection would be chilling to any victim considering whether to report sexual abuse to law enforcement. Even the Epstein Files Transparency Act, which Google and xAI cite as evidence of the newsworthiness of the information, appreciated that victims' personal information is <u>not</u> newsworthy, calling its disclosure "a clearly unwarranted invasion of personal privacy." Pub. L. 119-38, November 19, 2025, 139 Stat 656, § 2(c)(1)(A) (cited at ¶ 30). Accordingly, Google and xAI's anticipated First Amendment defense is unlikely to succeed and does not warrant a stay of discovery.

PLAINTIFFS' OPPOSITION TO DEFENDANTS GOOGLE LLC    Case No.: 5:26-cv-02624-VKD
AND X.AI CORP.'S JOINT MOTION TO STAY DISCOVERY

10

*3) Defendants' Fail to Show Their Other Anticipated Arguments Warrant a Stay*

None of the other arguments Google and xAI anticipate putting forth in their motion to dismiss warrant staying discovery.

*The UCL*: Google and xAI argue Plaintiffs lack standing under the California Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200, *et seq*. ("the UCL"), because the Complaint fails to attribute Plaintiffs' economic harm to Google and xAI. This is false. The Complaint alleges Plaintiffs have "expenses" relating to "counseling, legal representation, reputation management, relocation and other changes to contact information, time lost to their efforts to stop the disclosure of their private information" that were "caused by Defendants' [including Google and xAI's] conduct." ¶ 93. It also alleges the specific harms caused by Google and xAI will continue "as long as their private information remains publicly accessible via Google and xAI's website[s]." ¶ 92. *See also* ¶ 128 (ascribing Plaintiffs' economic harm specifically to Google); ¶ 172 (same with respect to xAI). Plaintiffs plausibly allege economic harm caused by Google and xAI and, therefore, adequately plead standing under the UCL.

Next, Google and xAI argue Plaintiffs fail to allege unfair and illegal conduct under the UCL. Both prongs of the UCL are proven by allegations that Google and xAI engaged in unlawful conduct, which Plaintiffs do. ¶ 116 (Google violated section 5 of the FTCA); ¶ 160 (same with respect to xAI); ¶ 117 (Google violated California Civil Code § 1798.100, *et seq.*); ¶ 161 (same with respect to xAI). These allegations, whether Google and xAI agree, are enough to satisfy the UCL's requirements to plead unlawful conduct. Plaintiffs go further in pleading unfair conduct under numerous approaches. ¶¶ 119-127 (Google's conduct violated the unfair prong of the UCL);  ¶¶ 163-171 (same with respect to xAI).

*Public Disclosure of Private Facts*: Citing no evidence, Google and xAI claim that Plaintiffs' invasion of privacy claims are likely to be dismiss because their private information was already in the public domain and cannot be the subject of an invasion of privacy claim. But the argument fails to show evidence that the specific information they generated was in the public domain before their disclosure of that information. This point is proven by a case xAI cites in support of its arguments. *Sipple v. Chronicle Publishing Co.* held that a public-disclosure

PLAINTIFFS' OPPOSITION TO DEFENDANTS GOOGLE LLC       Case No.: 5:26-cv-02624-VKD
AND X.AI CORP.'S JOINT MOTION TO STAY DISCOVERY

11

tort failed where the facts disclosed—plaintiff's sexual orientation—were already widely known in his social and political community and were newsworthy in light of his role in thwarting an assassination attempt. 154 Cal.App.3d 1040, 1047-48 (1984). Plaintiffs here allege the opposite: that their identities and contact information as Epstein victims were previously confined to DOJ investigative files, protected under federal victim-privacy regimes, and thrust into the public eye only by DOJ's unlawful mass release and Defendants' AI-driven republication.

*Negligence*: Google and xAI's arguments as to Plaintiffs' negligence claims are also unlikely to succeed as they are based on unsupportive law. Plaintiffs allege a duty based on Google and xAI's control over systems that ingest, index, and generate content revealing Epstein victims' identities and private information; their actual knowledge that DOJ's disclosure was unauthorized; and their continued republication of that sensitive data despite victims' specific requests that it be removed. ¶¶ 2, 5, 67, 115-118, 122-123, 142-147, 159-162, 166, 186-91. These allegations track traditional negligence principles—foreseeability of harm, defendants' control over the instrumentality, and strong public policies protecting crime victims' privacy—and are more than sufficient at the pleading stage to allege a duty of reasonable care, particularly in light of courts' recognition that negligence theories can appropriately be applied to AI deployers and platforms who design, operate, and control systems that foreseeably expose users to risk.

Google and xAI's cited case law does not command a different outcome. In *Bogard v. TikTok Inc.*, the court rejected a sweeping theory that TikTok owed all users a generalized duty "to protect users from an unreasonable risk of harm arising out of the use of their apps," including by policing and removing user-generated content in response to takedown requests. 2025 WL 604972, *8-9 (N.D. Cal. Feb. 24, 2025). Here, as described above, Plaintiffs allege a far more specific and concrete duty that is qualitatively different from the generalized "duty to police all content" rejected in *Bogard*. And contrary to xAI's suggestion, *Tremblay v. OpenAI, Inc.*, 716 F. Supp. 3d 772 (N.D. Cal. 2024) does not declare there can never be a recognized duty in AI contexts; it simply refused to invent one on the complaint before it. *See id.* at 781-82.

Plaintiffs here plausibly plead proximate causation by alleging that, after the DOJ's mass release and partial withdrawal, Google and xAI's AI tools continue to identify them as related to

PLAINTIFFS' OPPOSITION TO DEFENDANTS GOOGLE LLC    Case No.: 5:26-cv-02624-VKD
AND X.AI CORP.'S JOINT MOTION TO STAY DISCOVERY

Epstein and expose their phone numbers, emails, and locations to anyone querying the platforms. They allege that this continued republication of their names, contact information, locations, and images has directly led to renewed harassment, threats, reputational damage, and severe emotional distress. The Complaint alleges that, "[a]s a direct and proximate result of [Google and xAI's] actions, [Plaintiffs and] Class members have suffered severe emotional distress, reputational harm, invasion of privacy, harassment, threats to their physical safety, economic losses, and other compensable damages," and specifically describes strangers calling, emailing, threatening their safety, and accusing them of conspiring with Epstein after their identities and private information appeared in Google and xAI's AI outputs. ¶¶ 2-3, 6, 89, 91, 128, 140, 148, 155, 169, 172, 179, 184, 192, 199. Under California's substantial-factor test, these allegations easily state proximate cause; they describe non-speculative, ongoing harms that flow directly from Google and xAI's continued dissemination of unlawfully disclosed victim identities and private information and are precisely the type of foreseeable injuries for which negligence and emotional-distress doctrines provide redress, especially in emerging AI cases where courts have recognized that deployers can face liability when their systems predictably expose individuals to serious, individualized harm. *See Mitchell v. Gonzales*, 54 Cal. 3d 1041 (1991) (adopting substantial factor test for element of causation in negligence claim).

Relatedly, Google and xAI argue Plaintiffs' cause of action for negligent infliction of emotional distress is not a standalone claim and will be dismissed. They are only half right. In *Molien v. Kaiser Found. Hosps.*, the California Supreme Court held "that a cause of action may be stated for the negligent infliction of serious emotional distress." 27 Cal. 3d 916, 930 (1980). The claim, however, is derivative of a negligence claim and only differs in that it seeks recovery for purely emotional injury. *Id*. Put differently, Plaintiffs can only succeed on a claim for negligent infliction of emotional distress if they prove negligence. To the extent their injuries are purely emotional in nature, this claim should survive. Regardless, Google and xAI's argument on this point is undeveloped and fails to make the strong showing required to stay discovery.

At minimum, the Court should find that duty and causation in this context turn on specific factual questions—how DOJ's disclosures occurred, what DOJ admitted and withdrew,

PLAINTIFFS' OPPOSITION TO DEFENDANTS GOOGLE LLC        Case No.: 5:26-cv-02624-VKD
AND X.AI CORP.'S JOINT MOTION TO STAY DISCOVERY

what notice Google and xAI received, how their AI tools ingest and generate victim PII, and what harms Plaintiffs have suffered—that cannot be resolved on the pleadings without discovery. *See, e.g.*, *Bloomberg v. Interinsurance Exchange*, 162 Cal.App.3d 571, 576-77 (Ct. App. 1984) (foreseeability of risk is a question of fact to be decided by jury). Based on the record currently before it, the Court cannot conclude that the forthcoming motion to dismiss is "potentially dispositive" of Plaintiffs' negligence and NIED claims, weighing strongly against staying discovery on the theory that those claims are doomed as a matter of law.

### D. Discovery Is Relevant to Anticipated Motions

The second prong of the inquiry when a party moves to stay discovery pending a dispositive motion is whether discovery is necessary to the resolution of the motion. *Pac. Lumber Co. v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA*, 220 F.R.D. 349, 352 (N.D. Cal. 2003). "[T]he Ninth Circuit has held that under certain circumstances, a district court abuses its discretion if it prevents a party from conducting discovery relevant to a potentially dispositive motion." *Tradebay, LLC v. eBay, Inc.*, 278 F.R.D. 597, 601 (D. Nev. 2011).

While Plaintiffs cannot know the full extent to which discovery will be necessary in opposing Google and xAI's anticipated motion to dismiss—again, they haven't seen it— discovery will likely be necessary to oppose that motion and to support other forthcoming motions. For example, discovery is necessary to discern (1) what procedures Google and xAI used to handle victims' private information once it was collected and cached; (2) whether Google and xAI violated their own policies when they disclosed victims' private information, or had policies permitting the disclosure of this information; and (3) what actions Google and xAI took to restrict the disclosure of victims' private information before and after they were informed that they were actively disclosing it. These requests have already been propounded. Exs. 1, 2. They are limited in time and are relevant to the question of whether Google and xAI internally acknowledged they owed Plaintiffs a duty, whether the disclosures that Plaintiffs were victims of sexual abuse were intentional, and whether the disclosures were "unfair" and "unlawful" in violation of the UCL.

PLAINTIFFS' OPPOSITION TO DEFENDANTS GOOGLE LLC      Case No.: 5:26-cv-02624-VKD
AND X.AI CORP.'S JOINT MOTION TO STAY DISCOVERY

Based on the arguments advanced in the present motion, Plaintiffs will seek additional discovery regarding (1) the degree to which Google and xAI were responsible for the creation of the offending content identified in Plaintiffs' Complaint (relevant to resolving anticipated Section 230 defense); (2) what evidence Google and xAI have to prove their disclosures were newsworthy (relevant to resolving anticipated First Amendment defense); and (3) what evidence Google and xAI have to show their disclosures were "already public" (relevant to resolving anticipated motion to dismiss Plaintiffs' invasion of privacy claim). These issues will also be relevant to Plaintiffs' motion for a preliminary injunction, should such a motion be necessary.

The discovery contemplated here is minimally burdensome, as Google and xAI either have responsive documents (i.e. policy and procedure manuals, prior disclosures of Plaintiffs' private information) at the ready; or they don't. The burdens on Plaintiffs, on the other hand, are substantial should discovery be paused. Their private information is, at this moment, available to anyone with access to AI Mode or Grok. They have been, and will continue to be, subject to "harassment, unwanted contact, threatening communications, and intrusive inquiries from media, strangers, and online actors; exacerbation of pre-existing trauma and psychological injuries related to the unwanted ongoing public disclosure of their private information in association with the Epstein matter; and a feeling of powerlessness and lost peace of mind caused by their inability to control the public disclosure of their association with the Epstein matter and their experience with sexual abuse, exploitation, misconduct, and harassment." ¶ 91. Their need to obtain the discovery described above so they may enjoin Google and xAI from the ongoing disclosure of their private information far outweighs minimal burdens Google and xAI identify in their motion.

## IV.    <u>CONCLUSION</u>

For the foregoing reasons, the Court should deny Google and xAI's motion to stay discovery.

PLAINTIFFS' OPPOSITION TO DEFENDANTS GOOGLE LLC        Case No.: 5:26-cv-02624-VKD
AND X.AI CORP.'S JOINT MOTION TO STAY DISCOVERY

15

Dated this July 22, 2026.                    Erickson Kramer Osborne LLP

                                             /s/ *Kevin M. Osborne*
                                             Julie C. Erickson
                                             Elizabeth A. Kramer
                                             Kevin M. Osborne

                                             Attorneys for Plaintiffs JANE DOE 1, JANE DOE 2,
                                             JANE DOE 3, JANE DOE 4, and JANE DOE 5

PLAINTIFFS' OPPOSITION TO DEFENDANTS GOOGLE LLC          Case No.: 5:26-cv-02624-VKD
AND X.AI CORP.'S JOINT MOTION TO STAY DISCOVERY

16

## CERTIFICATE OF SERVICE

I hereby certify that on this 22nd of July, 2026, the foregoing PLAINTIFFS' OPPOSITION TO DEFENDANTS GOOGLE LLC AND X.AI CORP.'S JOINT MOTION TO STAY DISCOVERY was filed and served using the CM/ECF system, which will serve as notification of such filings on all counsel of record.

/s/*Kevin M. Osborne*
Kevin M. Osborne
ERICKSON KRAMER OSBORNE LLP
959 Natoma St.
San Francisco, CA 94103
Phone: 415-635-0631
kevin@eko.law

Attorneys for Plaintiffs JANE DOE 1, JANE DOE 2, JANE DOE 3, JANE DOE 4, and JANE DOE 5

PLAINTIFFS' OPPOSITION TO DEFENDANTS GOOGLE LLC AND X.AI CORP.'S JOINT MOTION TO STAY DISCOVERY    Case No.: 5:26-cv-02624-VKD

17