Sonal N. Mehta, State Bar No. 222086
sonal.mehta@wilmerhale.com
**WILMER CUTLER PICKERING
HALE AND DORR LLP**
2600 El Camino Real, Suite 400
Palo Alto, CA 94306
Telephone: (650) 858 6000

Emily Barnet (*pro hac vice*)
emily.barnet@wilmerhale.com
**WILMER CUTLER PICKERING
HALE AND DORR LLP**
250 Greenwich Street
New York, NY 10007
Telephone: (212) 230-8800

Allison Schultz (*pro hac vice*)
allison.schultz@wilmerhale.com
**WILMER CUTLER PICKERING
HALE AND DORR LLP**
2100 Pennsylvania Avenue NW
Washington, DC 20037
Telephone: (202) 663 6000

*Attorneys for Defendant Google LLC*

Robert E. Dunn, State Bar No. 275600
rdunn@eimerstahl.com
**EIMER STAHL LLP**
1999 S. Bascom Ave. Suite 1025
Campbell, CA 95008
Telephone: (408) 889-1690

*Attorney for Defendant X.AI Corp.*

**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| JANE DOE 1, JANE DOE 2, JANE DOE 3, JANE DOE 4, and JANE DOE 5, individually and on behalf of others similarly situated,<br><br>　　　　Plaintiffs,<br><br>　　v.<br><br>UNITED STATES OF AMERICA, GOOGLE LLC, and X.AI Corp.,<br><br>　　　　Defendants. | Case No. 5:26-cv-02624-VKD<br><br>**DEFENDANTS GOOGLE AND XAI'S REPLY IN SUPPORT OF JOINT MOTION TO STAY DISCOVERY**<br><br>Judge: Hon. Virginia K. DeMarchi<br>Courtroom 2, 5th Floor<br><br>Date: August 18, 2026<br>Time: 10:00 a.m. |

## TABLE OF CONTENTS

I.      Defendants' Motion To Stay Is Procedurally Proper............................................................ 1

II.     Plaintiffs Have Failed To Rebut That Defendants' Motion To Dismiss Will Likely
        Be Dispositive ................................................................................................................... 3

        A.      Plaintiffs Cannot Overcome Section 230's Immunity ........................................... 3

        B.      The First Amendment Bars Plaintiffs' Claims ....................................................... 4

        C.      Plaintiffs Fail to Allege a UCL Violation .............................................................. 8

        D.      Plaintiffs' Common-Law Claims Are Likely To Fail ............................................ 8

III.    Discovery Is Not Necessary To Resolve Any Anticipated Motions And
        The Balance Of Harms Favors A Stay ............................................................................. 11

# TABLE OF AUTHORITIES

Page(s)

## CASES

*Anderson v. TikTok, Inc.*, 116 F.4th 180 (3d Cir. 2024) ....................................................7

*Bogard v. TikTok Inc.*, 2025 WL 604972 (N.D. Cal. Feb. 24, 2025) ...............................9

*Bouck v. Meta Platforms, Inc.*, 2026 WL 810036 (N.D. Cal. Mar. 24, 2026)..................4

*Brown v. Entertainment. Merchants Ass'n*, 564 U.S. 786 (2011) .....................................5

*California v. United States Department of Homeland Sec.*, 612 F. Supp. 3d 875
      (N.D. Cal. 2020)....................................................................................................2

*Citizens United v. FEC*, 558 U.S. 310 (2010)...................................................................5

*Cox Broadcasting Corp. v. Cohn*, 420 U.S. 469 (1975) ...................................................6

*Denver Area Ed. Telecommunications Consortium, Inc. v. FCC*, 518 U.S. 727
      (1996)....................................................................................................................7

*DiGiacinto v. RB Health (US) LLC*, 2022 WL 20087460 (N.D. Cal. Dec. 5, 2022)........2

*Dyroff v. Ultimate Software Group, Inc.*, 934 F.3d 1093 (9th Cir. 2019) ..................9, 10

*EHang Inc. v. Wang*, 2021 WL 3934325 (N.D. Cal. Aug. 20, 2021)................................2

*Fair Housing Council of San Fernando Valley v. Roommates.com*, 521 F.3d 1157
      (9th Cir. 2008)......................................................................................................3

*Florida Star v. B.J.F.*, 491 U.S. 524 (1989) ........................................................4, 5, 6, 7

*Forrest v. Meta Platforms, Inc.*, 737 F. Supp. 3d 808 (N.D. Cal. 2024) .........................4

*In re Google Digital Advertising Antitrust Litigation*, 2020 WL 7227159 (N.D.
      Cal. Dec. 8, 2020) ................................................................................................2

*Joseph Burstyn, Inc. v. Wilson*, 343 U.S. 495 (1952) ......................................................5

*Kimzey v. Yelp! Inc.*, 836 F.3d 1263 (9th Cir. 2016) ........................................................4

*Kinderstart.com LLC v. Google, Inc.*, 2006 WL 3246596 (N.D. Cal. July 13,
      2006) ....................................................................................................................5

*Knievel v. ESPN*, 393 F.3d 1068 (9th Cir. 2005)...........................................................11

*Ledwidge v. Federal Deposit Insurance Corp.*, 2025 WL 1370484 (N.D. Cal. May 12, 2025) ..................................................................................................................2

*Moody v. NetChoice, LLC*, 603 U.S. 707 (2024) ...................................................................5, 12

*Moreno v. Hanford Sentinel, Inc.*, 172 Cal. App. 4th 1125 (2009) ...................................................9

*Packingham v. North Carolina*, 582 U.S. 98 (2017) ........................................................5

*People v. Bryant*, 94 P.3d 624 (Colo. 2004) (en banc) ...........................................................4

*Perry v. Schwarzenegger*, 591 F.3d 1147 (9th Cir. 2010) ...........................................................1

*Potter v. Firestone Tire & Rubber Co.*, 6 Cal.4th 965 (1993) ...........................................................10

*Shulman v. Group W Productions, Inc.*, 18 Cal. 4th 200 (1998), *as modified on denial of reh'g* (July 29, 1998) ...........................................................7

*Sipple v. Chronicle Publishing Co.*, 154 Cal. App. 3d 1040 (1984)...........................................................9

*Smith v. Daily Mail Publishing Co.*, 443 U.S. 97 (1979) ...........................................................6

*Smith v. Intel Corp.*, 745 F. Supp. 3d 853 (N.D. Cal. 2024)...........................................................2

*Tradin Organics USA LLC v. Terra Nostra Organics, LLC*, 2023 WL 8481814 (N.D. Cal. Dec. 7, 2023) ...........................................................3

*Tremblay v. OpenAI, Inc.*, 716 F. Supp. 3d 772 (N.D. Cal. 2024) ...........................................................10

*Varnado v. Midland Funding LLC*, 43 F. Supp. 3d 985 (N.D. Cal. 2014) ...........................................................10

*Williams-Sonoma, Inc. v. Last Brand, Inc.*, 2026 WL 1301007 (N.D. Cal. May 12, 2026) ...........................................................2

## STATUTES, RULES, AND REGULATIONS

Cal. Bus. & Prof. Code § 17204 ...........................................................8

Epstein Files Transparency Act, Pub. L. No. 119-38, § 2(c)(1)(A), 139 Stat. 656, 657 (2025)...........................................................7

## OTHER AUTHORITIES

*Social Media and News Fact Sheet*, Pew Research Center (Sept. 25, 2025), https://www.pewresearch.org/journalism/fact-sheet/social-media-and-news-fact-sheet ...........................................................5

iii

Plaintiffs' Opposition fails to rebut Google's and xAI's ("Defendants") showing of good cause for a limited stay of discovery pending resolution of Defendants' forthcoming motion to dismiss. Plaintiffs first argue that Defendants' motion is premature because it precedes Defendants' motion to dismiss, but the standard for a stay requires only a preliminary peek at the arguments for dismissal—which Defendants provided in their Motion to Stay. Plaintiffs also fail to show that their claims are likely to survive dismissal. On Section 230, they broadly assert that any use of generative AI falls outside of the statute's protections. But Plaintiffs fail to engage with the relevant test: whether Defendants materially contributed to the alleged unlawfulness of the content at issue. As explained in Defendants' motion, they did not. Nor do they explain how liability can be imposed here consistent with the Supreme Court's admonition in *Florida Star* that the First Amendment shields from punishment any entity republishing truthful information about matters of public importance first disclosed by the Government. And on the merits of their claims, Plaintiffs muster no support for the theory that disseminating publicly available information constitutes an unlawful or unfair business practice under the UCL, the disclosure of private facts, or negligence. Plaintiffs are also wrong that discovery is needed to resolve any forthcoming motions. As previewed in the Motion to Stay, Defendants' motion to dismiss will raise threshold legal defects that show the case should be dismissed on the pleadings alone. Finally, the equities favor a stay. The discovery requests served to date seek intrusive and burdensome information regarding how Google and xAI make content-moderation decisions, and discovery into Google and xAI's content-moderation practices could itself burden the exercise of their First Amendment-protected editorial discretion. *Cf. Perry v. Schwarzenegger*, 591 F.3d 1147, 1152 (9th Cir. 2010). Meanwhile, Plaintiffs identify no harm if the stay were granted. Plaintiffs concede no discovery is needed to file any potential motion for preliminary injunction, and they have not shown that any discovery would be required to resolve such a motion.

## I.    DEFENDANTS' MOTION TO STAY IS PROCEDURALLY PROPER

Defendants' Motion to Stay is timely. Plaintiffs contend (Opp. 4-5) Defendants' Motion to Stay is premature as Defendants have not yet filed their motions to dismiss. But this Court has

wide discretion in managing discovery and may "defer discovery until resolution of [a] forthcoming motion to dismiss that may be dispositive of the complaint." *California v. United States Dep't of Homeland Sec.*, 612 F. Supp. 3d 875, 898-899 (N.D. Cal. 2020) (staying discovery pending forthcoming motion to dismiss); *accord In re Google Digit. Advert. Antitrust Litig.*, 2020 WL 7227159, at *3 (N.D. Cal. Dec. 8, 2020) (staying discovery based on forthcoming motion to dismiss). As Plaintiffs recognize (Opp. 5), the relevant standard requires only a "preliminary peek" at the arguments for dismissal, *Williams-Sonoma, Inc. v. Last Brand, Inc.*, 2026 WL 1301007, at *1 (N.D. Cal. May 12, 2026), which Defendants provided in their Motion to Stay. That Defendants' motion to dismiss may raise additional arguments does not mean Defendants ask this Court to resolve the stay motion based on "unknown arguments." Opp. 5. The arguments previewed in the Motion to Stay are themselves sufficient to show that Plaintiffs' claims will likely not survive dismissal and will not require discovery. And if more were needed, Defendants' motion to dismiss will be filed just nine days after this Motion will be fully briefed. *See Ledwidge v. Federal Deposit Ins. Corp.*, 2025 WL 1370484, at *2 (N.D. Cal. May 12, 2025) (granting motion to stay after motion to dismiss was filed but before plaintiffs filed their opposition).[1]

The case on which Plaintiffs rely is unpersuasive. In *DiGiacinto v. RB Health (US) LLC*, 2022 WL 20087460 (N.D. Cal. Dec. 5, 2022), the Court reasoned in part that the defendants' anticipated arguments for dismissal were "non-dispositive" because the Court would "assess whether leave to amend should be granted." *Id.* at *2. But as Courts in this district have since clarified, "the fact that Plaintiff could possibly remedy any deficient allegations with leave to amend is not germane to the question before the Court on a motion to stay discovery: whether

---

[1] Contrary to Plaintiffs' suggestion (Opp. 5 n.4), Defendants' stay request was also properly raised in a duly noticed motion rather than through this Court's discovery-dispute-resolution processes. This request does not concern "specific discovery material," Standing Order for Civil Cases, Magistrate Judge Virginia K. Demarchi at ¶ 4(vi), but the appropriateness of any discovery pending resolution of Defendants' motion to dismiss. Such requests are properly resolved through this Court's procedures for formally noticed motions. *See, e.g.*, *Smith v. Intel Corp.*, 745 F. Supp. 3d 853, 857 (N.D. Cal. 2024); *EHang Inc. v. Wang*, 2021 WL 3934325, at *1 (N.D. Cal. Aug. 20, 2021) (motion to stay presented in a joint discovery letter brief was referred to the presiding district judge and resolved pursuant to Local Rule 7-1).

Defendants' motion is *potentially* dispositive of the entire case." *Tradin Organics USA LLC v. Terra Nostra Organics, LLC*, 2023 WL 8481814, at \*2 (N.D. Cal. Dec. 7, 2023) (alteration and quotation marks omitted). Here, Defendants' Motion to Stay demonstrates that the forthcoming motion to dismiss is, at a minimum, potentially case dispositive.

## II.    PLAINTIFFS HAVE FAILED TO REBUT THAT DEFENDANTS' MOTION TO DISMISS WILL LIKELY BE DISPOSITIVE

### A.    Plaintiffs Cannot Overcome Section 230's Immunity

Plaintiffs do not dispute that their claims seek to hold Google and xAI liable for failing to remove and disseminating third-party content. Instead, their Opposition adopts the simplistic view that using any generative AI tool to display third-party content necessarily precludes application of Section 230. *See* Opp. 5-7. That is not the law. Rather, to determine whether a service provider generates content, courts ask whether the provider "materially contribut[es] to [the content's] alleged unlawfulness." *Fair Hous. Council of San Fernando Valley v. Roommates.com*, 521 F.3d 1157, 1168 (9th Cir. 2008). Plaintiffs acknowledge that Section 230 "law is no different" when applied to "generative AI," Opp. 6, but do not engage with the dispositive material-contribution test. Instead, Plaintiffs simply point to allegations that Google and xAI "'generate[]'" responses that "'package victim PII as part of a narrative output.'" Opp. 7 (quoting FAC ¶¶ 55, 71, 88). Plaintiffs assert that Section 230 does not bar their claims because they allege that Google and xAI provided "original content" and "state[d] that Plaintiffs were included in the Epstein files in ways that were not stated elsewhere by third parties." Opp. 2.

As Defendants explained (at Mot. 5-6), however, generating or otherwise "augmenting the content generally" is not the same as "materially contributing to its alleged unlawfulness. *Roommates.com*, 521 F.3d at 1168. Here, Plaintiffs allege that certain AI Mode and Grok responses were unlawful because they contained Plaintiffs' identifying information and "association with Epstein." FAC ¶¶ 56, 91. But they concede that this information was "[re]package[d]" from third-party sources, and do not allege that Defendants' conversion of third-party content into narrative responses or addition of any "original content" "enhance[d] the [allegedly unlawful nature] of the

3

message beyond the words" in the underlying third-party sources, *Kimzey v. Yelp! Inc.*, 836 F.3d 1263, 1270 (9th Cir. 2016) (quotations omitted). Plaintiffs offer no response to the cases cited in Defendants' motion holding that transforming how third-party content is displayed without changing or contributing to its allegedly unlawful substance does not constitute content creation or development under Section 230.

Plaintiffs rely on *Forrest v. Meta Platforms, Inc.*, 737 F. Supp. 3d 808, 818 (N.D. Cal. 2024) and *Bouck v. Meta Platforms, Inc.*, 2026 WL 810036 (N.D. Cal. Mar. 24, 2026), Opp. 6-7, but those cases are inapposite. There, in cases involving fraudulent ads, the plaintiffs alleged that Meta's advertising tools actually created (i.e. did not obtain from third-party sources) the very text and images alleged to have made the ads fraudulent. *See Bouck*, 2026 WL 810036, at *4; *Forrest*, 737 F. Supp. 3d at 818. Here, by contrast, Plaintiffs expressly allege that Google and xAI "index[ed] and repackag[ed]" the allegedly unlawful content—their personal information and association with Epstein—from third-party sources. *E.g.*, FAC ¶¶ 127, 171; *accord id.* ¶¶ 56, 74.

**B.    The First Amendment Bars Plaintiffs' Claims**

Defendants are also likely to prevail on their First Amendment argument. As Defendants explained, Plaintiffs' claims are barred by the Supreme Court's decision in *Florida Star v. B.J.F.*, 491 U.S. 524 (1989), because Defendants merely republished truthful information that the Government first publicly disclosed. *See* Mot. 7, 12. Plaintiffs urge this Court not to follow *Florida Star*, pointing to the Colorado Supreme Court's decision in *People v. Bryant*, 94 P.3d 624, 634 (Colo. 2004) (en banc), as a purported roadmap for avoiding that binding U.S. Supreme Court decision. *See* Opp. 8-9. But *Bryant* involved a prior restraint on publication, not a retroactive damages action for a publication based on the government's previous disclosure.[2] The court thus

---

[2] In *Bryant*, the court reporter inadvertently sent the transcript of in camera proceedings to several media entities, and the district court promptly issued an order directing recipients of the communication to "delete and destroy any copies and not reveal any contents thereof." 94 P.3d at 626. The Colorado Supreme Court held that this prior restraint on speech was constitutional because it was narrowly tailored to the state's compelling interest in "providing a confidential evidentiary proceeding under the rape shield statute." *Id*.

4

did not decide whether an individual identified in the transcript could have pursued tort claims against one of the media companies had it published the article before the district court issued the corrective order. In that scenario, *Florida Star* provides the governing rule: "Once the government has placed such information in the public domain," any "hopes for restitution must rest upon the willingness of the government to compensate victims for their loss of privacy." 491 U.S. at 538. Because this case is on all fours with *Florida Star*, the "limited" nature of the Court's holding (Opp. 8) does not provide a basis for ignoring it here.

Plaintiffs seek to restrict *Florida Star*'s applicability to traditional "newspapers" or "members of the press." Opp. 9. But it is black letter law that the "'basic principles of freedom of speech and the press . . . do not vary' when a new and different medium for communication appears." *Brown v. Entertainment. Merchants Ass'n*, 564 U.S. 786, 790 (2011) (quoting *Joseph Burstyn, Inc. v. Wilson*, 343 U.S. 495, 503 (1952)); *see also Moody v. NetChoice, LLC*, 603 U.S. 707, 733 (2024). The Supreme Court has thus "consistently rejected the proposition that the institutional press has any constitutional privilege beyond that of other speakers." *Citizens United v. FEC*, 558 U.S. 310, 352 (2010) (citation omitted) (noting that "with the advent of the Internet and decline of print and broadcast media," "the line between the media and others who wish to comment on political and social issues becomes far more blurred"). Indeed, social media has largely overtaken traditional media as a source of news for most U.S. adults. *See Social Media and News Fact Sheet*, Pew Research Center (Sept. 25, 2025) ("Overall, about half of U.S. adults (53%) say they at least sometimes get news from social media, roughly stable over the last few years.")[3]; *see also Packingham v. North Carolina*, 582 U.S. 98, 107 (2017) (noting that social media sites are "for many" people "the principal sources for knowing current events"). Plaintiffs' only authority to the contrary is a footnote from an unpublished decision devoting a single sentence to a First Amendment argument the court declined even to reach. Opp. 10 (quoting *Kinderstart.com*

---

[3] *Available at* https://www.pewresearch.org/journalism/fact-sheet/social-media-and-news-fact-sheet.

5

*LLC v. Google, Inc.*, 2006 WL 3246596, at \*10 n.6 (N.D. Cal. July 13, 2006)). The fact that AI Mode and Grok are not "newspapers" is thus irrelevant to the constitutional analysis.

Plaintiffs highlight *Florida Star*'s "affirmation" that victims' privacy rights are "interests of the highest public order." Opp. 9 (quoting *Bryant*'s paraphrase of *Florida Star*). But the Supreme Court has recognized that any "interests in privacy fade when the information involved already appears on the public record." *Cox Broad. Corp. v. Cohn*, 420 U.S. 469, 494-495 (1975). Accordingly, "once the truthful information [has been] 'publicly revealed' or 'in the public domain'" its "dissemination" cannot be "constitutionally restrain[ed]." *Smith v. Daily Mail Publ'g Co.*, 443 U.S. 97, 103 (1979). Here, not only did the Government publish Plaintiffs' information on *its* website, but Plaintiffs also admit that the unredacted materials "remain available on publicly available websites." FAC ¶¶ 40-42. Because Plaintiffs' information was allegedly disclosed by the Government and various third parties, Defendants cannot be held liable for republishing truthful information contained in those earlier disclosures. *See Florida Star*, 491 U.S. at 538.

Plaintiffs contend that their identities are not newsworthy, and that the speech at issue here consists exclusively of private, non-newsworthy information. Opp. 9-10. The plaintiff in *Florida Star* similarly argued that there was no legitimate public interest in identifying her as a victim of crime, but the Supreme Court rejected that argument, explaining:

> [T]he article generally, as opposed to the specific identity contained within it, involved a matter of paramount public import: the commission, and investigation, of a violent crime which had been reported to authorities.

491 U.S. at 536-537. Here, Plaintiffs' private information is allegedly contained within AI-generated responses to queries *about the Epstein files*, which are indisputably matters of public concern. Plaintiffs contend that their identities "did not appear within the greater context of a news article reporting on a matter of paramount public import." Opp. 9. But their private information

GOOGLE AND XAI'S REPLY ISO
JOINT MOTION TO STAY DISCOVERY

first appeared in the Epstein files, and the responses provided by AI Mode and Grok likewise connect Plaintiffs to the underlying investigation into that highly public matter.[4]

Finally, Plaintiffs note that the Epstein Files Transparency Act declared disclosure of victims' personal information to be a "clearly unwarranted invasion of personal privacy." Opp. 10 (quoting Epstein Files Transparency Act, Pub. L. No. 119-38, § 2(c)(1)(A), 139 Stat. 656, 657 (2025)). If that is right, any remedy for such an "unwarranted invasion" of privacy must be sought from the Government when the government is responsible for the initial disclosure. *Florida Star*, 491 U.S. at 538.

The First Amendment separately protects Google's and xAI's editorial discretion in selecting search results. *See Denver Area Ed. Telecommunications Consortium, Inc. v. FCC*, 518 U.S. 727, 737 (1996). Plaintiffs contend that Google and xAI cannot simultaneously argue that Section 230 immunizes their conduct while also arguing that they are engaged in First Amendment protected "speech." Opp. 8. But that does not follow. An AI service that merely curates and selects which third-party speech to provide in response to a query can be protected both by Section 230 and by the First Amendment. Indeed, Plaintiffs' sole authority in support of their argument is an out-of-circuit decision relying on Justice Thomas's dissent from the denial of certiorari. Opp. 8 (citing *Anderson v. TikTok, Inc.*, 116 F.4th 180, 183-4 (3d Cir. 2024). This Court need not follow that unpersuasive and outlier decision.

---

[4] Plaintiffs cite *Shulman v. Group W Productions, Inc.*, 18 Cal. 4th 200 (1998), *as modified on denial of reh'g* (July 29, 1998), for the proposition that "not all aspects of the person's life" are "newsworthy" just because the person is "involved in a newsworthy incident." Opp. 10 (quoting *Shulman*, 18 Cal. 4th at 223). But *Shulman* did not involve a prior disclosure by the government. Indeed, *Shulman* distinguished *Florida Star* and *Cox Broadcasting* on the ground that the defendant organizations in those cases had "obtained the victim's name[s] from a public records source." *Shulman*, 18 Cal. 4th at 218 (likening facts in *Florida Star* to those in *Cox Broadcasting*). And in all events, Shulman recognized that whether the "broadcast could have been edited to exclude" private information "is not determinative." *Id*. at 229 ("The standard . . . is not necessity"). That is because "courts do not, and constitutionally could not, sit as superior editors of the press." *Id*. Here, Google and xAI cannot be held liable for including private facts when displaying information about an indisputably public matter.

**C.    Plaintiffs Fail to Allege a UCL Violation**

Plaintiffs do not identify any allegations of economic harm caused by Google or xAI as required for standing under the UCL. Cal. Bus. & Prof. Code § 17204; *see* Opp. 11. Plaintiffs point to the general allegation that they incurred "'expenses… that were caused by Defendants' conduct.'" Opp. 11 (quoting FAC ¶ 93). But a few paragraphs earlier, the FAC clarifies that Plaintiffs suffered "[e]conomic losses" as "a direct and proximate result of the unlawful conduct by the *United States*," FAC ¶ 90 (emphasis added), while alleging *no* economic loss attributable to the "conduct by the [sic] Google and xAI," *Id.* ¶ 91. A reference to "Defendants' conduct" in the collective does not convert the allegations of economic loss caused by the Government alone into an allegation of economic loss caused by Google and xAI.

On the merits of their UCL claim, Plaintiffs offer only the conclusory assertion that "[b]oth prongs of the UCL are proven by allegations that Google and xAI engaged in unlawful conduct, which Plaintiffs do." Opp. 11. Plaintiffs invoke the FTCA and CCPA, but make no attempt to rebut Defendants' explanation of why Plaintiffs fail to allege a violation of either statute. *See* Mot. 8; Opp. 11. And their mere assertion that the FAC "plead[s] unfair conduct under numerous approaches," Opp. 11, fails to show that their claims are likely to survive in light of the defects identified in Defendants' Motion (and to which Plaintiffs do not respond), Mot. 9.

**D.    Plaintiffs' Common-Law Claims Are Likely To Fail**

***Public Disclosure of Private Facts.*** Plaintiffs argue that their claim for public disclosure of private facts is not likely to be dismissed because Defendants have not "show[n] evidence that the specific information they generated was in the public domain before their disclosure of that information." Opp. 11. But the FAC's own allegations establish that the information at issue was in the public domain before Google's and xAI's alleged dissemination. Plaintiffs' claim is based on the dissemination of their "identities, names, likenesses, contact information, and locations of residence" and "status as sexual-abuse victims." FAC ¶¶ 133, 177. And Plaintiffs allege that this information originated in publicly available third-party "materials containing the Class members' private information," which Google and xAI then allegedly "indexed and cached" or "dr[e]w[]

on," and, "[a]s a result," subsequently "display[ed]." FAC ¶¶ 56, 74. Indeed, every single one of the at-issue AI Mode and Grok responses expressly references publicly available sources for the information in those AI responses. *See* FAC ¶¶ 57-67, 75-81 (citing, for example, "unredacted documents and searchable databases like [online source]," "[hyperlink to online source]," "documents released by DOJ," and "media and social media discussions").

Plaintiffs' attempt to distinguish *Sipple v. Chronicle Publishing Co.*, 154 Cal. App. 3d 1040 (1984), fails. They argue that the information at issue there—the plaintiff's sexual orientation—already was widely known in his social and political community whereas Plaintiffs here allege they were "thrust into the public eye … by DOJ's" disclosure. Opp. 11-12. But the relevant question is simply whether the information at issue was "already public or … ha[d] previously become part of the public domain." *Moreno v. Hanford Sentinel, Inc.*, 172 Cal. App. 4th 1125, 1130 (2009). Here, Plaintiffs do not allege a single fact disseminated by Google or xAI that was not already in the public record.

*Negligence.* Plaintiffs' negligence claim is also likely to be dismissed. Plaintiffs do not dispute that, as explained in Defendants' motion, there is no duty to prevent the dissemination of allegedly harmful third-party content through an app or website. *See* Opp. 12; Mot. 10 (quoting *Bogard v. TikTok Inc.*, 2025 WL 604972, at *8-9 (N.D. Cal. Feb. 24, 2025)). Instead, they argue that they have alleged the "more specific and concrete duty" to "control … systems that ingest, index, and generate content revealing Epstein victims' identities and private information." Opp. 12. But they do not and cannot dispute that the duty they seek to impose on those who control such systems is a duty to "redact[] … sensitive personal information" and "remove, de-index, or otherwise restrict access to the unlawfully disclosed information," FAC ¶¶ 147, 191—that is, a duty to suppress allegedly harmful third-party content that courts have repeatedly held websites do not have. Plaintiffs' allegation that Google and xAI "generated" the responses containing the information at issue does not change the result. In *Dyroff v. Ultimate Software Grp., Inc.*, 934 F.3d 1093 (9th Cir. 2019), for example, the plaintiff's claims were premised on allegations that an online service provider not only permitted users to post about the sale of illegal narcotics but also

9

GOOGLE AND XAI'S REPLY ISO
JOINT MOTION TO STAY DISCOVERY

recommended that users join groups discussing narcotics and sent users email alerts regarding posts in such groups. *Id.* at 1095. Even there, where the service provider recommended and sent its own alerts regarding the allegedly harmful third-party content, the Ninth Circuit held that the provider had no duty to prevent harm to users caused by that content. *Id.* at 1100-1101. The Ninth Circuit reasoned that the provider did not create the relevant risk of harm because its recommendation and notification tools operated in the same way regardless of the underlying content. *Id.* at 1101. The same is true here, where Plaintiffs do not allege that AI Mode or Grok treated Plaintiffs' information differently from any other content.

Plaintiffs also fail to distinguish *Tremblay v. OpenAI, Inc.*, 716 F. Supp. 3d 772 (N.D. Cal. 2024), which is on all fours with this case. Contrary to Plaintiffs' characterization (Opp. 12), Defendants do not contend that *Tremblay* "declare[d] there can never be a recognized duty in AI contexts." But *Tremblay* held that OpenAI had no duty to "safeguard" the plaintiffs' copyrighted works or prevent the chatbot ChatGPT from generating summaries of those works based on "public information." 716 F. Supp. 3d at 776, 782. So too here. "Plaintiffs do not identify what duty exists to" control and prevent the dissemination of publicly available information regarding Plaintiffs, *id.* at 782.

***Negligent Infliction of Emotional Distress.*** Plaintiffs' negligent infliction of emotional distress claim is likely to fail for the same reasons. As Plaintiffs concede, this claim is "derivative of a negligence claim," Opp. 13, and so too fails for lack of duty. *Potter v. Firestone Tire & Rubber Co.*, 6 Cal.4th 965, 984-985 (1993). Plaintiffs are also wrong that their "claim should survive" "[t]o the extent their injuries are purely emotional in nature." Opp. 13. "Recovery for emotional distress in negligence cases is generally not available unless malice, breach of a fiduciary duty, physical injury or impact, or some other unusually extreme or outrageous circumstance[] can be shown." *Varnado v. Midland Funding LLC*, 43 F. Supp. 3d 985, 990 (N.D. Cal. 2014) (quotations omitted). Plaintiffs have alleged nothing of that sort.

5:26-cv-02624-VKD

GOOGLE AND XAI'S REPLY ISO
JOINT MOTION TO STAY DISCOVERY

**III.    DISCOVERY IS NOT NECESSARY TO RESOLVE ANY ANTICIPATED MOTIONS AND THE BALANCE OF HARMS FAVORS A STAY**

Plaintiffs contend that discovery may be "necessary in opposing Google and xAI's anticipated motion to dismiss." Opp. 14. But Defendants' forthcoming motion to dismiss will be resolved on the pleadings, not any potential discovery. *See, e.g.*, *Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005) (in ruling on a motion to dismiss, courts "must disregard facts that are not alleged on the face of the complaint" or incorporated by reference therein). And as shown in Defendants' Motion, dismissal is warranted based on threshold legal defects established by the pleadings themselves. Plaintiffs assert they need discovery into how Google and xAI "handle victims' private information," Opp. 14, but they make no effort to show how information regarding such topics is necessary (or appropriate) to respond to Defendants' arguments for dismissal. And it is not.

Discovery also is not necessary for any potential preliminary injunction motion, nor have Plaintiffs shown they will be harmed by a brief stay of discovery. Plaintiffs contend that they will be harmed by the "ongoing public disclosure of their private information" absent a preliminary injunction, but they have not shown that any discovery is needed to file or resolve such a motion. Their supporting declaration states that Plaintiffs need discovery to "support" their potential motion for a preliminary injunction, such as discovery "to determine the precise scope of the class and the specific corrective action requested." Osborne Decl. ¶ 23. But as the declaration concedes, a general "informational imbalance" at the outset of a case is "nothing new" and "will not prevent Plaintiffs from bringing a [preliminary injunction] motion." Osborne Decl. ¶ 23. And if Plaintiffs file such a motion and can demonstrate that discovery is necessary for its resolution, the Court can modify any stay and permit limited discovery at that juncture. But Plaintiffs have not shown that is likely to be the case. They say they will need discovery on topics like the newsworthiness and public nature of the information at issue, Opp. 15, but fail to explain how Google or xAI have any unique information on those topics.

GOOGLE AND XAI'S REPLY ISO
JOINT MOTION TO STAY DISCOVERY

Meanwhile, the harms to Google and xAI absent a stay are substantial. The discovery requests already served in this case seek intrusive and burdensome information regarding how Google and xAI exercise their constitutionally and statutorily protected rights to determine what third-party content should or should not be included on their platforms. *See* Osborne Decl. Exs. 1 & 2; *see also Moody*, 603 U.S. at 731. A brief stay of discovery is warranted to prevent needlessly burdening Defendants' exercise of those rights. *See* Mot. 13.

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that this Court stay discovery against them until the Court has resolved Defendants' forthcoming motions to dismiss.

Dated: July 29, 2026                                   Respectfully submitted,


*/s/ Robert E. Dunn*
Robert E. Dunn, State Bar No. 275600
rdunn@eimerstahl.com
**EIMER STAHL LLP**
1999 S. Bascom Ave. Suite 1025
Campbell, CA 95008
Phone: 408-889-1690

*Attorney for Defendant X.AI Corp.*

*/s/ Emily Barnet*
Emily Barnet (*pro hac vice*)
emily.barnet@wilmerhale.com
**WILMER CUTLER PICKERING HALE AND DORR LLP**
250 Greenwich Street
New York, NY 10007
Telephone: (212) 230-8800

Sonal N. Mehta, State Bar No. 222086
sonal.mehta@wilmerhale.com
**WILMER CUTLER PICKERING HALE AND DORR LLP**
2600 El Camino Real, Suite 400
Palo Alto, CA 94306
Telephone: (650) 858-6000

Allison Schultz (*pro hac vice*)
allison.schultz@wilmerhale.com
**WILMER CUTLER PICKERING HALE AND DORR LLP**
2100 Pennsylvania Avenue NW
Washington, DC 20037
Telephone: (202) 663-6000

*Attorneys for Defendant Google LLC*

**SIGNATURE ATTESTATION**

Pursuant to Civil L.R. 5-1(i), I hereby attest that concurrence in the filing of the document was obtained from the document's signatories. I declare under penalty of perjury that the foregoing is true and correct.


Dated: July 29, 2026                    By: */s/ Emily Barnet*
                                            Emily Barnet (*pro hac vice*)