Sonal N. Mehta, State Bar No. 222086
sonal.mehta@wilmerhale.com
**WILMER CUTLER PICKERING
HALE AND DORR LLP**
2600 El Camino Real, Suite 400
Palo Alto, CA 94306
Telephone: (650) 858-6000

Emily Barnet (*pro hac vice*)
emily.barnet@wilmerhale.com
**WILMER CUTLER PICKERING
HALE AND DORR LLP**
250 Greenwich Street
New York, NY 10007
Telephone: (212) 230-8800

Allison Schultz (*pro hac vice*)
allison.schultz@wilmerhale.com
**WILMER CUTLER PICKERING
HALE AND DORR LLP**
2100 Pennsylvania Avenue NW
Washington, DC 20037
Telephone: (202) 663-6000

*Attorneys for Defendant Google LLC*

Robert E. Dunn, State Bar No. 275600
rdunn@eimerstahl.com
**EIMER STAHL LLP**
1999 S. Bascom Ave. Suite 1025
Campbell, CA 95008
Telephone: (408) 889-1690

Kenton Skarin (*pro hac vice*)
kskarin@x.ai
Reid Coleman (*pro hac vice*)
rcoleman@x.ai
800 W. Cesar Chavez St.
Austin, TX 78701

*Attorneys for Defendant X.AI Corp.*

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JANE DOE 1, JANE DOE 2, JANE DOE 3, JANE DOE 4, and JANE DOE 5, individually and on behalf of others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>UNITED STATES OF AMERICA, GOOGLE LLC, and X.AI Corp.,<br><br>Defendants. | Case No. 5:26-cv-02624-VKD<br><br>**DEFENDANTS GOOGLE & X.AI's JOINT MOTION TO DISMISS**<br><br>Judge: Hon. Virginia K. DeMarchi<br>Courtroom 2, 5th Floor<br><br>Date: November 17, 2026<br>Time: 10:00 a.m. |

DEFENDANTS GOOGLE & X.AI'S JOINT MOTION TO DISMISS

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ...................................................................................................... ii

NOTICE OF MOTION AND MOTION ....................................................................................1

MEMORANDUM OF POINTS AND AUTHORITIES .............................................................1

BACKGROUND .........................................................................................................................3

ARGUMENT ..............................................................................................................................5

I.    The First Amendment Bars All The Claims Against Google And xAI ...............................5

    A.    The First Amendment Bars Liability For Displaying Truthful Information Lawfully Obtained From The Government's Public Disclosure ...........................5

        1.    Google and xAI lawfully obtained the information at issue ........................6

        2.    The information at issue involves matters of public significance ................8

        3.    Plaintiffs cannot satisfy strict scrutiny ........................................................8

    B.    An Injunction Compelling Google And xAI To Suppress Search Results Would Violate The First Amendment .........................................................................9

II.   Section 230 Bars All Of Plaintiffs' Claims Against Google and xAI ...............................11

    A.    Google And xAI Are Interactive Computer Service Providers .............................11

    B.    Plaintiffs Seek To Treat Google And xAI As Publishers Or Speakers ..................12

    C.    The Content At Issue Is From Third-Party Content Providers ..............................12

III.  Plaintiffs' Claims Against Google And xAI Fail On The Merits .......................................16

    A.    Plaintiffs' UCL Claims Fail (Counts II & VI) ......................................................16

        1.    Plaintiffs lack standing under the UCL. ....................................................16

        2.    Plaintiffs fail to plead a violation of any law. ...........................................17

        3.    Plaintiffs fail to plead unfair conduct. ......................................................19

    B.    Plaintiffs' Invasion Of Privacy Claims Fail (Counts III & VII) ...........................21

    C.    Plaintiffs' Negligence Claims Fail (Counts IV & VIII) ........................................23

    D.    The Negligent Infliction Of Emotional Distress Claims Fail (Counts V & IX) ......................................................................................................................25

IV.   Dismissal Should Be With Prejudice .................................................................................25

CONCLUSION .........................................................................................................................25

## TABLE OF AUTHORITIES

### CASES

*Arkansas Educational Television Commission v. Forbes*, 523 U.S. 666 (1998) ......................... 10

*Ashcroft v. Free Speech Coalition*, 535 U.S. 234 (2002) ............................................. 10

*Barnes v. Yahoo!, Inc.*, 570 F.3d 1096 (9th Cir. 2009), *as amended* (Sept. 28, 2009) ..................................................................................................... 12

*Bartnicki v. Vopper*, 532 U.S. 514 (2001) ............................................................. 7

*Bogard v. TikTok Inc.*, 2025 WL 604972 (N.D. Cal. Feb. 24, 2025) .......................... 23

*Bouck v. Meta Platforms, Inc.*, 2026 WL 810036 (N.D. Cal. Mar. 24, 2026) .............. 16

*Bowley v. City of Uniontown Police Department*, 404 F.3d 783 (3d Cir. 2005) ........... 7

*Castronuova v. Meta Platforms, Inc.*, 2025 WL 1914860 (N.D. Cal. June 10, 2025) ................. 25

*Catsouras v. Department of California Highway Patrol*, 181 Cal. App. 4th 856 (2010), *as modified on denial of reh'g* (Mar. 1, 2010) ....................................... 22

*Cel-Tech Communications, Inc. v. Los Angeles Cellular Telephone Co.*, 20 Cal.4th 163 (Cal. 1999) .................................................................................... 20

*Century Surety Co. v. Crosby Insurance, Inc.*, 124 Cal. App. 4th 116 (2004) ............ 24

*Cox Broadcasting Corp. v. Cohn*, 420 U.S. 469 (1975) ....................................... 6, 7, 9

*Davidson v. Hewlett-Packard Co.*, 2021 WL 4222130 (N.D. Cal. Sept. 16, 2021), *aff'd*, 2022 WL 17352186 (9th Cir. Dec. 1, 2022) ......................................... 21

*Davis v. HSBC Bank Nevada, N.A.*, 691 F.3d 1152 (9th Cir. 2012) ......................... 19

*Delgado v. Trax Bar & Grill*, 36 Cal. 4th 224 (2005) ........................................ 24

*Doe v. X Corp.*, 821 F. Supp. 3d 632 (N.D. Tex. 2026) ....................................... 12

*Dowbenko v. Google Inc.*, 582 F. App'x 801 (11th Cir. 2014) ............................... 14

*Dyroff v. Ultimate Software Group, Inc.*, 934 F.3d 1093 (9th Cir. 2019) ................... 11, 13, 23, 24

*Fair Housing Council of San Fernando Valley v. Roommates.com, LLC*, 521 F.3d 1157 (9th Cir. 2008) ...................................................................... 12, 13, 14

*FCC v. League of Women Voters of California*, 468 U.S. 364 (1984) ....................... 10

*Florida Star v. B.J.F.*, 491 U.S. 524 (1989) .............................................. 6, 7, 8, 9, 11

ii

*Forrest v. Meta Platforms, Inc.*, 737 F. Supp. 3d 808 (N.D. Cal. 2024) ...................................... 16

*FTC v. Inc21.com Corp.*, 688 F. Supp. 2d 927 (N.D. Cal. 2010) ...................................................... 19

*FTC v. Kochava Inc.*, 671 F. Supp. 3d 1161 (D. Idaho 2023) .......................................................... 19

*Gardiner v. Walmart Inc.*, 2021 WL 2520103 (N.D. Cal. Mar. 5, 2021) ...................................... 18

*Gentry v. eBay, Inc.*, 99 Cal. App. 4th 816 (2002) .......................................................................... 15

*Gilbert v. National Enquirer, Inc.*, 43 Cal. App. 4th 1135 (1996)................................................... 22

*Ginsberg v. Google Inc.*, 586 F. Supp. 3d 998 (N.D. Cal. 2022).................................................... 24

*Google LLC v. Equustek Solutions Inc.*, 2017 WL 5000834 (N.D. Cal. Nov. 2, 2017) ..................................................................................................................................... 12

*Gu v. BMW of North America, LLC*, 132 Cal. App. 4th 195 (2005).............................................. 25

*Hadley v. Kellogg Sales Co.*, 243 F. Supp. 3d 1074 (N.D. Cal. 2017) .......................................... 17

*I.C. v. Zynga, Inc.*, 600 F. Supp. 3d 1034 (N.D. Cal. 2022) .................................................... 22, 23

*IMDb.com Inc. v. Becerra*, 962 F.3d 1111 (9th Cir. 2020)............................................................. 10

*In re Adobe Systems, Inc. Privacy Litigation*, 66 F. Supp. 3d 1197 (N.D. Cal. 2014) ............................................................................................................................... 19, 20

*In re Sequoia Benefits Insurance Data Breach Litigation*, 2024 WL 1091195 (N.D. Cal. Feb. 22, 2024)............................................................................................................ 17, 19

*Jones v. Dirty World Entertainment Recordings LLC*, 755 F.3d 398 (6th Cir. 2014) .................. 16

*Kimzey v. Yelp! Inc.*, 836 F.3d 1263 (9th Cir. 2016) ................................................................ 14, 15

*Lee v. West Coast Life Insurance Co.*, 688 F.3d 1004 (9th Cir. 2012) .......................................... 25

*M. K. v. Google LLC*, 2023 WL 4937287 (N.D. Cal. Aug. 1, 2023)............................................. 17

*Madsen v. Women's Health Center, Inc.*, 512 U.S. 753 (1994)...................................................... 11

*Marshall's Locksmith Service Inc. v. Google, LLC*, 925 F.3d 1263 (D.C. Cir. 2019)............ 14, 15

*Moody v. NetChoice, LLC*, 603 U.S. 707 (2024) .......................................................................... 10

*Moreno v. Hanford Sentinel, Inc.*, 172 Cal. App. 4th 1125 (2009), *as modified* (Apr. 30, 2009).............................................................................................................. 22

*Nelson v. Tucker Ellis, LLP*, 48 Cal. App. 5th 827 (2020) ............................................................ 21

DEFENDANTS GOOGLE & X.AI'S JOINT MOTION
                                                                                                          TO DISMISS

*New York Times Co. v. Sullivan*, 376 U.S. 254 (1964) ........................................................ 5

*O'Donnell v. Bank of America, National Ass'n*, 504 F. App'x 566 (9th Cir. 2013) ................... 17

*O'Kroley v. Fastcase, Inc.*, 831 F.3d 352 (6th Cir. 2016) ...................................................... 14

*Olson v. Children's Home Society*, 204 Cal. App. 3d 1362 (1988) ......................................... 24

*Parducci v. Overland Solutions, Inc.*, 399 F. Supp. 3d 969 (N.D. Cal. 2019) ......................... 19

*Parents for Privacy v. Barr*, 949 F.3d 1210 (9th Cir. 2020) ................................................. 25

*Planet Green Cartridges, Inc. v. Amazon.com, Inc.*, 2025 WL 869209 (9th Cir.
    Mar. 20, 2025), *cert. denied*, 146 S. Ct. 605 (2025) ...................................................... 23

*Potter v. Firestone Tire & Rubber Co.*, 6 Cal. 4th 965 (1993) .............................................. 25

*Reed v. Town of Gilbert, Arizona*, 576 U.S. 155 (2015) ...................................................... 10

*Search King, Inc. v. Google Technology, Inc.*, 2003 WL 21464568 (W.D. Okla.
    May 27, 2003) ........................................................................................................ 10

*Seo v. All-Makes Overhead Doors*, 97 Cal. App. 4th 1193 (2002) ......................................... 23

*Shulman v. Group W Productions, Inc.*, 18 Cal. 4th 200 (1998), *as modified on
    denial of reh'g* (July 29, 1998) ............................................................................... 8, 22

*Sikhs for Justice, Inc. v. Facebook, Inc.*, 697 F. App'x 526 (9th Cir. 2017) ........................... 25

*Sindi v. El-Moslimany*, 896 F.3d 1 (1st Cir. 2018) ............................................................ 10

*Sipple v. Chronicle Publishing Co.*, 154 Cal. App. 3d 1040 (1984) ................................... 21, 22

*Smith v. Daily Mail Publishing Co.*, 443 U.S. 97 (1979) ..................................................... 6, 7

*Snyder v. Phelps*, 562 U.S. 443 (2011) ........................................................................... 5, 8

*Varnado v. Midland Funding LLC*, 43 F. Supp. 3d 985 (N.D. Cal. 2014) ............................. 24, 25

*X Corp. v. Bonta*, 116 F.4th 888 (9th Cir. 2024) ............................................................... 10

*Zhang v. Baidu.com Inc.*, 10 F. Supp. 3d 433 (S.D.N.Y. 2014) .............................................. 10

## STATUTES, RULES, AND REGULATIONS

47 U.S.C. § 230(f) ................................................................................................... 12, 13

Cal. Bus. & Prof. Code § 17204 ................................................................................... 16

Cal. Civ. Code § 1708.89 ........................................................................................ 19, 21

iv

Cal. Civ. Code § 1798.100 .......................................................................................... 17

Cal. Civ. Code § 1798.140 ...................................................................................... 17, 18

Cal. Civ. Code § 1798.150(c) ...................................................................................... 17

California Consumer Privacy Act of 2018 ................................................... 2, 17, 18, 23

Epstein Files Transparency Act ............................................................................ 3, 6, 18

Fed. R. Civ. P. 12(b)(6) ................................................................................................. 1

Federal Trade Commission Act ................................................................. 2, 17, 18, 19

v

DEFENDANTS GOOGLE & X.AI'S JOINT MOTION TO DISMISS

**NOTICE OF MOTION AND MOTION**

PLEASE TAKE NOTICE THAT, on November 17, 2026 at 10:00 a.m., in Courtroom 2 of the U.S. District Court for the Northern District of California, San Jose Division, at 280 South 1st Street, San Jose, CA, Defendants Google LLC ("Google") and xAI Corp. ("xAI") (collectively "Defendants") will and hereby do move to dismiss Plaintiffs' claims against them pursuant to Federal Rule of Civil Procedure 12(b)(6). This motion is based on this notice of motion and the supporting memorandum of points and authorities.[1]

**MEMORANDUM OF POINTS AND AUTHORITIES**

While this case arises from tragic circumstances and Google and xAI have deep sympathy for Epstein survivors, the legal claims against Google and xAI do not have merit. Both companies invest heavily in protecting users across their platforms. The survivors' desire for privacy is entirely understandable, but online platforms cannot be held liable for displaying publicly available information they did not create. The First Amended Complaint ("FAC") alleges that Defendants displayed Plaintiffs' names and other information from the Department of Justice's ("DOJ") publicly disclosed records regarding Jeffrey Epstein and other online third-party sources in response to specific user queries about whether specific Doe plaintiffs are or are not listed in the Epstein files. Plaintiffs' claims against Google and xAI for collecting and disseminating publicly available third-party content fail as a matter of law for multiple independent reasons.

*First*, the First Amendment bars all of Plaintiffs' claims because they seek to hold Google and xAI liable for the display of publicly available third-party content that is the subject of intense public interest. The First Amendment prohibits imposing liability based on the dissemination of truthful information of public significance previously disclosed by the Government. And for good reason. Newspapers, magazines, websites, and search engines must be free to collect and republish publicly available information about individuals involved in matters of public interest even if those individuals wish that information were not public. Here, Plaintiffs concede that the Government first disclosed their information when it released the Epstein files, and there can be no dispute that

---

[1] Cognizant of the Court's heavy docket and consistent with the Court's guidance at the initial CMC, Google and xAI file this joint motion to dismiss.

the Epstein files involve matters of public significance. Under binding Supreme Court precedent, Plaintiffs must seek any remedy for their injuries from the Government, not Google or xAI. Moreover, Plaintiffs' requested injunctive relief, which would override Google and xAI's protected editorial judgments, violates the First Amendment. Because the Government is the alleged source of Plaintiffs' injuries, the changes Plaintiffs demand from Google and xAI are not narrowly tailored to any compelling government interest. Plaintiffs' claims should be dismissed on First Amendment grounds alone.

*Second*, Section 230 separately bars Plaintiffs' claims because they all are based on Google and xAI's alleged display of information published by the Government and other third parties. Plaintiffs seek to hold Google and xAI liable for displaying their association with Jeffrey Epstein and contact information, but the FAC makes clear that this information originated from the Government and then spread on the internet to other sites and sources before being displayed in response to user queries on Google AI Mode or Grok. Plaintiffs do not allege that Google or xAI materially contributed to what purportedly made that content unlawful, nor could they. They allege at most that Google and xAI re-packaged third-party content that the Government already had made public in response to directed queries about whether Plaintiffs were or were not identified in the Epstein files. The Ninth Circuit and courts in this district have repeatedly held that Section 230 protects aggregating and reformatting third-party content without contributing to its illegality.

*Third*, independent of the First Amendment and Section 230, Plaintiffs fail to state a claim for relief multiple times over. Plaintiffs lack statutory standing under the UCL because they do not allege economic injury resulting from Google's and xAI's conduct, as opposed to the Government's conduct. On the merits, Plaintiffs cannot state claims under the UCL's "unlawful" and "unfair" prongs. Plaintiffs tie their "unlawful" claim to the California Consumer Privacy Act ("CCPA") and the Federal Trade Commission Act ("FTCA"), but neither can be the basis for a UCL claim. The CCPA specifically precludes basing private rights of action under other laws on CCPA violations, and the FTCA lacks any private right of action. Moreover, Plaintiffs do not plausibly allege violations of those statutes. The CCPA does not cover the type of information at issue, including because the information is public. And Plaintiffs' allegation that Google and xAI violated the FTCA

2

fails because Google and xAI had no duty to refrain from displaying this information. Plaintiffs also fail to allege "unfair" conduct. As unfortunate as the publication of Plaintiffs' information was, it is not an "unfair" business practice to display accurate, publicly available information on matters of public interest in response to queries asking about those matters. Similarly, Plaintiffs' invasion of privacy claims fail because Plaintiffs have not alleged that Google or xAI disclosed private facts, only facts that already had been publicly disclosed and that concerned matters of public interest. And Plaintiffs fail to state claims for negligence or negligent infliction of emotional distress because each requires the breach of a duty of care, but there is no general duty to prevent the dissemination of public content from third-party sources.

The undeniable reprehensibility of Jeffrey Epstein's conduct does not negate the public's legitimate interest in information regarding the nature and extent of his wrongdoing and does not create liability for Google or xAI in responding to user queries about those subjects. The claims against Google and xAI should be dismissed with prejudice.

## BACKGROUND

After Congress passed the Epstein Files Transparency Act, the Department of Justice publicly released millions of pages of records relating to its investigation into Jeffrey Epstein. FAC ¶¶ 28, 29. The records—containing "investigative files, victim statements, witness interviews, correspondence, and other materials"—were "posted on a publicly accessible DOJ website." *Id.* ¶ 29. Plaintiffs allege that they are survivors of Epstein's abuse and that their unredacted information was improperly included in the DOJ's disclosure notwithstanding "[i]nternal DOJ communications stat[ing] the documents . . . must redact any information revealing the identities of 'victims.'" *Id.* ¶¶ 15-19, 31. Specifically, Plaintiffs allege that the records contained their and other survivors' names and contact information, including email addresses, phone numbers, locations of residence, and/or home addresses. *Id.* ¶¶ 15-19. They further allege that the DOJ has retracted some information from public access and established an email address for Epstein survivors to directly request removal of private information. *Id.* ¶¶ 2, 40, 49. Doe 1's information allegedly has been removed or redacted from the files hosted on the DOJ's website, *e.g.* FAC ¶¶ 56, 75, 84, but other named plaintiffs' information allegedly remains viewable in whole or in part on the DOJ's website,

*id.* ¶ 41. Plaintiffs also allege that "unredacted documents remain available on publicly available websites" that republished that information after the DOJ's disclosure. *Id.* ¶ 42.

Google AI Mode is part of Google Search, a search engine that indexes, caches, and displays third-party web content that publishers choose to make available to Google. *See* FAC ¶¶ 54-55. AI Mode provides "an enhanced search experience" by "break[ing] a user's query into sub-questions, run[ning] many related searches in parallel, and then generat[ing] a single, conversational answer." *Id.* ¶ 55. Plaintiffs allege that, "[f]ollowing the DOJ's public release of unredacted Epstein files, Google indexed and cached the materials containing the Class members' private information." *Id.* ¶ 56. These materials include the DOJ materials as well as other online sources. *See, e.g., id.* ¶¶ 42 (referring to other "publicly available websites"), ¶ 57 (referring to "online source"), ¶ 63 (referring to "foreign language online source"), ¶ 67 (referring to "online source"). According to the FAC, "searches for Class members' names, or searches combining their names with terms such as 'Epstein,' 'victim,' or 'survivor'" yielded search results in AI Mode that "display[ed] victims' private information and association with Epstein," as drawn from "indexed and cached . . . materials containing" that information. *Id.* ¶ 56. Specifically, Plaintiffs allege that searches containing their names and "Epstein files"—such as "Does the name [Plaintiff JANE DOE 1] appear in the DOJ's released Epstein files?"—yielded results containing information from the Epstein files including their connections to Epstein, their professions and/or contact information, along with references and hyperlinks to the underlying documents or other webpages from which that information was drawn. *Id.* ¶¶ 57-67.

xAI's Grok chatbot generates responses to user queries "us[ing] large language and multimodal models that predict a user's next probable word based on patterns learned from massive datasets of text, images, video, and code." FAC ¶ 71. Specifically, Grok "augments" a "user's prompt" with "real-time data from public X posts and web searches," then responds to the prompt "by selecting the most likely next token to form coherent and contextually relevant responses." *Id.* Plaintiffs allege that Grok's responses to "user prompts regarding the Epstein files" contained Plaintiffs' information because Grok "dr[e]w on . . . materials in its training data, public online sources, the files in the DOJ's online Epstein Library, mainstream news, [and] social media chatter

4

on X." *Id.* ¶ 74. According to the FAC, Grok responded to queries regarding Plaintiffs with information about their professions and connections to Epstein, including references to specific documents from the Epstein Files and/or other online sources. *Id.* ¶¶ 75-81.

## ARGUMENT

Plaintiffs' claims are barred by the First Amendment and Section 230 and fail on the merits for the same fundamental reason: Plaintiffs seek to hold these platforms liable for disseminating information that the DOJ and other third parties had already disclosed and that remains freely available on the internet through no fault of Google or xAI.

### I.     THE FIRST AMENDMENT BARS ALL THE CLAIMS AGAINST GOOGLE AND xAI

Speech on matters of public concern "is entitled to 'special protection' under the First Amendment" and it "cannot be restricted simply because it is upsetting or arouses contempt." *Snyder v. Phelps*, 562 U.S. 443, 458 (2011). "Indeed, the point of all speech protection is to shield just those choices of content that in someone's eyes are misguided, or even hurtful." *Id.*[2] That protection applies doubly here. *First*, the First Amendment protects speakers who publish truthful information lawfully obtained from a government disclosure—regardless of whether the Government's disclosure itself was improper. *Second*, the First Amendment protects editorial judgments. The forward-looking relief Plaintiffs seek—court-ordered removal, filtering, and suppression protocols—would compel Defendants to make editorial changes to their platforms. Plaintiffs cannot obtain their requested relief without satisfying strict scrutiny, which they cannot do because their requested relief is not narrowly tailored to protect privacy rights allegedly violated by the Government in the first instance.[3]

### A.     The First Amendment Bars Liability For Displaying Truthful Information Lawfully Obtained From The Government's Public Disclosure

The Supreme Court has squarely held that once information is made public by the Government, its re-publication is protected by the First Amendment, even if the initial release was

---

[2] Emphasis added and internal quotations, citations, and alterations omitted unless otherwise noted.
[3] Although this case involves private claims under state tort law and consumer protection statutes rather than government action, the First Amendment is "a defense in state tort suits." *Snyder*, 562 U.S. at 451; *see also New York Times Co. v. Sullivan*, 376 U.S. 254, 278 (1964) (tort liability is "a form of regulation that creates hazards to protected freedoms").

5

improper. *See Florida Star v. B.J.F.*, 491 U.S. 524 (1989). In *Florida Star*, a sheriff's department mistakenly placed an unredacted incident report naming a rape victim in its press room. *Id.* at 527. A newspaper copied the report and published the victim's name. *Id.* The victim sued the newspaper and was awarded damages on a negligence theory based on a Florida statute that forbade publishing victims' names. *Id.* at 526, 528-529. The Supreme Court reversed, holding that even though the information was extremely sensitive and a statute specifically protected it, the First Amendment barred liability. *Id.* at 529-532; *see also Cox Broad. Corp. v. Cohn*, 420 U.S. 469 (1975) (same result for broadcaster that identified a rape-murder victim from open court records). As the Supreme Court explained, "if a newspaper lawfully obtains truthful information about a matter of public significance then state officials may not constitutionally punish publication of the information, absent a need to further a state interest of the highest order." *Florida Star*, 491 U.S. at 533 (quoting *Smith v. Daily Mail Publ'g Co.*, 443 U.S. 97, 103 (1979)).

*Florida Star* directs courts evaluating similar claims to answer two threshold questions: (1) whether the information was lawfully obtained (even if its initial release was improper), and (2) whether the dissemination involved truthful information about a matter of public significance. *Id.* at 536-537. If the answer to both questions is yes, the speech is protected by the First Amendment unless the plaintiff can prove that the proposed liability is narrowly tailored to serve a state interest of the highest order. *Id.* at 537. Here, Plaintiffs have sued Google and xAI for displaying truthful information they lawfully obtained after the Government publicly released the Epstein files, a matter of indisputable public significance. Imposing liability on Google and xAI for their subsequent display of information disclosed by the Government is not narrowly tailored to the interest in safeguarding survivors' privacy.

### 1. Google and xAI lawfully obtained the information at issue

Plaintiffs allege that Google and xAI lawfully obtained information from the Government's own public releases and other public sources. The DOJ publicly released the Epstein records under the Epstein Files Transparency Act ("EFTA"), FOIA, and congressional demands. FAC ¶¶ 28-33. Google indexed and cached those public materials, and its AI Mode draws on them. *Id.* ¶¶ 56-68. Grok draws on the DOJ's online library, news, X posts, and other public web sources. *Id.* ¶¶ 71,

74-83. Plaintiffs themselves describe Defendants as "republishing the government's unlawful disclosures." *Id.* ¶ 84. Just as in *Florida Star*, the alleged unlawfulness of the Government's conduct, *id.* ¶¶ 27-53, is relevant only to the Government's potential liability; it has no bearing on the lawfulness of Google's or xAI's conduct. In *Florida Star*, the sheriff's department violated its own policy by releasing the victim's name in its press room, yet the newspaper's acquisition of the information from that press room was lawful. 491 U.S. at 534-536, 538. The Court held that any wrongfulness belonged to the Government for unlawfully publishing the victim's name in the first instance, not the newspaper. *Id.* at 538. So too here. Even if Google and xAI had known (as alleged) that the Government's disclosures were unlawful, FAC ¶¶ 5, 135, 179, 183, they would not be liable. In *Bartnicki v. Vopper*, 532 U.S. 514 (2001), a radio commentator broadcast a cellphone conversation that a stranger had illegally intercepted, and the commentator knew (or had reason to know) that the interception had occurred unlawfully. *Id.* at 517-519. The Supreme Court held that the broadcast was protected anyway: "a stranger's illegal conduct does not suffice to remove the First Amendment shield from speech about a matter of public concern." *Id.* at 535; *accord Bowley v. City of Uniontown Police Dep't*, 404 F.3d 783, 787-788 (3d Cir. 2005) (dismissing privacy claims because information was lawfully obtained even though an officer violated a nondisclosure statute by releasing it).

Nor is it relevant that the DOJ later retracted documents and redacted names. *See* FAC ¶¶ 136, 180. As *Cox* made clear, any "interests in privacy fade when the information involved already appears on the public record." 420 U.S. at 494-495. Accordingly, "once the truthful information [has been] 'publicly revealed' or 'in the public domain'" its "dissemination" cannot be "constitutionally restrain[ed]." *Smith*, 443 U.S. at 103. Indeed, in *Florida Star*, the Supreme Court did not even inquire whether the information *remained* publicly available from the government. The dispositive fact was that the information was first disclosed by the government. *Id.* at 534. And the situation here militates even more strongly in favor of First Amendment protections because, as Plaintiffs allege, the unredacted materials "remain available on publicly available websites[.]" *Id.* ¶¶ 40-42. Thus, even if the Government has removed Plaintiffs' names from *its* website, the disclosed information remains up on other publicly available websites. This Court should thus reject

DEFENDANTS GOOGLE & X.AI'S JOINT MOTION TO DISMISS

Plaintiffs' conclusory allegation that the information is "no longer [a] matter[] of public record." *Id.* ¶¶ 136, 178.

### 2.    The information at issue involves matters of public significance

The challenged search results here involve speech on matters of public significance. Each result displayed by Google and xAI answers a user's question about the Epstein files—a subject whose public importance the FAC concedes. Indeed, Plaintiffs acknowledge public interest in "the Epstein matter generally." FAC ¶¶ 137, 181. They allege that Congress compelled disclosure by statute, that FOIA requests and congressional demands drove the releases, and that senior officials promised "maximum transparency" amid a "publicity circus." *Id.* ¶¶ 28-30, 44-51. And users specifically searching for Plaintiff Does' names and information in the Epstein files confirms that the information at issue has public significance. *See id.* ¶¶ 57-68, 75-83.

Plaintiffs contend that their names, phone numbers, email addresses, and locations are not newsworthy, *id.* ¶¶ 68, 82, 165, 181, but that is not the proper focus. Public significance is measured by the subject of the publication—*e.g.*, the crime, the investigation, the government record—not the individual name or detail that the plaintiff wishes had been omitted. In *Florida Star*, the plaintiff argued that there was no legitimate public interest in identifying her as a victim of crime. The Supreme Court rejected that argument, explaining:

> [T]he article generally, as opposed to the specific identity contained within it, involved a matter of paramount public import: the commission, and investigation, of a violent crime which had been reported to authorities.

491 U.S. at 536-537; *see also Snyder*, 562 U.S. at 453-454 (applying the same logic and looking to the content, form, and context to determine whether the communication involved a matter of public concern). Although publishers decide which details to include when running stories of public significance, judges may not second-guess these decisions because "[t]he courts do not, and constitutionally could not, sit as superior editors of the press." *Shulman v. Group W Prods., Inc.*, 18 Cal. 4th 200, 229 (1998), *as modified on denial of reh'g* (July 29, 1998).

### 3.    Plaintiffs cannot satisfy strict scrutiny

Any liability for the publication of lawfully obtained information about matters of public concern must be narrowly tailored to achieve a compelling state interest. *See Florida Star*, 491 U.S.

DEFENDANTS GOOGLE & X.AI'S JOINT MOTION TO DISMISS

at 538. Plaintiffs' proposed remedy is not narrowly tailored to advance a government interest in safeguarding survivors' privacy where they allege that the Government originally disclosed their information, that its remediation was incomplete, and that the information remains on third-party sites. FAC ¶¶ 2, 32-42, 49-52. As the Supreme Court explained in *Florida Star*, where "the government has failed to police itself in disseminating information," the "imposition of damages against the press for its subsequent publication can hardly be said to be a narrowly tailored means of safeguarding anonymity." 491 U.S. at 538. The rationale is that in such cases the government possessed, "but failed to utilize, far more limited means of guarding against dissemination than the extreme step of punishing truthful speech." *Id.*; *see also Cox*, 420 U.S. at 495-496 (State's placement of information in public records presumes the public interest is served). And "[o]nce the government has placed such information in the public domain," hopes for restitution "must rest upon the willingness of the government to compensate victims for their loss of privacy." *Florida Star*, 491 U.S. at 538.

Plaintiffs contend that Google and xAI should be held liable for "amplif[ying]" the Government's disclosure. FAC ¶¶ 120, 140, 148, 155, 164, 184, 192, 199. But their own complaint highlights that the challenged disclosures were made in response to specific queries in which the particular Plaintiff's name, or a particular Epstein document, was already known to a user—so there was no amplification. *Id.* ¶¶ 57-67, 75-81. In any case, breadth of dissemination does not overcome a First Amendment defense. Both *Florida Star* and *Cox* rejected the plaintiffs' claims despite wide publication. *See Florida Star*, 491 U.S. at 526-527 (newspaper); *Cox*, 420 U.S. at 473-474 (broadcast television). Any remedy thus lies with the Government, which Plaintiffs are pursuing. FAC ¶¶ 4, 35-38.

**B.    An Injunction Compelling Google And xAI To Suppress Search Results Would Violate The First Amendment**

The First Amendment also bars Plaintiffs from obtaining a court order requiring Google and xAI to perform mandatory de-indexing, filter personally identifiable information, and implement court-supervised protocols. *See* FAC at 47. That relief would violate Google and xAI's First Amendment rights by interfering with their protected editorial decisions.

DEFENDANTS GOOGLE & X.AI'S JOINT MOTION TO DISMISS

Google and xAI's judgments about what third-party content to include in search responses are protected by the First Amendment. An entity "exercis[ing] editorial discretion in the selection and presentation" of content is "engage[d] in speech activity." *Arkansas Educ. Television Comm'n v. Forbes*, 523 U.S. 666, 674 (1998). Accordingly, "[t]he First Amendment offers protection when an entity engaging in expressive activity, including compiling and curating others' speech, is directed to accommodate messages it would prefer to exclude." *Moody v. NetChoice*, 603 U.S. 707, 731 (2024). Editorial judgment extends well beyond traditional media, such as newspapers and broadcast television. For example, in *Moody,* the Supreme Court held that internet platforms' decisions about what "third-party speech . . . will be included or excluded from a compilation" are expressive activities. *Id.* at 731-732. And courts have specifically recognized that search engines "make editorial judgments about what information (or kinds of information) to include in the results and how and where to display that information." *Zhang v. Baidu.com Inc.*, 10 F. Supp. 3d 433, 438-439 (S.D.N.Y. 2014); *accord Search King, Inc. v. Google Tech., Inc.*, 2003 WL 21464568, at *3-4 (W.D. Okla. May 27, 2003) (holding that Google was "immune from tort liability" to private plaintiff because search rankings are "constitutionally protected opinions"). In this Circuit, even a website's publication of individuals' personal data is protected speech. *IMDb.com Inc. v. Becerra*, 962 F.3d 1111, 1120-1121 (9th Cir. 2020).

The injunction that Plaintiffs request would interfere with Google and xAI's protected editorial judgments. "The First Amendment forbids the government, including the Judicial Branch, 'from dictating what we see or read or speak or hear.'" *Sindi v. El-Moslimany*, 896 F.3d 1, 30-32 (1st Cir. 2018) (quoting *Ashcroft v. Free Speech Coal.*, 535 U.S. 234, 245 (2002)). "Content-based laws" that "target speech based on its communicative content are presumptively unconstitutional and may be justified only if the government proves that they are narrowly tailored to serve compelling state interests." *Reed v. Town of Gilbert, Ariz.*, 576 U.S. 155, 163 (2015); *see also FCC v. League of Women Voters of Cal.*, 468 U.S. 364, 375-376 (1984) (government action "restrict[ing] the expression of editorial opinion on matters of public importance" subject to "the most exacting degree of First Amendment protection"); *accord X Corp. v. Bonta*, 116 F.4th 888, 898 (9th Cir. 2024). The scrutiny applied to injunctions that infringe on First Amendment rights, including in

private litigation, requires even "more stringent application of general First Amendment principles" because "[i]njunctions . . . carry greater risks of censorship and discriminatory application than do general ordinances." *Madsen v. Women's Health Ctr., Inc.*, 512 U.S. 753, 764–765 (1994).

Plaintiffs' proposed remedy is not narrowly tailored to the interest in protecting survivors' privacy. Where the Government compromised a survivor's privacy, any remedy targeting a third party that subsequently disseminates the information, like Google and xAI here, is not narrowly tailored. *See Florida Star*, 491 U.S. at 538. Even if it were possible to remove such information, there are thousands of law enforcement agencies at the federal, state, and local levels that possess private victim information, and forcing Google and xAI to update their algorithms every time a victim's identity has been publicly disclosed would impose a massive burden on these companies. That is why, as the Supreme Court has recognized, once a victim's identity is disclosed publicly by the Government, the only feasible remedy proceeds from the Government, where the wrong allegedly originated. *Id.*

*                *                *

Binding Supreme Court authority applying the First Amendment resolves this case both as to liability and as to Plaintiffs' claim for injunctive relief against Google and xAI. The claims against both should be dismissed with prejudice on this basis alone.

**II.    SECTION 230 BARS ALL OF PLAINTIFFS' CLAIMS AGAINST GOOGLE AND XAI**

Even independent of the First Amendment, all of Plaintiffs' claims against Google and xAI are barred by Section 230. Section 230 provides immunity for "(1) a provider or user of an interactive computer service (2) whom a plaintiff seeks to treat, under a state law cause of action, as a publisher or speaker (3) of information provided by another information content provider." *Dyroff v. Ultimate Software Grp., Inc.*, 934 F.3d 1093, 1097 (9th Cir. 2019). Plaintiffs here seek to hold Google and xAI liable as the publishers of information provided by third parties. The theory underlying each of Plaintiffs' claims against Google and xAI is that they "republish[ed] the government's unlawful disclosures." FAC ¶ 84. Each claim is accordingly barred.

**A.    Google And xAI Are Interactive Computer Service Providers**

11

Section 230 defines an interactive computer service provider to mean "any information service, system, or access software provider that provides or enables computer access by multiple users to a computer server." 47 U.S.C. § 230(f)(2). Courts have consistently held that Google and xAI fit this definition. *See, e.g.*, *Google LLC v. Equustek Sols. Inc.*, 2017 WL 5000834, at *2 (N.D. Cal. Nov. 2, 2017) ("[T]here is no question that Google is a 'provider' of an 'interactive computer service.'"); *Fair Hous. Council of San Fernando Valley v. Roommates.com, LLC*, 521 F.3d 1157, 1167 (9th Cir. 2008) (describing Google as a "search engine[]" with Section 230 immunity); *Doe v. X Corp.*, 821 F. Supp. 3d 632, 641 (N.D. Tex. 2026) (holding that Section 230 barred Plaintiff's claims against xAI). Here it is undisputed that Google and xAI are squarely interactive computer service providers. Indeed, Plaintiffs allege that Google operates an "internet search engine," "artificial intelligence search tool," and "web-indexing and caching systems," FAC ¶ 22, and that "xAI operates the artificial intelligence search tool Grok" on "[t]he Grok website," *id.* ¶ 23.

## B.    Plaintiffs Seek To Treat Google And xAI As Publishers Or Speakers

A claim treats a defendant as a publisher when it would impose liability for "reviewing, editing, and deciding whether to publish or to withdraw from publication third-party content." *Barnes v. Yahoo!, Inc.*, 570 F.3d 1096, 1102 (9th Cir. 2009), *as amended* (Sept. 28, 2009). Each of Plaintiffs' claims does just that. *See supra* Part I.B. The UCL claims seek to impose liability for "republish[ing] [the DOJ's] investigatory materials," "surfac[ing]" certain content in response to user queries, and failing to "exclude" or "remove" content containing Plaintiffs' information. FAC ¶¶ 120, 126, 164, 170. The invasion-of-privacy claims seek to hold Google and xAI liable for "publish[ing]" and "refusing to remove or de-index" content. *Id.* ¶¶ 136, 139, 180, 183. The negligence claims seek to impose liability for "negligently publish[ing]" and failing to "review," "remove or block access to the offending materials." *Id.* ¶¶ 143, 146-147, 187, 190-191. And the negligent-infliction-of-emotional-distress claims premise liability on allegations that Google and xAI "continu[ed] to publish" the information at issue and "fail[ed] to remove or restrict access to" that information. *Id.* ¶¶ 151-152, 195-196.

## C.    The Content At Issue Is From Third-Party Content Providers

12

DEFENDANTS GOOGLE & X.AI'S JOINT MOTION TO DISMISS

Google and xAI are not "responsible, in whole or in part, for the creation or development of" the allegedly unlawful content at issue. 47 U.S.C. § 230(f)(3). Plaintiffs allege that they were harmed because their association with Epstein and personal information became public. The entire premise of Plaintiffs' case is that (1) the DOJ disclosed records containing information about Plaintiffs, FAC ¶ 37; (2) Google "indexed and cached the materials containing [Plaintiffs'] . . . information" and xAI "dr[e]w[] on" materials in Grok's "training data, . . . the files in the DOJ's online Epstein library," and other "public online sources," *id.* ¶¶ 56, 74; and (3) "as a result," Google AI Mode and Grok responses to user queries "republish[ed] the government's unlawful disclosures," *id.* ¶¶ 56, 84. Plaintiffs thus do not allege that either Google or xAI created the "victim-identifying information" that allegedly harmed Plaintiffs. *Id.* ¶ 1.

Nor do Plaintiffs plausibly allege that Google or xAI developed the content by "materially contributing to [the content's] alleged unlawfulness," *Roommates.com*, 521 F.3d at 1168, by alleging that Google and xAI "generated" responses that included this information, FAC ¶¶ 22, 23. Plaintiffs' association with Epstein and personal information were already unlawfully disclosed when Google and xAI indexed it. Indeed, Google and xAI indexed it only because the Government already had disclosed it. And Plaintiffs do not allege that Google or xAI treated the content at issue differently than any other content. To the contrary, their claims are premised on Defendants' failure to treat their content differently. *E.g. id.* ¶¶ 147, 191 (alleging Google and xAI "fail[ed] to remove, de-index, or otherwise restrict access to the unlawfully disclosed information" and "[f]ai[ed] to implement adequate policies and procedures to protect individual's personal information from unauthorized republication"). The "crucial distinction" between contributions that are "material" (and therefore unprotected by Section 230) or immaterial (and therefore protected by Section 230) is between taking actions "responsib[le] for what makes the displayed content illegal or actionable" as compared to actions that "display . . . unwelcome and actionable content." *Dyroff*, 934 F.3d at 1099. Here, Plaintiffs do not allege material contribution because they allege at most that Google and xAI applied neutral tools to display the allegedly actionable content by "recommend[ing]" it and "[re]packag[ing]" that content "as part of a narrative output." FAC ¶ 88.

DEFENDANTS GOOGLE & X.AI'S JOINT MOTION TO DISMISS

As to Google, Plaintiffs allege that Google is an "internet search engine" that "indexes, caches, and displays web content from across the internet." FAC ¶ 54. Google AI Mode is simply part of the "search experience"; it "breaks a user's query into sub-questions, runs many related searches in parallel, and then generates a single, conversational answer." *Id.* ¶ 55. Courts have consistently held that search engines like Google are protected by Section 230 for providing access to third-party information via search results. For example, in *O'Kroley v. Fastcase, Inc.*, the Sixth Circuit held that Google cannot be held liable "for merely providing access to, and reproducing, . . . allegedly defamatory text," even where Google "performed some automated editorial acts on the content" and "kept the search result up even after [Plaintiff] complained about it." 831 F.3d 352, 355 (6th Cir. 2016); *see also Roommates.com*, 521 F.3d at 1167 (describing Google as a "search engine[]" that would qualify for Section 230 protections); *Marshall's Locksmith Serv. Inc. v. Google, LLC*, 925 F.3d 1263 (D.C. Cir. 2019) (holding that Section 230 immunized Google against claims based on the content of search results); *Dowbenko v. Google Inc.*, 582 F. App'x 801 (11th Cir. 2014) (same). Plaintiffs' allegation that "Google AI Mode" is an "active recommender[] and content generator[]," FAC ¶ 88, does not take Google outside of Section 230's ambit. Most search engines could be described as active recommenders or content generators, just as "the broadest sense of the term 'develop' could include the functions of an ordinary search engine." *Roommates.com*, 521 F.3d at 1167. And they are immune under Section 230 for these functions.

Similarly, Plaintiffs allege xAI generated responses to user queries "by drawing on … public online sources," including "the files in the DOJ's online Epstein Library" FAC ¶ 74. While Grok's underlying technology involves large language models to predict text rather than search algorithms, the result here is the same: the Grok responses here at issue did not independently generate Plaintiffs' names or contact information but pulled that information from third-party content including the DOJ's Epstein Library, X posts, and other online content.

Plaintiffs cannot evade Section 230 by alleging that Google and xAI combined third-party content into a "conversational answer," FAC ¶¶ 55, 71. Aggregating and reformatting third-party content does not constitute material contribution where it "does absolutely nothing to enhance" the alleged unlawful nature of the message "beyond the words offered by" a third party. *Kimzey v.*

14

*Yelp! Inc.*, 836 F.3d 1263, 1270 (9th Cir. 2016). In *Kimzey*, for example, Section 230 barred a claim based on a one-star rating allegedly generated by Yelp itself because "Yelp's rating system" uses "neutral tool[s]" to "reduce[]" "rating inputs from third parties" "into a single, aggregate metric" without "enhanc[ing] the [alleged] defamatory sting of the message." *Id.*; *accord Gentry v. eBay, Inc.*, 99 Cal. App. 4th 816, 833-834 (2002) (Section 230 bars liability for eBay's provision of a "color-coded star symbol" based on eBay's assessment of third-party feedback). Similarly, in *Marshall's Locksmith Service Inc.*, the D.C. Circuit rejected the argument that Google became an information content provider by virtue of its "translation of [street address] information that c[ame] from . . . scam locksmiths' webpages . . . into map pinpoints." 925 F.3d at 1269. Much as here, the plaintiffs there alleged that Google "create[d] enhanced content that was derived from third-party content, but ha[d] been so augmented and altered as to have become new content and not mere editorialization." *Id.* The plaintiffs alleged, for example, that Google "arbitrarily assign[ed]" a specific "map location" based on general representations that a locksmith provided services in the Washington, D.C. area and listed a phone number with a D.C. area code. *Id.* at 1270. The D.C. Circuit held that Google's "translations are . . . protected" because the "map pinpoint" was "derived from . . . the underlying third-party information" and was created using "a neutral algorithm" that did "not distinguish between legitimate and scam locksmiths in the translation process." *Id.* at 1270-1271. Under those circumstances, Google's "decision to present this third-party data in a particular format—a map—d[id] not constitute the 'creation' or 'development' of information," even though Google made a "choice of presentation" and processed the address data into another "textual or pictorial form." *Id.* at 1269.

The same conclusion follows here. The content at issue—Plaintiffs' personal information and association with Epstein—was "derived from . . .the underlying third-party information," and Google's and xAI's "translation" of that information into a different "textual . . . form" is not alleged to have either distinguished between lawful and allegedly unlawful content, *Marshall's Locksmith*, 925 F.3d at 1269, 1270, or "enhance[d] the [allegedly unlawful nature] of the message beyond the words" in the underlying third-party sources, *Kimzey*, 836 F.3d at 1270.

15

That the responses may have also included context or connectors not drawn directly from third-party sources does not change the analysis. "[A]dd[ing] commentary to third-party content" that does not itself contribute to "what makes another party's statement actionable" does not make one a content creator or developer within the meaning of Section 230. *Jones v. Dirty World Ent. Recordings LLC*, 755 F.3d 398, 415 (6th Cir. 2014). Here, Plaintiffs allege that Google and xAI's responses included statements like, "[b]ased on the unredacted documents and searchable databases . . . ," "[y]ou can explore the broader context . . . in [online source]," "[t]his has been noted in . . . ," and "context varies widely across the millions of pages released," as well as statements describing underlying documents as "financial and administrative," FAC ¶¶ 57, 60, 75, 78, 80. But these statements, which may not have been drawn directly from third-party sources, are not what Plaintiffs allege to be unlawful. For the same reason, any reliance on *Forrest v. Meta Platforms, Inc.*, 737 F. Supp. 3d 808 (N.D. Cal. 2024), and *Bouck v. Meta Platforms, Inc.*, 2026 WL 810036 (N.D. Cal. Mar. 24, 2026), would be misplaced. Those cases involved allegations that the defendants made material contributions to the actionable content. No such allegation exists here.

### III.    Plaintiffs' Claims Against Google And xAI Fail On The Merits

Plaintiffs' claims can and should be dismissed based on the First Amendment or Section 230 alone. But they also fail on the merits.

#### A.    Plaintiffs' UCL Claims Fail (Counts II & VI)

Plaintiffs cannot state a claim under the unlawful or unfair prong of the UCL. As a threshold matter, Plaintiffs cannot state any claim under the UCL because they lack statutory standing for want of economic injury caused by Defendants. Plaintiffs also have not alleged a predicate act of "unlawful" or "unfair" conduct sufficient to state a claim under the UCL.

##### 1.    Plaintiffs lack standing under the UCL.

To have standing under the UCL, Plaintiffs must have "lost money or property as a result of the [alleged] unfair competition." Cal. Bus. & Prof. Code § 17204. But Plaintiffs do not allege any economic losses caused by Google's or xAI's alleged "republications," as opposed to the Government's initial disclosure. *Compare* FAC ¶ 90(f) (alleging harms, including "[e]conomic losses" as "a direct and proximate result" of the conduct of the United States) *with* FAC ¶ 91

16

(alleging "emotional distress," "[h]arassment," "[e]xacerbation of pre-existing trauma," and "lost peace of mind," but *not* economic losses attributable to Google and xAI). Plaintiffs therefore lack standing under the UCL because they fail to "allege a causal connection between Google's alleged unlawful or unfair conduct and [any] economic harm" that Plaintiffs allege. *M. K. v. Google LLC*, 2023 WL 4937287, at *8 (N.D. Cal. Aug. 1, 2023).

### 2. Plaintiffs fail to plead a violation of any law.

To state a claim under the UCL's unlawful prong, Plaintiffs must state a "predicate" claim under another law. *Hadley v. Kellogg Sales Co.*, 243 F. Supp. 3d 1074, 1094 (N.D. Cal. 2017). Here, Plaintiffs invoke the California Consumer Privacy Act of 2018 ("CCPA"), Cal. Civ. Code § 1798.100, *et seq*., and Section 5(a) of the Federal Trade Commission Act ("FTCA"), FAC ¶¶ 115-117, 159-161. But the CCPA cannot be the predicate for a UCL claim because it expressly provides that "[n]othing in this title shall be interpreted to serve as the basis for a private right of action under any other law." Cal. Civ. Code § 1798.150(c); *see In re Sequoia Benefits Ins. Data Breach Litig.*, 2024 WL 1091195, at *8 (N.D. Cal. Feb. 22, 2024) (dismissing UCL claim predicated on alleged CCPA violation). And as courts in this district have recognized, the FTCA also "cannot be used as a predicate for a UCL Claim" because it does not provide a private right of action. *Sequoia Benefits*, 2024 WL 1091195, at *8; *see also O'Donnell v. Bank of Am., Nat'l Ass'n*, 504 F. App'x 566, 568 (9th Cir. 2013) (affirming dismissal of UCL claim premised on a violation of the FTCA because "[t]he federal statute doesn't create a private right of action . . . and plaintiffs can't use California law to engineer one"). In any event, because Plaintiffs "cannot state a claim under [any] predicate law," their claim under the UCL's unlawful prong "also fails." *Hadley*, 243 F. Supp. 3d at 1094.

Plaintiffs allege that Google and xAI violated provisions of the CCPA pertaining to the treatment of "sensitive personal information," FAC ¶¶ 117, 161, but this case does not involve any "sensitive personal information" within the meaning of the CCPA—for two reasons.

*First*, the CCPA defines "sensitive personal information" to exclude "publicly available information" and "lawfully obtained, truthful information that is a matter of public concern." Cal. Civ. Code §§ 1798.140(v)(2)(A), 1798.140(ae)(3). "[P]ublicly available" information includes

17

"[i]nformation that is lawfully made available from federal, state, or local government records" and "[i]nformation that a business has a reasonable basis to believe is lawfully made available to the general public . . . from widely distributed media." § 1798.140(v)(2)(B)(i). As Plaintiffs themselves allege, the information at issue was first disclosed by the Government "pursuant to the Epstein Files Transparency Act," FAC ¶ 28, which, as the Government has explained, permitted the disclosures of unredacted information regarding survivors, *see* Dkt. 47 at 4. Plaintiffs do not plausibly allege that Google or xAI had any reason to believe the information was not lawfully public, including because Plaintiffs acknowledge that information from the Epstein files was picked up and republished by numerous other media sources, *e.g.* FAC ¶¶ 61, 67, 74, 79-80. Separately, regardless of the legality of the DOJ's disclosure, once disclosed, the information at issue was "lawfully obtained" by Google and xAI. *See supra* Part II.A.1. And under any reasonable definition, the information in the Epstein files is a matter of public concern. *See supra* Part II.A.2.

*Second*, Plaintiffs do not allege that Google and xAI displayed results containing any "sensitive personal information" protected by the CCPA. The CCPA defines that term to include only certain categories of highly sensitive information, such as social security numbers, precise geolocation, and genetic data. Cal. Civ. Code § 1798.140(ae). Here, the information Plaintiffs allege Google and xAI displayed (names, email addresses, phone numbers, professions, and general areas of residence, FAC ¶¶ 15-19) does not fall within that definition. The alleged disclosure of information not enumerated in the CCPA does not support a claim under that statute. *See Gardiner v. Walmart Inc.*, 2021 WL 2520103, at *3 (N.D. Cal. Mar. 5, 2021) (dismissing CCPA claim alleging disclosure of "full names, financial account information, [and] credit card information" but not "a credit or debit card or account number, and the required security or access code").

Plaintiffs also allege that Google and xAI violated Section 5(a) of the FTCA by "failing to implement and use reasonable measures to protect Sensitive Information." FAC ¶¶ 116, 160. But Plaintiffs provide no support for the proposition that the FTCA imposes such a duty. The FAC references "FTC publications described herein," but no such publications are discussed or described in the complaint. *Id.* In any event, the standard to plead an unfair practice under the FTCA is substantially similar to the balancing test applied under the UCL's unfair prong, and so any claim

18

DEFENDANTS GOOGLE & X.AI'S JOINT MOTION TO DISMISS

under Section 5 of the FTCA would fail for the reasons explained below. *See FTC v. Inc21.com Corp.*, 688 F. Supp. 2d 927, 938 (N.D. Cal. 2010) (stating test); *infra* pp. 19-21; *FTC v. Kochava Inc.*, 671 F. Supp. 3d 1161, 1175 (D. Idaho 2023) (sale of consumer information that was "generally accessible through other, lawful means" did not violate FTCA).[4]

### 3.    Plaintiffs fail to plead unfair conduct.

Nor have Plaintiffs stated a claim under the "unfair" prong of the UCL. As an initial matter, Plaintiffs' claims under the "unfair" prong are premised on the same underlying conduct as the "unlawful prong." *Compare* FAC ¶¶ 115-116, 159-160 (alleging unlawful conduct for failure "to take reasonable measures to protect the Injunctive Relief Subclass member's private information") *with* ¶¶ 120, 164 (alleging unfair conduct for "building and maintaining platforms that collect[], index[], and republish[] investigatory materials without effective safeguards for victim private information."). "[B]ecause the unlawful prong fails, and the alleged unfair business practices 'overlap entirely' with those addressed in the unlawful prong, 'the unfair prong of the UCL cannot survive.'" *Sequoia Benefits*, 2024 WL 1091195, at *8; *see also Parducci v. Overland Sols., Inc.*, 399 F. Supp. 3d 969, 982 (N.D. Cal. 2019) (same). Moreover, Plaintiffs fail to allege a UCL violation under any of the tests courts apply to assess conduct under the "unfair" prong. *See Davis v. HSBC Bank Nevada, N.A.*, 691 F.3d 1152, 1169-1170 (9th Cir. 2012) (describing tests).

*Balancing test.* Under the "balancing test," the court "examines whether the challenged business practice is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers," which "requires the court to weigh the utility of the defendant's conduct against the gravity of the harm to the alleged victim." *In re Adobe Sys., Inc. Priv. Litig.*, 66 F. Supp. 3d 1197, 1226 (N.D. Cal. 2014).

Here, the "challenged business practice[s]" are Google's and xAI's display—in response to specific user queries about Plaintiffs' connections to Epstein—of information previously published by third parties. *See* FAC ¶¶ 119-127, 163-171. Specifically, Plaintiffs allege Google and xAI "collect[], index[], and republish[] investigatory materials without effective safeguards for victim

---

[4] Elsewhere in the FAC, Plaintiffs mention § 1708.89. *See* FAC ¶¶ 122, 166. This statute forbids disclosing information with "intent to place another person in reasonable fear for their safety, or the safety of the other person's immediate family." § 1708.89. No such intent is alleged here.

19

DEFENDANTS GOOGLE & X.AI'S JOINT MOTION
TO DISMISS

private information." FAC ¶¶ 120, 164. That is not an unfair practice. *First*, as explained *supra* pp. 17-18, *infra* 21-23, the information at issue was not "private." Every piece of information whose disclosure Plaintiffs contend is unfair derived from a publicly available third-party source. *Second*, given that prior disclosure, any incremental harm from Google's and xAI's dissemination does not outweigh the utility of making accessible matters of significant public interest. Plaintiffs allege that any benefit in facilitating access to the Epstein files does not require "tying" Plaintiffs' identities to that material, *id.* ¶¶ 121, 165, but they do not allege that Google or xAI is responsible for any such "tying." They do not cite Google and xAI's responses to open-ended questions such as "who was in the Epstein files." Instead, the FAC cites responses to user queries that included Plaintiffs' names and explicit references to either "Epstein" or specific documents in the Epstein files. *See* FAC ¶¶ 57, 60, 63, 65, 75, 79. While there are many reasons to prefer that one's information not be made accessible, it is not "unfair" to display truthful, publicly available information. If it were, that would open countless defendants—including newspapers, magazines, and websites—to UCL liability for collecting and disseminating publicly available information about an individual that the individual wished were not public. The First Amendment does not permit the UCL's unfair prong to be stretched so far, *see supra* Part II.A, even in unfortunate circumstances like these.

*Tethering test*. Under "the tethering test," the court examines whether the conduct at issue violates a "public policy" that is "tethered to specific constitutional, statutory, or regulatory provisions." *In re Adobe Systems*, 66 F. Supp. 3d at 1226-1227 (cleaned up). While this prong of the UCL "does not proscribe specific practices," "[c]ourts may not simply impose their own notions of the day as to what is fair or unfair." *Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.*, 20 Cal.4th 163, 180, 182 (Cal. 1999). Rather, conduct violates the tethering test when "the effects of [Defendant]'s conduct are comparable to or the same as a violation of the law, or otherwise significantly threaten or harm competition," even absent a "direct violation[] of a statute." *In re Adobe Sys.*, 66 F. Supp. 3d at 1226-1227 (cleaned up).

Plaintiffs here have not even attempted to allege a threatened impact on competition. Nor do the statutes Plaintiffs invoke evince a public policy that would require Google or xAI to affirmatively take down or de-list the public information at issue. California's doxxing statute

20

prohibits disclosure of personal identifying information "with intent to place another person in reasonable fear for their safety, or the safety of the other person's immediate family," Cal. Civ. Code § 1708.89, conduct that is not alleged here. And the cited "data-security and privacy" statutes, FAC ¶¶ 122, 166, pertain to dissemination of information not at issue here, as explained *supra* pp. 17-18. That certain companies must safeguard certain information such as social security numbers, precise geolocation, and genetic data does not create a policy requiring Google and xAI to suppress public information on a matter of public import. Nor do the statutes impose an obligation on individuals and entities not covered by those statutes to safeguard this information.

## B.  Plaintiffs' Invasion Of Privacy Claims Fail (Counts III & VII)

Plaintiffs' invasion of privacy claims fail because Plaintiffs have not alleged and cannot allege that Google or xAI disclosed any private facts. A public disclosure claim requires "(1) public disclosure (2) of a private fact (3) which would be offensive and objectionable to the reasonable person and (4) which is not of legitimate public concern." *Nelson v. Tucker Ellis, LLP*, 48 Cal. App. 5th 827, 843 (2020). "[A] crucial ingredient of the tort . . . is a public disclosure of *private facts* . . . , that is the unwarranted publication of intimate details of one's private life which are outside the realm of legitimate public interest." *Sipple v. Chronicle Publ'g Co.*, 154 Cal. App. 3d 1040, 1047 (1984). Here, Plaintiffs base their claims on the alleged disclosure of their names, contact information, and their "status as sexual abuse victims." FAC ¶¶ 133, 177. But their claims fail because the Government first disclosed this information, and thus, none of those are private facts under the law. Additionally, the facts allegedly disclosed concern matters of public interest, and/or are not facts in which Plaintiffs had a reasonable expectation of privacy.

*First*, all of the facts at issue had already been publicly disclosed before Google's or xAI's alleged dissemination. That alone disposes of the claim. "A matter that is already public or that previously became part of the public domain is not private." *Davidson v. Hewlett-Packard Co.*, 2021 WL 4222130, at *8 (N.D. Cal. Sept. 16, 2021), *aff'd*, 2022 WL 17352186 (9th Cir. Dec. 1, 2022). As explained, Plaintiffs claim that Google and xAI "*re*publish[ed] the government's unlawful disclosures." FAC ¶ 84. Thus, according to the Complaint, the information that Google and xAI allegedly disclosed was "already public," and Google's and xAI's subsequent

21

dissemination of public information cannot support an invasion of privacy claim. *Gilbert v. National Enquirer, Inc.*, 43 Cal. App. 4th 1135, 1149 (1996).

Plaintiffs' allegations that Google's and xAI's disclosures made Plaintiffs' information more accessible, FAC ¶¶ 84, 89, does not change that conclusion. "[T]here is no liability when the defendant merely gives further publicity to information about the plaintiff which is already public." *Sipple*, 154 Cal. App. 3d at 1047. Nor does the allegation that Google and xAI continued to republish Doe 1's information "after the DOJ had redacted or removed [her] information" change anything, FAC ¶¶ 136, 180. The DOJ's initial disclosure "was not so obscure or transient that it was not accessed by others." *Moreno v. Hanford Sentinel, Inc.*, 172 Cal. App. 4th 1125, 1130 (2009) (removal of online journal six days after initial disclosure did not support invasion of privacy claim based on subsequent republication), *as modified* (Apr. 30, 2009). Indeed, the Complaint acknowledges that third parties republished unredacted versions of the records at issue even after the DOJ took corrective action. *See* FAC ¶¶ 67, 74.

*Second*, "lack of newsworthiness is an element of the 'private facts' tort," making newsworthiness a "complete bar to liability." *Shulman*, 18 Cal. 4th at 214, 227. The line between newsworthy and private information "is to be drawn when the publicity ceases to be the giving of information to which the public is entitled, and becomes a morbid and sensational prying into private lives for its own sake." *Catsouras v. Department of Cal. Hwy. Patrol*, 181 Cal. App. 4th 856, 874 (2010), *as modified on denial of reh'g* (Mar. 1, 2010). There is indisputably legitimate public interest in the Epstein files, and the public's legitimate interest "extends . . . to the use of names[] [or] likenesses" of individuals "involved"—even "involuntarily"—in an "event[] of public interest." *Shulman*, 18 Cal. 4th at 224-225. The reprehensibility of Jeffrey Epstein's conduct does not negate the public's legitimate interest in information regarding the nature and extent of his wrongdoing, and does not convert disclosure of information regarding alleged survivors of his abuse into "morbid and sensational prying into private lives *for its own sake*." *Id.* at 229.

*Third*, to the extent Plaintiffs contend there is no legitimate public interest in their contact information, that cannot save their claims as "basic contact information, including one's email address[] [and] phone number" is not "private information." *I.C. v. Zynga, Inc.*, 600 F. Supp. 3d

22

1034, 1049 (N.D. Cal. 2022). Rather, such "information is designed to be exchanged to facilitate communication and is thus available through ordinary inquiry and observation." *Id.*

### C.    Plaintiffs' Negligence Claims Fail (Counts IV & VIII)

Plaintiffs have not plausibly alleged negligence claims against Google or xAI because neither has a duty to remove or prevent the dissemination of publicly available information. Plaintiffs' negligence claims are premised on Google's and xAI's alleged "[f]ail[ure] to … redact[]" or "remove" and "[c]ontinuing to generate, display, cache, and make searchable" (i.e. not removing) Plaintiffs' information. FAC ¶¶ 147, 191. Contrary to Plaintiffs' assertion, FAC ¶¶ 145, 189, the CCPA does not impose duties on Google or xAI to remove the content at issue, *see supra* pp. 17-18, 20-21. And Plaintiffs do not and cannot identify any other basis for the asserted duties.

Any duty would require the existence of a special relationship because Plaintiffs allege nonfeasance, and not misfeasance. Nonfeasance exists where a defendant fails to intervene to help a plaintiff whereas "[m]isfeasance exists when the . . . defendant . . . created [the] risk" that led to harm. *Seo v. All-Makes Overhead Doors*, 97 Cal. App. 4th 1193, 1202 (2002). As a general matter, nonfeasance does not incur liability: "one who has not created a peril is not liable in tort merely for failure to take affirmative action to assist or protect another from the acts of a third party." *Planet Green Cartridges, Inc. v. Amazon.com, Inc.*, 2025 WL 869209, at *2 (9th Cir. Mar. 20, 2025), *cert. denied*, 146 S. Ct. 605 (2025). And as the Ninth Circuit has held, an online platform's use of content-neutral tools to facilitate the communication of third-party content does not constitute misfeasance even where such tools communicate harmful content. *Dyroff*, 934 F.3d at 1100-1101; *accord Bogard v. TikTok Inc.*, 2025 WL 604972, at *8-9 (N.D. Cal. Feb. 24, 2025). Google and xAI thus had no duty to redact, remove, or otherwise take steps to suppress or prevent disseminating Plaintiffs' information. That remains true here despite Plaintiffs' allegation that Google and xAI "generate[d]" responses containing Plaintiffs' information. FAC ¶¶ 55, 71. *Dyroff* is instructive. There, the website generated and sent email notifications containing the harmful content at issue. 934 F.3d at 1095, 1098. But the Ninth Circuit still held the claim involved nonfeasance because the website used the recommendation and notification functions "regardless of" the nature of the underlying content, and so "did not make Plaintiff's son . . . worse off." *Id.* at 1101. As the Ninth

Circuit reasoned, "[n]o website could function if a duty of care was created when a website facilitates communication, in a content-neutral fashion, of its users' content." *Id.* That reasoning applies here, where Plaintiffs allege only that Google and xAI's content-neutral tools facilitated the communication of information from third-party webpages.

Because Plaintiffs allege only nonfeasance, to plead a duty they must plausibly allege they had a "special relationship" with Google and xAI. They do not. Courts have recognized only a few "special relationships," including between "shopping centers, restaurants, and bars, and their tenants, patrons, or invitees"; "common carriers and passengers"; "innkeepers and their guests"; and "mental health professionals and their patients." *Delgado v. Trax Bar & Grill*, 36 Cal. 4th 224, 235-236 & n.14 (2005). These relationships "generally involve some kind of dependency or reliance." *Olson v. Children's Home Soc'y*, 204 Cal. App. 3d 1362, 1366 (1988). Plaintiffs allege no such relationship here, nor any heightened dependency on Google or xAI. Nor could they.

A negligence claim also requires proximate cause between the breach and injury, *see Century Sur. Co. v. Crosby Ins., Inc.*, 124 Cal. App. 4th 116, 127 (2004), which Plaintiffs have failed to plausibly allege. Any alleged connection between Google or xAI's conduct and Plaintiffs' injury is attenuated because the Government, not Google or xAI, made the information at issue public. *See Ginsberg v. Google Inc.*, 586 F. Supp. 3d 998, 1009-1010 (N.D. Cal. 2022) (holding that "the alleged connection between Google's conduct [of failure to remove an app from the Play Store] and [Plaintiff]'s emotional distress [of living in apprehension of religiously motivated violence] is too attenuated to satisfy the causation element" for the tort of negligence).

Plaintiffs' negligence claims also fail because Plaintiffs have not alleged any cognizable damages. Plaintiffs primarily allege harm in the form of "anxiety and distress," FAC ¶¶ 148, 192, without any corresponding physical injury. But "damages for emotional distress may be recovered in the absence of either physical injury or impact" only in cases involving "malice, breach of a fiduciary duty, . . . or some other unusually extreme or outrageous circumstance." *Varnado v. Midland Funding LLC*, 43 F. Supp. 3d 985, 990 (N.D. Cal. 2014). No such circumstances are alleged here. And while Plaintiffs also allege economic injury in the form of "time, effort, and . . . legal expenses attempting . . . to persuade Google [and xAI] to remove or limit access to

[Plaintiffs'] information," FAC ¶¶ 148, 192, it is "well-established" under California law that fees and costs "incur[red] in suing the tortfeasor defendant" are not recoverable as tort damages. *Lee v. West Coast Life Ins. Co.*, 688 F.3d 1004, 1008 n.4 (9th Cir. 2012).

**D.    The Negligent Infliction Of Emotional Distress Claims Fail (Counts V & IX)**

Under California law, "there is no independent tort of negligent infliction of emotional distress." *Potter v. Firestone Tire & Rubber Co.*, 6 Cal. 4th 965, 984 (1993). Rather, the relevant "tort is negligence, . . . in which a duty to the plaintiff is an essential element." *Id.* Thus, a claim lies only where the defendant has "assumed a duty to plaintiff in which the emotional condition of the plaintiff is an object" or where "[t]hat duty [is] imposed by law" or "by virtue of a special relationship." *Id.* at 985. As explained, no such duty is plausibly alleged here. *See supra* pp 23-25. Instead, Plaintiffs allege only that Google and xAI had "a duty of reasonable care not to negligently cause foreseeable emotional distress." FAC ¶¶ 151, 195. But "the mere presence of a foreseeable risk" is not sufficient "to impose liability for negligent conduct." *Gu v. BMW of N. Am., LLC*, 132 Cal. App. 4th 195, 208 (2005). And the same bar on recovery of Plaintiffs' alleged damages in connection with their general negligence claims applies here. *See Varnado*, 43 F. Supp. 3d at 990.

**IV.    Dismissal Should Be With Prejudice**

Dismissal without leave to amend is appropriate where amendment would be futile. *Parents for Privacy v. Barr*, 949 F.3d 1210, 1239 (9th Cir. 2020). That is the case here because "Plaintiffs' legal theories fail." *Id.* Dismissal with prejudice is particularly appropriate because the claims are barred by the First Amendment and Section 230. *See Castronuova v. Meta Platforms, Inc.*, 2025 WL 1914860 (N.D. Cal. June 10, 2025) (dismissing with prejudice based on First Amendment and Section 230 defenses); *Sikhs for Justice, Inc. v. Facebook, Inc.*, 697 F. App'x 526, 526 (9th Cir. 2017) ("Because [the] claim is barred [by Section 230], . . . leave to amend . . . would have been futile.").

**CONCLUSION**

The claims against Google and xAI should be dismissed with prejudice.

Dated: August 7, 2026

Respectfully submitted,

/s/ Robert E. Dunn
Robert E. Dunn, State Bar No. 275600
rdunn@eimerstahl.com
**EIMER STAHL LLP**
1999 S. Bascom Ave. Suite 1025
Campbell, CA 95008
Phone: 408-889-1690

Kenton Skarin (*pro hac vice*)
kskarin@x.ai
Reid Coleman (*pro hac vice*)
rcoleman@x.ai
800 W. Cesar Chavez St.
Austin, TX 78701

*Attorneys for Defendant X.AI Corp.*

/s/ Emily Barnet
Emily Barnet (*pro hac vice*)
emily.barnet@wilmerhale.com
**WILMER CUTLER PICKERING
HALE AND DORR LLP**
250 Greenwich Street
New York, NY 10007
Telephone: (212) 230-8800

Sonal N. Mehta, State Bar No. 222086
sonal.mehta@wilmerhale.com
**WILMER CUTLER PICKERING
HALE AND DORR LLP**
2600 El Camino Real, Suite 400
Palo Alto, CA 94306
Telephone: (650) 858-6000

Allison Schultz (*pro hac vice*)
allison.schultz@wilmerhale.com
**WILMER CUTLER PICKERING
HALE AND DORR LLP**
2100 Pennsylvania Avenue NW
Washington, DC 20037
Telephone: (202) 663-6000

*Attorneys for Defendant Google LLC*

26

DEFENDANTS GOOGLE & X.AI'S JOINT MOTION
TO DISMISS

## <u>SIGNATURE ATTESTATION</u>

Pursuant to Civil L.R. 5-1(i), I hereby attest that concurrence in the filing of the document was obtained from the document's signatories. I declare under penalty of perjury that the foregoing is true and correct.

Dated: August 7, 2026                                      By: */s/ Emily Barnet*
                                                                     Emily Barnet (*pro hac vice*)

27