Jordan A. Hulseberg
Jordan.a.hulseberg2@usdoj.gov
**U.S. Department of Justice**
**Civil Division, Federal Programs Branch**
1100 L St. NW
Washington, DC 20005
Telephone: (202) 598-3856
*Attorney for United States*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| JANE DOE 1, JANE DOE 2, JANE DOE 3, JANE DOE 4, and JANE DOE 5, individually and on behalf of others similarly situated,<br><br>   Plaintiffs,<br><br>  v.<br><br>UNITED STATES OF AMERICA, GOOGLE LLC, and X.AI Corp.,<br><br>   Defendants. | Case No. 5:26-cv-02624-VKD<br><br>**DEFENDANT UNITED STATES'**<br>**MOTION TO DISMISS**<br><br>Judge: Hon. Virginia K. DeMarchi<br>Courtroom 2, 5th Floor<br>November 17, 2026, at 10 a.m. |

**TABLE OF CONTENTS**

INTRODUCTION ................................................................................................................................ 1

BACKGROUND ................................................................................................................................. 2

I.        Legal Background. ................................................................................................................. 2

          a.        The Epstein Files Transparency Act. ...................................................................... 2

          b.        The Privacy Act. ...................................................................................................... 4

II.       Plaintiffs' Lawsuit. ............................................................................................................... 5

LEGAL STANDARD ........................................................................................................................ 5

ARGUMENT ..................................................................................................................................... 6

I.        Plaintiffs fail to plausibly plead a claim under the Privacy Act. ......................................... 6

          a.        Plaintiffs fail to plausibly allege an "intentional or willful" disclosure
                    under the Privacy Act. ............................................................................................. 6

CONCLUSION................................................................................................................................. 12

# TABLE OF AUTHORITIES

**CASES**

*Albright v. United States*,
　732 F.2d 181 (D.C. Cir. 1984)............................................................................................. 6

*Andrews v. Veterans Admin. of U.S.*,
　838 F.2d 418 (10th Cir. 1988) ........................................................................................... 7

*Angov v. Lynch*,
　788 F.3d 893 (9th Cir. 2015) ............................................................................................. 9

*Armstrong v. U.S. Bureau of Prisons*,
　976 F. Supp. 17 (D.D.C. 1997), *aff'd sub nom.*
　*Armstrong v. Fed. Bureau of Prisons*, 1998 WL 65543 (D.C. Cir. Jan. 30, 1998) .................. 10

*Ashcroft v. Iqbal*,
　556 U.S. 662 (2009)........................................................................................................... 6

*Bell Atl. Corp. v. Twombly*,
　550 U.S. 544 (2007)........................................................................................................... 6

*Cacho v. Chertoff*,
　No. 06-cv-00292, 2006 WL 3422548 (D.D.C. Nov. 28, 2006) ...................................... 4

*Conservation Force v. Salazar*,
　646 F.3d 1240 (9th Cir. 2011) ........................................................................................... 5

*Covert v. Harrington*,
　876 F.2d 751 (9th Cir. 1989).................................................................................... 6, 9, 12

*Cruz v. Bondi*,
　146 F.4th 730 (9th Cir. 2025)............................................................................................ 9

*DeHoog v. Anheuser-Busch InBev SA/NV*,
　899 F.3d 758 (9th Cir. 2018)............................................................................................. 7

*Dick v. Holder*,
　67 F. Supp. 3d 167 (D.D.C. 2014) .................................................................................... 4

*Fed. Aviation Admin. v. Cooper*,
　566 U.S. 284 (2012)....................................................................................................... 4, 5

*Hikma Pharms. USA Inc. v. Amarin Pharma, Inc.*,
　146 S. Ct. 1391 (2026)................................................................................................... 5, 6

*Kelley v. Fed. Bureau of Investigation*,
　67 F. Supp. 3d 240 (D.D.C. 2014) .................................................................................... 6

*Khoja v. Orexigen Therapeutics*,
　899 F.3d 988 (9th Cir. 2018)............................................................................................. 6

*Lopez v. Bank of Am., N.A.*,
  505 F. Supp. 3d 961 (N.D. Cal. 2020) ................................................................................. 9

*Mulhern v. Gates*,
  525 F. Supp. 2d 174 (D.D.C. 2007) ................................................................................... 10

*Phang v. Blanche*,
  --- F. Supp. 3d ----, 2026 WL 1831251 (D.D.C. June 25, 2026).......................................... 8

*Santa Monica Food Not Bombs v. City of Santa Monica*,
  450 F.3d 1022 (9th Cir. 2006) ......................................................................................11, 12

*Stafford v. Soc. Sec. Admin.*,
  437 F. Supp. 2d 1113 (N.D. Cal. 2006)............................................................................ 2, 7

*Stossel v. Meta Platforms, Inc.*,
  634 F. Supp. 3d 743 (N.D. Cal. 2022), *appeal dismissed*,
  2023 WL 3434064 (9th Cir. Mar. 1, 2023) ...................................................................... 5, 6

*Wilborn v. Dep't of Health and Human Servs.*,
  49 F.3d 597 (9th Cir. 1995) ............................................................................................ 6, 12

**UNITED STATES CONSTITUTION**

U.S. Const. amend. I ........................................................................................................... 12

**STATUTES**

5 U.S.C. § 552a .............................................................................................................. 4, 5, 6

EFTA,
  Pub. L. No. 119-38, 139 Stat. 656 (2025) ..................................................................... 1, 8, 9

**RULES**

Fed. R. Civ. P. 12............................................................................................................... 1

**OTHER AUTHORITIES**

171 Cong. Rec. H4726 (daily ed. Nov. 18, 2025)............................................................ 1, 9

Jessica Rawnsley, *Thousands of Epstein documents taken down after victims identified*,
  BBC, (Feb. 4, 2026),
  https://www.bbc.com/news/articles/cn0k65pnxjxo ...................................................... 11

Letter to Congress, Epstein Files Transparency Act - Production of Department Materials,
  U.S. Dep't of Justice (Jan. 30, 2026), https://www.justice.gov/opa/media/1426091/dl............. 8

Memorandum, Attorney Review Protocol for Epstein Files,
  U.S. Dep't. of Justice (Jan. 4, 2026),
  https://www.justice.gov/media/1426281/dl?inline .......................................................7, 8, 11

**NOTICE OF MOTION AND FORTHCOMING HEARING – LCVR 7-2(b)(2)**

PLEASE TAKE NOTICE THAT, on November 17, 2026, at 10:00 a.m. in Courtroom 2 of the U.S. District Court for the Northern District of California, San Jose Division, at 280 South 1st Street, San Jose, CA, Defendant United States of America will and hereby does move for an order dismissing Plaintiffs' Complaint as to the claims against the United States. This motion is based on this notice of motion, the below memorandum of points and authorities, all pleadings and papers on file in this action, and such additional facts and arguments as may be presented at or before the time of hearing.

**REQUESTED RELIEF – LCVR 7-2(b)(3)**

The United States respectfully requests this Court dismiss Count I of Plaintiffs' Amended Complaint, ECF No. 16, as it fails to state a claim upon which relief can be granted under Federal Rule of Civil Procedure 12(b)(6).

**STATEMENT OF THE ISSUES TO BE DECIDED – LCVR 7-4(a)(3)**

1. Whether Plaintiffs fail to state a claim upon which relief can be granted under Federal Rule of Civil Procedure 12(b)(6) because they do not plausibly allege an "intentional or willful" violation of the Privacy Act.

**INTRODUCTION**

Congress imposed a herculean task upon the U.S. Department of Justice when it enacted the Epstein Files Transparency Act ("EFTA"), calling for "complete truth" and the "maximum possible level of transparency when it comes to the heinous crimes of Jeffrey Epstein." 171 Cong. Rec. H4726-27 (daily ed. Nov. 18, 2025). Accordingly, EFTA required the Justice Department to review and publicly release millions of pages of unclassified records, documents, communications, and investigative materials related to Jeffrey Epstein to a searchable database within thirty days. *See* EFTA, Pub. L. No. 119-38, § 2(a), 139 Stat. 656, 656 (2025). Such an undertaking was unprecedented. In its efforts to comply with EFTA in such a compressed timeframe, the Justice Department admittedly made some mistakes, including inadvertent disclosures of victim information. But, as an indication of its intent to ensure victim privacy and promptly correct any

1

errors, the Department set up a website through which victims could confidentially notify the Department of information that required additional redaction.

Plaintiffs—self-identified Epstein survivors—nevertheless claim that the Justice Department intentionally or willfully disclosed their personally identifying information in the "Epstein Library," the searchable database that EFTA mandated, in violation of the Privacy Act. Am. Compl. ¶¶ 15-21, ECF No. 16. But Plaintiffs allege no facts that could lead a reasonable trier of fact to conclude that any disclosures rise to the demanding standard of intentionality. Indeed, the allegations on which Plaintiffs rely either have no bearing on the Department's state of mind or contradict their theory of willfulness entirely. Plaintiffs, for example, point to the speed at which the Justice Department published EFTA material; public statements from Justice Department officials supporting "maximum transparency;" and errors the Justice Department made along the way. But none of these allegations plausibly constitute facts sufficient to clear the "high hurdle" that the intentional or willful standard imposes. *See Stafford v. Soc. Sec. Admin.*, 437 F. Supp. 2d 1113, 1121 (N.D. Cal. 2006) (describing intentional or willful conduct as more extreme "than gross negligence"). Because Plaintiffs fail to articulate any well-pleaded facts on an essential element of the Privacy Act, they fail to state a claim upon which relief can be granted and their complaint against the Department should be dismissed.

**BACKGROUND**

**I.      Legal Background.**

**a.   The Epstein Files Transparency Act.**

On November 19, 2025, Congress enacted EFTA. Pub. L. No. 119-38, 139 Stat. 656. EFTA directed the Attorney General to make publicly available certain unclassified records, documents, communications, and investigative materials related to Jeffrey Epstein in the Department's possession. *See id.* § 2(a), 139 Stat. at 656. The Attorney General had the discretion to withhold or redact certain categories of information, *id.* § 2(c)(1)(A)-(E), 139 Stat. at 657, subject to written justification, *id*. § 2(c)(2), 139 Stat. at 657.

Section 2(a) of the Act required the Attorney General, within 30 days after enactment, and subject to the prohibited and permitted grounds for withholding, to "make publicly available in a searchable and downloadable format all unclassified records, documents, communications, and investigative materials in the possession of the Department of Justice, including the Federal Bureau of Investigation and United States Attorneys' Offices, that relate to[:]"

(1) Jeffrey Epstein including all investigations, prosecutions, or custodial matters.
(2) Ghislaine Maxwell.
(3) Flight logs or travel records, including but not limited to manifests, itineraries, pilot records, and customs or immigration documentation, for any aircraft, vessel, or vehicle owned, operated, or used by Jeffrey Epstein or any related entity.
(4) Individuals, including government officials, named or referenced in connection with Epstein's criminal activities, civil settlements, immunity or plea agreements, or investigatory proceedings.
(5) Entities (corporate, nonprofit, academic, or governmental) with known or alleged ties to Epstein's trafficking or financial networks.
(6) Any immunity deals, non-prosecution agreements, plea bargains, or sealed settlements involving Epstein or his associates.
(7) Internal DOJ communications, including emails, memos, meeting notes, concerning decisions to charge, not charge, investigate, or decline to investigate Epstein or his associates.
(8) All communications, memoranda, directives, logs, or metadata concerning the destruction, deletion, alteration, misplacement, or concealment of documents, recordings, or electronic data related to Epstein, his associates, his detention and death, or any investigative files.
(9) Documentation of Epstein's detention or death, including incident reports, witness interviews, medical examiner files, autopsy reports, and written records detailing the circumstances and cause of death.

*Id.* § 2(a)(1)-(9), 139 Stat. at 656-57.

Section 2(b), entitled "Prohibited Grounds for Withholding" provided that "[n]o record shall be withheld, delayed or redacted on the basis of embarrassment, reputational harm, or political sensitivity, including to any government official, public figure, or foreign dignitary." *Id.* § 2(b)(1), 139 Stat. at 657. Whereas Section 2(c), entitled "Permitted Withholdings" identified five categories of records for which the Attorney General "may withhold or redact the segregable portions," and required all redactions to "be accompanied by a written justification published in the Federal Register and submitted to Congress." *Id.* § 2(c)(1), (2), 139 Stat. at 657. The five categories of permitted withholdings were records that:

3

(A) contain personally identifiable information of victims or victims' personal and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy;
(B) depict or contain child sexual abuse materials (CSAM) as defined under 18 U.S.C. [§] 2256 and prohibited under 18 U.S.C. [§§] 2252–2252A;
(C) would jeopardize an active federal investigation or ongoing prosecution, provided that such withholding is narrowly tailored and temporary;
(D) depict or contain images of death, physical abuse, or injury of any person; or
(E) contain information specifically authorized under criteria established by an Executive order to be kept secret in the interest of national defense or foreign policy and are in fact properly classified pursuant to such Executive order.

*Id.* § 2(c)(1)(A)-(E), 139 Stat. at 657.

**b. The Privacy Act.**

The Privacy Act establishes "a comprehensive and detailed set of requirements" for federal agencies that maintain systems of records containing individuals' personal information. *Fed. Aviation Admin. v. Cooper*, 566 U.S. 284, 287 (2012). The Privacy Act thus regulates the collection, maintenance, use, and dissemination of an individual's personal information by federal government agencies. *See* 5 U.S.C. § 552a(e). The Privacy Act applies only to agencies, which Congress defined as "any executive department, military department, Government corporation, Government controlled corporation, or other establishment in the executive branch of the [federal] Government (including the Executive Office of the President), or any independent regulatory agency." 5 U.S.C. § 552a(a)(1) (incorporating 5 U.S.C. § 552(f)(1), which in turn incorporates 5 U.S.C. § 551(1)).

The form of civil relief authorized by the Privacy Act depends on the particular violation alleged. As relevant here, the Privacy Act authorizes courts to award monetary damages when the agency fails "to comply with any other provision of this section, or any rule promulgated thereunder, in such a way as to have an adverse effect on an individual." *Id.* § 552a(g)(1)(D), (g)(4). Section 552a(g)(1)(D) is thus described as the Privacy Act's "catchall" provision. *Dick v. Holder*, 67 F. Supp. 3d 167, 176–77 (D.D.C. 2014) (quoting *Cacho v. Chertoff*, No. 06-cv-00292, 2006 WL 3422548, at *4 (D.D.C. Nov. 28, 2006)).

To state a claim for monetary damages under either of these two provisions in the Privacy Act, a plaintiff must make a heightened showing at the pleading stage. The plaintiff must plead

4

facts showing "that the agency acted in a manner which was intentional or willful" and that, as a result, the plaintiff suffered "actual damages." 5 U.S.C. § 552a(g)(4). "[A]ctual damages" under the Privacy Act "are limited to actual pecuniary loss, which must be specially pleaded and proved." *Cooper*, 566 U.S. at 295-96, 299. The federal government retains sovereign immunity from liability for all other kinds of injury. *Id.* at 304.

## II.    Plaintiffs' Lawsuit.

After President Trump signed EFTA into law, the Justice Department began reviewing, redacting, and releasing Epstein-related documents. Plaintiffs filed this suit on March 26, 2026, seeking monetary damages under the Privacy Act. *See* Compl., ECF No. 1. Plaintiffs allege the Justice Department improperly disclosed their personal information when it published investigation files relating to Jeffrey Epstein on its "'Epstein Library' website." *See* Am. Compl. ¶¶ 15-21; *see also id.* ¶ 29 (describing release of documents on "publicly accessible DOJ website"). Plaintiffs argue that the speed at which the United States released the relevant files, *id.* ¶ 43, alongside statements made by Justice Department officials calling for "maximum transparency," *id.* ¶¶ 44, 46, 48, 50, as well as the inadvertent disclosures that Plaintiffs acknowledge were remediated, *id.* ¶ 49, demonstrate the "intentional or willful" mens rea required under the Privacy Act, *id.* ¶ 53. Plaintiffs also allege that the Justice Department established a public email, through which members of the public, including victims, could request that the Government remove inappropriately released documents. *Id.* ¶ 49. Plaintiffs allege they had contacted the Justice Department through this email to remove their information from the Epstein Library but received no response. *Id.* ¶ 41.

## LEGAL STANDARD

A motion to dismiss for failure to state a claim under Rule 12(b)(6) "tests the legal sufficiency of a claim." *Stossel v. Meta Platforms, Inc.*, 634 F. Supp. 3d 743, 754 (N.D. Cal. 2022) (quoting *Conservation Force v. Salazar*, 646 F.3d 1240, 1241-42 (9th Cir. 2011)), *appeal dismissed*, 2023 WL 3434064 (9th Cir. Mar. 1, 2023). "In order to proceed to discovery, a plaintiff must 'state a claim to relief that is plausible on its face.'" *Hikma Pharms. USA Inc. v. Amarin*

*Pharma, Inc.*, 146 S. Ct. 1391, 1399 (2026) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "If the complaint 'pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "Instead, to nudge a claim 'across the line from conceivable to plausible,' a plaintiff must plead facts that, if true, 'allo[w] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged,' and to rule out 'obvious alternative explanation[s]' for the defendant's conduct." *Id.* (quoting *Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 567). "[D]ocuments appended to the complaint, incorporated by reference in the complaint, or which properly are the subject of judicial notice may be considered along with the complaint when deciding a Rule 12(b)(6) motion." *Stossel*, 634 F. Supp. 3d at 754 (citing *Khoja v. Orexigen Therapeutics*, 899 F.3d 988, 998 (9th Cir. 2018)).

## ARGUMENT

### I.        Plaintiffs fail to plausibly plead a claim under the Privacy Act.

The Privacy Act creates a narrow waiver of sovereign immunity. *See* 5 U.S.C. § 552a(g)(4)(A). Plaintiffs must allege an "intentional or willful" disclosure that results in "actual damages." *Id.* Each alleged violation of the Privacy Act must be independently supported as to each plaintiff. *See Kelley v. Fed. Bureau of Investigation*, 67 F. Supp. 3d 240, 247 (D.D.C. 2014) (dismissing certain counts under the Privacy Act as insufficiently pleaded). Plaintiffs have failed to do so here.

### a.    Plaintiffs fail to plausibly allege an "intentional or willful" disclosure under the Privacy Act.

Intentional or willful disclosure requires the government to engage in conduct more extreme "than gross negligence." *Wilborn v. Dep't of Health and Human Servs.*, 49 F.3d 597, 602 (9th Cir. 1995). An agency meets this standard either by "committing [an] act without grounds for believing it to be lawful, or flagrantly disregarding others' rights[.]" *Covert v. Harrington*, 876 F.2d 751, 756-57 (9th Cir. 1989) (quoting *Albright v. United States*, 732 F.2d 181, 189 (D.C. Cir. 1984)). Intentional or willful disclosure "contemplate[s] action so patently egregious and unlawful

6

that anyone undertaking the conduct should have known it unlawful[.]" *Andrews v. Veterans Admin. of U.S.*, 838 F.2d 418, 425 (10th Cir. 1988) (citation omitted) (cited authoritatively in Pls.' Opp'n to Mot. to Stay Discovery, ECF No. 50). Plaintiffs do not clear this "high hurdle" in this case. *See Stafford*, 437 F. Supp. 2d at 1121. The "facts" pleaded in the Complaint are facially insufficient to state a claim for an intentional or willful violation of victims' privacy.

Plaintiffs point to three categories of purported facts as evidence of the Justice Department's "intentional or willful" disclosure of their personal information: (1) circumstantial facts related to the speed at which the Justice Department released EFTA documents, (2) statements from Justice Department officials supporting "maximum transparency" or similar language, and (3) errors and inconsistencies in released EFTA documents. *See* Am. Compl. ¶¶ 44-53. But none of Plaintiffs' proffered evidence rises to intentionality and willfulness nor satisfies the minimum pleading requirement for stating a claim under the Privacy Act.

*The Justice Department's speed*. Plaintiffs claim that the Justice Department "prioritized volume and speed of public disclosure over the safety and privacy of Epstein victims." Am. Compl. ¶ 47; *see id.* ¶ 44. But the pace of the production—established by statute—has no bearing on the Department's state of mind. *First*, Plaintiffs' reasoning offers a false choice. The Justice Department prioritized victim privacy alongside other statutory considerations like volume and speed. The Court can take judicial notice of publicly available government documents in which the Justice Department circulated guidance to redacting attorneys, emphasizing, "[i]t is of paramount importance to the Department that this review is thorough and *that victim information is properly protected*." Memorandum, Attorney Review Protocol for Epstein Files, U.S. Dep't. of Justice (Jan. 4, 2026), https://www.justice.gov/media/1426281/dl?inline (emphasis added).[1] This redaction guidance provided detailed instructions to address victim information of all types, and in underlined text mandated, "[v]ictim names, personal identifying information, private health information, and other third-party names or identifying details that, if disclosed, would reveal the

---

[1] Courts may take judicial notice of government documents. *DeHoog v. Anheuser-Busch InBev SA/NV*, 899 F.3d 758, 762 n.5 (9th Cir. 2018).

identity of the victim must be redacted. This pertains to all victims, even victims who later became perpetrators." *Id.* at 5 (emphasis in original). The guidance likewise presented sample redactions, provided instructions on their digital application, and urged a "careful review of the entire document[.]" *Id.* at 6. Some courts are even now examining whether these redactions were overinclusive rather than underinclusive. *See Phang v. Blanche*, --- F. Supp. 3d ----, 2026 WL 1831251 (D.D.C. June 25, 2026). *Second*, the Justice Department was complying with its congressional obligations under EFTA, which required total disclosure of millions of pages of Epstein-related documents within an extremely compressed timeframe. *See* Pub. L. No. 119-38, § 2(a), 139 Stat. at 656; *Phang*, 2026 WL 1831251 at *1 (finding this "unprecedented" disclosure "required extremely timely compliance"). Indeed, Congress mandated both the volume and speed of the Justice Department's EFTA production. The Justice Department's efforts to mitigate the publication of victim information, alongside its effectuation of express congressional intent, directly contradict Plaintiffs' claim of a "release now, retract later" approach to EFTA. Am. Compl. ¶ 47. In short, the speed with which the Department proceeded was mandated by Congress and does not rationally support a claim of willful disclosure of victim information.

Statements from Justice Department officials. Plaintiffs point to three statements from Justice Department officials in support of "maximum transparency" or similar principles, but none of these statements suggests a Justice Department official intended to expose victim information. Former Attorney General Pamela J. Bondi said the Justice Department was "following through on President Trump's commitment to transparency and lifting the veil on the disgusting actions of Jeffrey Epstein and his co-conspirators." Press Release, Attorney General Pamela Bondi Releases First Phase of Declassified Epstein Files, U.S. Dep't of Justice (Feb. 27, 2025); *see* Am. Compl. ¶ 44. FBI Director Kash Patel said, "There will be no cover-ups, no missing documents, and no stone left unturned . . . . If records have been hidden, we will uncover them. And we will bring everything we find to the DOJ to be fully assessed and transparently disseminated to the American people as it should be." Press Release, Attorney General Pamela Bondi Releases First Phase of Declassified Epstein Files, U.S. Dep't of Justice (Feb. 27, 2025); *see* Am. Compl. ¶¶ 44, 48, 50. And in a January

8

30, 2026 letter to Congress, then-Deputy Attorney General Todd Blanche said the Justice Department was "releasing . . . over 3 million responsive pages, including more than 2,000 videos and 180,000 images" and that "[t]he Department erred on the side of over-collecting materials from various sources to best ensure maximum transparency and compliance with the Act." Letter to Congress, Epstein Files Transparency Act - Production of Department Materials, U.S. Dep't of Justice (Jan. 30, 2026) https://www.justice.gov/opa/media/1426091/dl; *see* Am. Compl. ¶ 46.

Critically, none of these statements suggests that the Justice Department intentionally published victim information in "flagrant[] disregard[]" of victims' rights. *See Covert*, 876 F.2d at 757. Nor can a reasonable trier of fact infer that the Justice Department intentionally disclosed victim information from officials' statements supporting maximum transparency. *See Cruz v. Bondi*, 146 F.4th 730, 739 (9th Cir. 2025) ("under the presumption of regularity, we presume that the agency acted properly and according to law[.]"); *Angov v. Lynch*, 788 F.3d 893, 905 (9th Cir. 2015) ("The presumption of regularity has been applied far and wide to many functions performed by government officials."). Rather, these statements represented the expectations and principles Congress enshrined in EFTA. *See* Pub. L. No. 119-38, § 2(a), 139 Stat. at 656. Members of Congress made practically identical statements, calling for "complete truth," 171 Cong. Rec. H4726 (daily ed. Nov. 18, 2025) (statement of Rep. Raskin), "full transparency," *id.* H4727 (statements of Rep. Comer & Rep. Roy), and the "maximum possible level of transparency when it comes to the heinous crimes of Jeffrey Epstein[,]" *id.* (statement of Rep. Kiley).[2] None of the statements that Plaintiffs cite calls for or directs the Justice Department to intentionally disclose victim information—just as Congress did not call for or direct the intentional disclosure of victim information when its members used congruent language. Nor do these statements provide even indirect support for a claim of intentional or willful disclosure. It is entirely consistent to be both transparent in exposing Epstein's crimes and protective of victim privacy. Support for the former in no way implies disdain for the latter.

---

[2] "In general, courts may take judicial notice of publicly available congressional records, including transcripts of congressional hearings." *Lopez v. Bank of Am., N.A.*, 505 F. Supp. 3d 961, 970 (N.D. Cal. 2020) (collecting cases).

9

*Redaction errors and inconsistencies*. Plaintiffs finally point to alleged errors in the production of EFTA documents. But such errors, despite the Department's best efforts, are hardly surprising. Congress mandated an unprecedented review of sensitive documents in an impossible-to-execute time frame. Plaintiffs allege that some redactions were inconsistent, Am. Compl. ¶ 45(a), (e), that the Department relied on redactions made by other government agencies or third parties, *id.* ¶ 45(b), that some redactions were not made with permanent black boxes, *id.* ¶ 45(c), that some documents did not have their metadata cleared, *id.* ¶ 45(d), that some foreign-language documents were not properly reviewed by Justice Department technology, *id.* ¶ 45(f), that the FBI overlooked some responsive documents housed in its New York field office, *id.* ¶ 45(g), that the Justice Department did not immediately remove some victim information, *id.* ¶ 41, and that the federal government has not demanded codefendants Google and xAI remove inadvertently disclosed victim information from their systems, *id.* ¶ 42.

But inconsistent redactions, improperly applied redactions in either text or metadata, and insufficiently reviewed documents due to reliance on preexisting redactions or limited technology, do not establish willful intent to flagrantly violate privacy rights. Rather, they suggest inadvertent errors or, at most, negligence. But even negligent conduct fails to state a claim under the Privacy Act. *Mulhern v. Gates*, 525 F. Supp. 2d 174, 185 (D.D.C. 2007) (finding inadvertent conduct, without a specific showing of intent, is insufficient to establish "intentional or willful" disclosure); *Armstrong v. U.S. Bureau of Prisons*, 976 F. Supp. 17 (D.D.C. 1997), *aff'd sub nom. Armstrong v. Fed. Bureau of Prisons*, No. 97-5208, 1998 WL 65543 (D.C. Cir. Jan. 30, 1998) ("intentional or willful conduct under § 552a(g)(4) refers only to the intentional or willful failure of the agency to abide by the Act, and not to all voluntary actions which might otherwise inadvertently contravene one of the Act's strictures." (citation omitted)). And based on the undisputed allegations of the complaint, the Department's conduct evidenced the opposite of willfulness. First, the Justice Department took steps to mitigate mistakes before they occurred. In its redaction guidance, the Justice Department specifically laid out the steps required to properly redact documents and urged redactors to conduct a "careful review" of each document because victims' privacy was at stake.

Memorandum, Attorney Review Protocol for Epstein Files, U.S. Dep't. of Justice (Jan. 4, 2026), https://www.justice.gov/media/1426281/dl?inline. Deviations from this guidance would be the result of unintentional oversights, not concerted or willful action. Second, once it learned mistakes had occurred, the Government took immediate steps to remediate inadvertent disclosures by creating a unique email address that victims and members of the public could contact to identify and request the removal of victim information. *See* Am. Compl. ¶¶ 48-49. The Government removed numerous documents from the Epstein Library after becoming aware of victims' information that was inadvertently left unredacted. *See id.* ¶ 40; *see* Jessica Rawnsley, *Thousands of Epstein documents taken down after victims identified*, BBC, (Feb. 4, 2026) https://www.bbc.com/news/articles/cn0k65pnxjxo.

As for the FBI's late discovery of responsive documents in its New York field office, Plaintiffs are unable to draw any meaningful connection between this event and the redaction process, and it is implausible to connect this event with any disclosure of victim information. Thus, the late discovery is not a fact from which a reasonable trier of fact could find intentional or willful disclosure.

Plaintiffs also claim the Justice Department failed to remove their personally identifying information after they notified the Department of its presence in published Epstein Library documents. This, too, was an error and must be viewed contextually. The Department previously removed thousands of documents that contained victim information and, more recently, removed Plaintiffs' information from the Epstein Library after Plaintiffs transmitted their identities and requested redactions to undersigned counsel. The Government's continued remediation of inadvertent victim disclosure, alongside its redaction guidance, demonstrates its intent *not* to disclose victim information—it cannot support a claim for intentional or willful disclosure.

Similarly, Plaintiffs claim the Justice Department has not demanded that codefendants Google and xAI remove victim information from their systems. First, Plaintiffs seek unconstitutional remediation: the First Amendment precludes the Government from restricting speech based on its content. *Santa Monica Food Not Bombs v. City of Santa Monica*, 450 F.3d

11

1022, 1036-37 (9th Cir. 2006); *see* U.S. Const. amend. I. Accordingly, it would be improper, if not illegal, to coerce private speech or the removal of speech based on its content. Second, as a matter of law, post-hoc third-party conduct cannot bear upon the mens rea of an actor's conduct while he was acting.

Ultimately, Plaintiffs fail to plausibly allege conduct more extreme "than gross negligence" *Wilborn*, 49 F.3d at 602, that was "commit[ed] . . . without grounds for believing it to be lawful" or in "flagrant[] disregard[ of] others' rights[,]" *Covert*, 876 F.2d at 757. Instead, they point to the "volume and speed" of the EFTA production—both of which Congress mandated—as well as statements from Justice Department officials calling for the same degree of transparency as members of Congress, and a smattering of inadvertent disclosures and redaction inconsistencies. None of these things—whether viewed independently or collectively—plausibly demonstrates that Justice Department officials, knowing it to be unlawful, deliberately published victim information. Indeed, available evidence counsels otherwise, as the Justice Department took both preventative and remedial steps to limit the release of victim information. Accordingly, Plaintiffs fail to state a plausible claim for relief under the Privacy Act and their Complaint must be dismissed.

## CONCLUSION

For the forgoing reasons, this Court should dismiss Count I of Plaintiffs' Complaint.

Dated: August 7, 2026

Refiled due to error: August 10, 2026

Respectfully submitted,

BRETT SHUMATE
Assistant Attorney General
Civil Division

ELIZABETH SHAPIRO
Deputy Director
Federal Programs Branch

12

*/s/ Jordan A. Hulseberg*
JORDAN A. HULSEBERG
D.C. Bar No. 90033542
Trial Attorney
United States Department of Justice
Civil Division,
Federal Programs Branch
1100 L Street NW
Washington, DC 20005

Phone: (202) 598-3856
Fax: (202) 616-8470
Email: jordan.a.hulseberg2@usdoj.gov

*Counsel for United States*

13