Jordan A. Hulseberg
Jordan.a.hulseberg2@usdoj.gov
**U.S. Department of Justice**
**Civil Division, Federal Programs Branch**
1100 L St. NW
Washington, DC 20005
Telephone: (202) 598-3856
*Attorney for United States*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

JANE DOE 1, JANE DOE 2, JANE DOE 3, JANE DOE 4, and JANE DOE 5, individually and on behalf of others similarly situated,

Plaintiffs,

v.

UNITED STATES OF AMERICA, GOOGLE LLC, and X.AI Corp.,

Defendants.

Case No. 5:26-cv-02624-VKD

**DEFENDANT UNITED STATES' REPLY IN SUPPORT OF MOTION TO DISMISS**

Judge: Hon. Virginia K. DeMarchi
Courtroom 2, 5th Floor
November 17, 2026, at 10 a.m.

## REPLY MEMORANDUM IN SUPPORT OF UNITED STATES' MOTION TO DISMISS

The Privacy Act creates a narrow waiver of sovereign immunity. *See* 5 U.S.C. § 552a(g)(4)(A). Plaintiffs must allege an "intentional or willful" disclosure that results in "actual damages." *Id.* Each alleged violation of the Privacy Act must be independently supported as to each plaintiff. *See Kelley v. FBI*, 67 F. Supp. 3d 240, 247 (D.D.C. 2014) (dismissing certain counts under the Privacy Act as insufficiently pleaded). Plaintiffs and the Government (collectively, "the Parties") do not dispute the relevant operative statute or that the "intentional or willful" standard applies here. Rather, the central legal dispute in the Parties' briefing concerns the meaning of such an "intentional or willful" disclosure under the Privacy Act, *see* 5 U.S.C. § 552a(g)(4)(A), and whether the inadvertent disclosures and inconsistencies to which Plaintiffs cite, compared to the mitigative and remedial steps the Government took, clears this "high

hurdle[,]" *Stafford v. Soc. Sec. Admin.*, 437 F. Supp. 2d 1113, 1121 (N.D. Cal. 2006). The plain answer is "no."

**I. Defining the "intentional or willful" standard.**

The words "intentional" and "willful" in subsection (g)(4) are "*terms of art*." *White v. OPM*, 840 F.2d 85, 87 (D.C. Cir. 1988) (per curiam) (emphasis added). Different courts in different circuits have described the standard in different ways, but a harmonious reading of courts' interpretations of the terms, alongside legislative history, generates a standard requiring one of two showings. First, a plaintiff may show that an agency specifically intended to violate the Privacy Act. Second, a plaintiff may show that an agency's conduct would so foreseeably violate the Privacy Act that the agency's specific intent can be inferred. Plaintiffs fail to plausibly allege either showing, and their claims against the Government must therefore be dismissed.

In the Ninth Circuit, "intentional or willful" conduct requires the government to engage in conduct more extreme "than gross negligence." *Wilborn v. Dep't of Health and Human Servs.*, 49 F.3d 597, 602 (9th Cir. 1995). An agency meets this standard either by "committing [an] act without grounds for believing it to be lawful, or flagrantly disregarding others' rights[.]" *Covert v. Harrington*, 876 F.2d 751, 756-57 (9th Cir. 1989) (quoting *Albright v. United States*, 732 F.2d 181, 189 (D.C. Cir. 1984)). This standard makes sense given that "gross negligence" is a "point[] on a continuum of probability[,]" in which tortious conduct's consequences are at the cusp of being so predictable that they could be considered intentional, without having crossed that threshold. *Royal Ins. Co. of Am. v. S.W. Marine*, 194 F.3d 1009, 1015 (9th Cir. 1999); *Vision Air Flight Serv., Inc. v. M/V Natl. Pride*, 155 F.3d 1165, 1176 n.13 (9th Cir. 1998); *see* Restatement (Second) of Torts § 8A, cmt. b (1965).[1] Thus, something "greater" than gross negligence, would necessarily be *intentional* conduct or conduct with consequences so foreseeable that it might as

[1] In both *Royal Ins. Co. of Am.* and *Vision Air Flight Serv., Inc.*, the Ninth Circuit seems to use the terms "recklessness" and "gross negligence" interchangeably. *Compare* 194 F.3d 1009, 1015 ("Case law from this circuit indicates "gross negligence" is simply a "point[ ] on a continuum of probability") *with* 155 F.3d 1165, 1176 n.13 ("The distinctions between negligence, recklessness and intentionality may be understood as points on a continuum of probability"). This usage cuts in favor of the argument below, *see infra* at 4, that there is in fact no daylight between Ninth Circuit precedent and Tenth Circuit precedent.

well be intentional. *See Royal Ins. Co. of Am.*, 194 F.3d at 1015; *Vision Air Flight Serv., Inc.*, 155 F.3d at 1176 n.13. This "greater 'than gross negligence'" standard is also rooted in the Privacy Act's legislative history, where the standard was first characterized in this way. *See Analysis of House and Senate Compromise Amendments to the Federal Privacy Act*, reprinted in 120 *Cong. Rec.* 40405–06 (1974) (reprinted in Source Book at 862, available at https://www.justice.gov/opcl/media/1093586/dl?inline). At that time, the drafters of the Privacy Act understood gross negligence to be "[o]n a continuum between negligence and the very high standard of willful, arbitrary, or capricious conduct," *id.*, in line with the Second Restatement of Torts, which was contemporaneously available, Restatement (Second) of Torts § 8A, cmt. b (1965). The D.C. Circuit, which regularly handles Privacy Act claims under section 552a(g)(4)(A), has an identical standard to the Ninth. *See*, *e.g.*, *Laningham v. U.S. Navy*, 813 F.2d 1236, 1242 (D.C. Cir. 1987) (per curiam)); *Waters v. Thornburgh*, 888 F.2d 870, 875 (D.C. Cir. 1989); *Maydak v. United States*, 630 F.3d 166, 182 (D.C. Cir. 2010); *Tijerina v. Walters*, 821 F.2d 789, 799 (D.C. Cir. 1987). And because this case arises in the Ninth Circuit, that is the standard Plaintiffs' allegations must meet.

Rather than deal in Ninth Circuit precedent, Plaintiffs turn to the Tenth, Pls.' Opp'n to Mot. to Dismiss at 6 ("MTD Opp'n"), ECF No. 69, where the court has described the relevant standard as including "at the very least, reckless behavior"[2] that "contemplate[s] action so patently egregious and unlawful that anyone undertaking the conduct should have known it unlawful[.]" *Andrews v. Veterans Admin. of U.S.*, 838 F.2d 418, 425 (10th Cir. 1988) (citation omitted). Even though this standard is not controlling, and even if the Court were to consider it, the Tenth Circuit's standard still requires some showing of intent. Indeed, in the Tenth Circuit the definition of "[recklessness] differs from the non-intentional torts of negligence or gross negligence because, in reckless conduct, the defendant recognizes the unreasonable risk and *actually intends* to expose the plaintiff to such risks without regard to the consequences to the

---

[2] The Tenth Circuit has also concluded that potentially "reckless" conduct may not amount to an "intentional or willful" disclosure under the Privacy Act. *See Luster v. Vilsack*, 667 F.3d 1089, 1098 (10th Cir. 2011).

plaintiff." *Uhlrig v. Harder*, 64 F.3d 567, 573 n.8 (10th Cir. 1995); *Valdez v. Roybal*, 186 F. Supp. 3d 1197, 1233 n.8 (D.N.M. 2016); *see Woodward v. City of Worland*, 977 F.2d 1392, 1399 n.11 (10th Cir. 1992) ("[R]ecklessness is generally regarded as satisfying the scienter requirement of section 1983 because it requires proof that the defendant focused upon the risk of unconstitutional conduct and deliberately assumed or acquiesced in such risk."); *Archuleta v. McShan*, 897 F.2d 495, 499 (10th Cir. 1990) ("[R]ecklessness includes an element of deliberateness—a *conscious,* acceptance of a known, serious risk.") (emphasis in original) (citation omitted); *Archie v. City of Racine*, 847 F.2d 1211, 1219 (7th Cir. 1988) (en banc) (recklessness contains an intent component because the "reckless disregard of a great risk is a form of knowledge or intent"). This requisite subjective intent is a critical element when applying the "at least, recklessness" standard in the Tenth Circuit.

Given this intent requirement, there is essentially no daylight between the Ninth, Tenth, and D.C. Circuits' interpretations of the "intentional or willful" standard. The cases to which Plaintiffs cite in their Opposition confirm this understanding; each case involves the Government's alleged knowledge of a Privacy Act violation during the offending conduct. *See* MTD Opp'n at 7. Plaintiffs point to *Jackson v. Kennedy*, 2026 WL 172440, at *12 (D.D.C. Jan. 22, 2026), in which the court denied a motion to dismiss because taking the allegations in the complaint as true, "HHS *knew* mistakes were being made in hastily carrying out [federal employee terminations]" but continued to make those mistakes, nonetheless. *Id.* (emphasis added). Similarly, in *Makowski v. United State*s, 27 F. Supp. 3d 901, 913 (N.D. Ill. 2014), "the government *knew* of [an] error and failed to correct it was adequate to plead flagrant disregard of his rights under the Privacy Act." MTD Opp'n at 7. And in *Jones v. Fed. Motor Carrier Safety Admin.*, 2025 WL 1425378 at *5 (S.D. Ind. May 16, 2025), that the Government *knowingly* failed to remove a record violation was sufficient to establish an intentional or willful violation. The underlying conduct in each of these cases was *intentional*. Yet, for the reasons below, Plaintiffs fail to allege any such conduct here.

## II. Defendants' conduct is not an "intentional or willful" violation of the Privacy Act.

Allegations that establish a mere negligent, or even grossly negligent, inadvertent violation of the Privacy Act are insufficient to demonstrate "intentional or willful" conduct. *Maydak v. United States*, 630 F.3d 166, 179 (D.C. Cir. 2010). Here, Plaintiffs fail to plausibly allege conduct more extreme "than gross negligence" *Wilborn*, 49 F.3d at 602, that was "commit[ed] . . . without grounds for believing it to be lawful" or in "flagrant[] disregard[ of] others' rights[,]" *Covert*, 876 F.2d at 757. Instead, they point to the "volume and speed" of the EFTA production—both of which Congress mandated—as well as statements from Justice Department officials calling for the same degree of transparency as members of Congress, and a smattering of inadvertent disclosures and redaction inconsistencies. *See* Am. Compl. ¶¶ 40-49, ECF No. 16. Plaintiffs' Opposition does not attempt to connect these inadvertent disclosures and inconsistencies to any concerted conduct; instead, Plaintiffs simply recite they have "plead[ed] pages of facts," MTD Opp'n at 8, though the Government's Motion to Dismiss addressed each of these insufficient facts one by one, *see* Mot. to Dismiss at 7-11, ECF No. 59. None of these things—whether viewed independently or collectively—plausibly demonstrates that Justice Department officials intentionally published victim information or so foreseeably knew that victim information would be published that it could be considered intentional. *See id*.

Indeed, available evidence counsels the opposite conclusion, as the Justice Department took both preventative and remedial steps to limit the release of victim information: *First*, the Justice Department took steps to mitigate mistakes before they occurred. In its redaction guidance, the Justice Department specifically laid out the steps required to properly redact documents and urged redactors to conduct a "careful review" of each document because victims' privacy was at stake. Memorandum, Attorney Review Protocol for Epstein Files, U.S. Dep't. of Justice (Jan. 4, 2026), https://www.justice.gov/media/1426281/dl?inline. This was an iterative and substantially manual process. Deviations from this guidance would be the result of unintentional oversights, not concerted or willful action, and the promulgation of the guidance demonstrates an attempt to

avoid inaccuracies, not an intentional or willful embrace of any Privacy Act violations. *Cf. Sterling v. United States*, 826 F. Supp. 570, 572 (D.D.C. 1993) (finding intentional and willful standard not met where agency's "efforts both before and after the release of information . . . indicate a sensitivity to the potential harm the release might cause and represent attempts to avert that harm"), *aff'd*, 1994 WL 88894 (D.C. Cir. Mar. 11, 1994); *see Reed v. Dept. of the Navy*, 910 F. Supp. 2d 32 (D.D.C. 2012) (concluding that an agency's "due diligence" prior to releasing a violative disclosure counsels against a finding of intentional or willful conduct).

*Second*, once it learned mistakes had occurred, the Government took immediate steps to remediate inadvertent disclosures by creating a unique email address that victims and members of the public could contact to identify and request the removal of victim information. *See* Am. Compl. ¶¶ 48-49. The Government removed numerous documents from the Epstein Library after becoming aware of victims' information that was inadvertently left unredacted. *See id.* ¶ 40; *see* Jessica Rawnsley, *Thousands of Epstein documents taken down after victims identified*, BBC, (Feb. 4, 2026) https://www.bbc.com/news/articles/cn0k65pnxjxo. These remedial steps further demonstrate a lack of "intentional or willful" violations of the Privacy Act. *See McIntyre v. Fulwood*, 892 F. Supp. 2d 209, 218 (D.D.C. 2012) (finding defendant's actions were not intentional or willful because "[t]he Commission ceased reliance on the erroneous information") (citation omitted); *Colley v. James*, 254 F. Supp. 3d 45, 67 (D.D.C. 2017) (finding no intentional or willful Privacy Act violation because agency had corrected inaccurate information).

The Government has described these inadvertent disclosures as "errors that could be expected[,]" to distinguish the disclosures from Plaintiffs' factually unsupported claims of retributive "doxxing" and "retaliation," which Plaintiffs continue to assert baldly upon "information and belief." MTD Opp'n at 5, 9. It is worth noting that the "information" upon which Plaintiffs formed this "belief" is a statement from a victim who at no point used the term "doxxing." *See* Am. Compl. ¶ 53. These are severe accusations—that the Government acted because it wanted victims to "give up on transparency," *id.*—and they are without a shred of factual support. Indeed, they conflict with Plaintiffs' allegations elsewhere that the Government

acted out of a commitment to transparency. *See, e.g.*, *id.* ¶ 44. Regardless, merely because errors could be expected does not mean the Government knew of those errors prior to their publication and intentionally disclosed Plaintiffs' personal information. Nor were these errors so obvious and foreseeable that they could be considered intentional, particularly when the Justice Department took steps to mitigate and remediate inadvertent disclosures of victim information.

Plaintiffs also argue the Justice Department, which concluded its obligations under the Epstein Files Transparency Act after the law's deadline, should have further delayed its publication of EFTA-responsive materials. MTD Opp'n at 8. But the Justice Department endeavored to be as compliant as possible with the statute's deadline and, given the measures taken to protect victim privacy, the Department should not be faulted for the acts it took to comply with the statute Congress passed.

## III. Conclusion

Based on the foregoing, Plaintiffs fail to state a plausible claim for relief under the Privacy Act and their Complaint must be dismissed.

Dated: October 27, 2026 Respectfully submitted,

BRETT A. SHUMATE
Assistant Attorney General
Civil Division

ELIZABETH J. SHAPIRO
Deputy Director
Federal Programs Branch

*/s/ Jordan A. Hulseberg*
JORDAN A. HULSEBERG
D.C. Bar No. 90033542
Trial Attorney
United States Department of Justice
Civil Division,
Federal Programs Branch
1100 L Street NW
Washington, DC 20005

Phone: (202) 598-3856
Fax: (202) 616-8470
Email: jordan.a.hulseberg2@usdoj.gov

*Counsel for United States*