United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| JANE DOE 1, et al., Plaintiffs, v. UNITED STATES OF AMERICA, et al., Defendants. | Case No. 26-cv-02624-VKD<br>**ORDER DENYING UNITED STATES' MOTION TO DISMISS FIRST AMENDED COMPLAINT**<br>Re: Dkt. No. 59 |

The United States moves pursuant to Rule 12(b)(6) to dismiss plaintiffs' first amended complaint ("FAC").[1] Dkt. Nos. 59, 71.[2] Plaintiffs oppose the motion. Dkt. No. 69. Upon consideration of the moving and responding papers, as well as the oral arguments presented, the Court denies the United States' motion to dismiss.[3]

## I. BACKGROUND

Plaintiffs, who are proceeding under the pseudonyms Jane Doe 1, Jane Doe 2, Jane Doe 3, Jane Doe 4, and Jane Doe 5 (collectively "plaintiffs"), filed this action against the United States,

---

[1] After the parties briefed the present motion, and pursuant to a stipulation and order, on November 13, 2026 plaintiffs filed a second amended complaint. *See* Dkt. Nos. 73, 75, 76. As the second amended complaint does not affect plaintiffs' allegations against the United States, the Court granted the United States' request to hear the present motion to dismiss on November 17, 2026 as originally scheduled, notwithstanding that the motion concerns the now-superseded FAC. Dkt. No. 75.

[2] The Court treats the United States' corrected filing (Dkt. No. 59) as the operative motion and administratively terminates the original filing (Dkt. No. 57).

[3] All parties have expressly consented that all proceedings in this matter may be heard and finally adjudicated by a magistrate judge. 28 U.S.C. § 636(c); Fed. R. Civ. P. 73; Dkt. Nos. 11, 12, 23, 26, 43.

United States District Court
Northern District of California

Google LLC ("Google"), and X.AI Corp. ("X.AI"). Plaintiffs sue for themselves and on behalf of a proposed class of "[a]ll Jeffrey Epstein victims whose private information, including their name, photographic image, telephone number, email address, physical address, or place of residence, was disclosed without their consent in unredacted documents released by the United States between December 2025 and the present." Dkt. No. 16 ¶ 95. Plaintiffs also sue on behalf of an injunctive relief subclass of "[a]ll Class members whose disclosed private information is indexed, cached, hosted, or otherwise made available to the public through any service operated by the United States, Google, or [X.AI]." *Id.* The subclass "seeks injunctive relief under Rules 23(b)(2) only." *Id.* Plaintiffs allege that in "late 2025 and early 2026, the U.S. Department of Justice ('DOJ') outed approximately 100 victims of the convicted sexual predator, publishing their private information and identifying them to the world." *Id.* ¶ 2. Plaintiffs further allege that "[e]ven after the government acknowledged the disclosure violated the rights of the victims and withdrew most of the information, artificial intelligence products like Google's AI Mode and [X.]AI's Grok, continue to republish it, refusing victims' pleas to take it down." *Id.* Plaintiffs' sole claim against the United States is for violation of the Privacy Act of 1974 ("Privacy Act"), 5 U.S.C. § 552a(b) and § 552(g)(1)(D). *Id.* ¶¶ 103-112. Plaintiffs assert several claims under California law and common law against both Google and X.AI for violation of California's Unfair Competition Law (Cal. Bus. & Prof. Code § 17200, *et seq.*), invasion of privacy, negligence, and negligent infliction of emotional distress. *Id.* ¶¶ 113-200. Plaintiffs seek injunctive relief, compensatory damages, statutory damages, punitive damages, reasonable attorneys' fees and costs, as well as pre- and post-judgment interest. *Id.* at 48.[4]

Defendants moved to stay all discovery pending the Court's resolution of their respective motions to dismiss.[5] The Court granted a stay of discovery as to Google and X.AI, but denied stay of discovery as to the United States. Dkt. No. 68.

---

[4] For filed documents, pin citations refer to the page number appearing in the ECF document header.

[5] When plaintiffs filed their second amended complaint, the Court denied as moot Google's and X.AI's joint motion to dismiss the first amended complaint. *See* Dkt. Nos. 75-77.

United States District Court
Northern District of California

The United States now moves to dismiss the Privacy Act claim, on the ground that plaintiffs fail to plausibly allege an "intentional or willful" violation of that statute.

## II. LEGAL STANDARD

A motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6) tests the legal sufficiency of the claims in the complaint. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). Dismissal is appropriate where there is no cognizable legal theory or an absence of sufficient facts alleged to support a cognizable legal theory. *Id*. (citing *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990)). In such a motion, all material allegations in the complaint must be taken as true and construed in the light most favorable to the claimant. *Id.*

A complaint should be dismissed for failure to state a claim if it fails to set forth "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see also* Fed. R. Civ. P. 12(b)(6). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), and "[f]actual allegations must be enough to raise a right to relief above the speculative level," *Twombly*, 550 U.S. at 555 (citations omitted). Moreover, the Court is not required to "'assume the truth of legal conclusions merely because they are cast in the form of factual allegations.'" *Prager Univ. v. Google LLC* ("*Prager I*"), No. 17-cv-06064-LHK, 2018 WL 1471939, at *3 (N.D. Cal. Mar. 26, 2018) (quoting *Fayer v. Vaughn*, 649 F.3d 1061, 1064 (9th Cir. 2011) (per curiam)). Nor does the Court accept allegations that contradict documents attached to the complaint or incorporated by reference, *Gonzalez v. Planned Parenthood of L.A.*, 759 F.3d 1112, 1115 (9th Cir. 2014), or that rest on "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences," *In re Gilead Scis. Sec. Litig*., 536 F.3d 1049, 1055 (9th Cir. 2008).

A court generally may not consider any material beyond the pleadings when ruling on a Rule 12(b)(6) motion. However, documents appended to the complaint, incorporated by reference in the complaint, or which properly are the subject of judicial notice may be considered along with the complaint when deciding a Rule 12(b)(6) motion. *Khoja v. Orexigen Therapeutics*, 899 F.3d 988, 998 (9th Cir. 2018); *see also Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc.*, 896 F.2d

1542, 1555 n.19 (9th Cir. 1990).

## III. DISCUSSION

"The Privacy Act prohibits a federal agency from disclosing a record contained in a system of records pertaining to an individual unless the individual requests the information or consents to the disclosure in writing." *Minshew v. Donley*, 911 F. Supp. 2d 1043, 1069 (D. Nev. 2012) (citing *Lane v. Dep't of Interior*, 523 F.3d 1128, 1140 (9th Cir.2008); 5 U.S.C. § 552a(b)). To state a claim for wrongful disclosure under the Privacy Act, a plaintiff must allege facts showing that (1) the information disclosed is contained in a system of records; (2) the agency improperly disclosed the information; (3) the disclosure had an adverse effect on the plaintiff; (3) the disclosure was willful or intentional; and (4) the plaintiff suffered actual damages. *See* 5 U.S.C. § 552a(b); *Minshew*, 911 F. Supp. 2d at 1069; *Stafford v. Soc. Sec. Admin.*, 437 F. Supp. 2d 1113, 1117-18 (N.D. Cal. 2006). The Privacy Act "provides for damages only where 'the court determines that the agency acted in a manner which was intentional or willful.'" *Covert v. Harrington*, 876 F.2d 751, 756 (9th Cir. 1989) (quoting 5 U.S.C. § 522a(g)(4)(A)) (citation modified).

For the present purpose of resolving the United States' motion to dismiss, only the third element regarding "willful or intentional" disclosure is at issue. Under the Privacy Act, willful or intentional conduct is "only somewhat greater than gross negligence," and "the Privacy Act 'imposes liability only when the agency acts in violation of the Act in a willful or intentional manner, either by committing the act without grounds for believing it to be lawful, or flagrantly disregarding others' rights under the Act.'" *Covert*, 876 F.2d at 756-57 (quoting *Albright v. United States*, 732 F.2d 181, 189 (D.C. Cir. 1984)).

At the outset, the Court observes that the United States' motion to dismiss is directed to all plaintiffs collectively. The United States' motion does not distinguish between and among the plaintiffs with respect to specific arguments regarding the viability of the Privacy Act claim. Accordingly, this order addresses the United States' arguments as they apply to the plaintiffs as a whole.

The United States notes that the disclosures in question were made pursuant to the Epstein

Files Transparency Act ("EFTA"), Pub. L. 119-38, 139 Stat. 656, which required the DOJ to release, within a 30-day period, millions of pages of documents from the DOJ's investigation of Mr. Epstein. Dkt. No. 59 at 5. While acknowledging that DOJ "admittedly made some mistakes, including inadvertent disclosures of victim information," the United States says that in enacting the EFTA, Congress imposed an "unprecedented" and "herculean task" upon the DOJ. Additionally, the United States says that the DOJ made remedial efforts by, for example, establishing "a website through which victims could confidentially notify the [DOJ] of information that required additional redaction." *Id*. at 5-6. In these circumstances, the United States argues that plaintiffs' allegations cannot, as a matter of law, meet the "'high hurdle'" for the requisite willful or intentional conduct. *Id*. at 6 (quoting *Stafford*, 437 F. Supp. 3d at 1121). The United States requests that the Court take judicial notice of materials, including a February 27, 2025 press release, a publicly available January 4, 2026 DOJ memorandum, and a January 30, 2026 letter to Congress from then-Deputy Attorney General Todd Blanche. *See* Dkt. No. 59 at 11, 12, 13. At the motion hearing, the United States asserted that the materials are incorporated by reference in the FAC and properly may be considered on that basis. To the extent the United States seeks the Court's consideration of those materials, not only to have the Court accept the truth of the matters asserted in those excerpts, but for the purpose of having the Court draw inferences and conclusions about disputed matters—e.g., that under the particular circumstances presented, the DOJ did not act willfully or intentionally, that the review protocols were adequate, or that DOJ complied with its legal obligations in reviewing and releasing the subject documents—such use of extrinsic materials at the pleading stage is inappropriate. *See Khoja*, 899 F.3d at 1000 (improper to judicially notice materials when the substance of the materials "is subject to varying interpretations, and there is a reasonable dispute as to what [the material] establishes.") (citation modified); *see id*. at 1003 ("[I]t is improper to assume the truth of an incorporated document if such assumptions only serve to dispute facts stated in a well-pleaded complaint. This admonition is, of course, consistent with the prohibition against resolving factual disputes at the pleading stage.") Accordingly, United States' request for the Court's consideration of those materials by judicial notice or under the incorporation-by-reference doctrine, is denied.

Plaintiffs maintain that the FAC alleges sufficient facts plausibly supporting willful or intentional conduct, including allegations that the DOJ (1) prioritized "maximum transparency" and the rapid release of information over victims' privacy interests; (2) refused victims' requests to remove the subject information, or did not respond to such requests; and (3) acted out of retaliatory motives and released files as "a punitive response to victims' public advocacy for transparency, effectively 'doxxing' victims who spoke out by exposing their identities and contact information." *See* Dkt. No. 16 ¶¶ 44, 46-48, 51-53; Dkt. No. 69 at 13-14.

The question of whether an agency has acted without grounds for believing the act to be lawful or has acted in flagrant disregard of others' rights under the Privacy Act depends on the context of the disclosure in each case and is a fact-intensive inquiry. *See, e.g., Maydak v. United States*, 363 F.3d 512, 521 (D.C. Cir. 2004) (denying summary judgment "[b]ecause this issue [of whether agency acted willfully or intentionally] is a question of fact entirely undeveloped in the record"); *Laningham v. U.S. Navy*, 813 F.2d 1236, 1242 (D.C. Cir. 1987) (plaintiff's burden to prove that "the government's actions, when considered in their context, were intentional or willful.") (citation modified). Indeed, in its reply, the United States asserts that the conduct in question is measured on a continuum. *See* Dkt. No. 71 at 2 (quoting *Royal Ins. Co. of Am. v. Sw. Marine*, 194 F.3d 1009, 1015 (9th Cir. 1999). If that is the case, then the United States' assertion only bolsters the conclusion that there is no "bright line" defining "willful" or "intentional" conduct, and that such matters often are not conducive to determination as a matter of law at the pleading stage. Cases cited by the parties do not alter that conclusion. *See, e.g., Covert*, 876 F.2d at 756-67 (affirming judgment and concluding that agency disclosure of employee personnel records to DOJ in violation of Privacy Act was intentional, even though agency complied with its own regulations in making the disclosure); *Laningham*, 813 F.2d at 1243 (affirming judgment for defendant "under these circumstances" where defendant's disclosure of the documents, pursuant to a court order permitting them to do so for completeness to rebut plaintiff's presentation of evidence, cannot "be deemed to be without grounds for believing its actions to be lawful."); *Jackson v. Kennedy*, No. 25-1750 (BAH), 2026 WL 172440, at *12-13 (D.D.C. Jan. 22, 2026) (denying motion to dismiss Privacy Act claim where parties offered competing interpretations of

facts as alleged by plaintiffs); *Kelley v. Fed. Bureau of Investigation*, 67 F. Supp. 3d 240, 247, 258-59 (D.D.C. 2014) (dismissing portions of Privacy Act claim based on conclusory allegations, but denying motion to dismiss Privacy Act claim where plaintiffs alleged facts sufficient "to overcome the low threshold at the motion to dismiss stage" regarding defendant's disclosure of information to the media); *Stafford*, 437 F. Supp. 2d at 1121-22 (denying summary judgment where "some facts might support a finding of willfulness, others indicate only negligence.").

Viewing the facts in the light most favorable to plaintiffs, and drawing all reasonable inferences in their favor, as is required at this stage of the proceedings, the Court finds that plaintiffs have sufficiently pled facts plausibly supporting their claim that DOJ willfully or intentionally violated their rights under the Privacy Act. While the United States maintains that the mere presence of an error or mistake is not indicative of an intentional Privacy Act violation, the Court need not adopt the government's characterization of plaintiffs' allegations. In essence, plaintiffs allege that the DOJ's disclosure of the subject materials was a "deliberate policy choice" to prioritize DOJ's obligations under the EFTA over its obligations and victims' rights under the Privacy Act. *See* Dkt. No. 16 ¶¶ 44, 46-48, 51-53. For pleading purposes, those allegations appear plausible, and are not inconsistent with the United States' assertion that DOJ was faced with a "herculean task" to accomplish within "an impossible-to-execute time frame." Dkt. No. 59 at 5, 14. Plaintiffs may prevail on their Privacy Act claim. However, at this stage of the litigation, plaintiffs' allegations that the DOJ made a deliberate decision, as a matter of policy, to give priority to its obligations under the EFTA ahead of those under the Privacy Act, are sufficient to support a plausible claim for relief.

To the extent the United States argues that the "presumption of regularity" supports dismissal of plaintiffs' Privacy Act claim, *see* Dkt. No. 59 at 13, the Court disagrees. The "presumption of regularity" doctrine "supports the official acts of public officers, and, in the absence of clear evidence to the contrary, courts presume that they have properly discharged their official duties." *United States v. Chem. Found.*, 272 U.S. 1, 14-15 (1926). Even assuming this doctrine properly applies to circumstances presented here, for the reasons discussed above, the Court finds that plaintiffs have, at least for pleading purposes, stated sufficient facts supporting a

plausible claim that the DOJ did not properly discharge its duties in connection with the release of files concerning Mr. Epstein.

Accordingly, the United States' motion to dismiss is denied.

## IV. CONCLUSION

For the reasons discussed above, the United States' motion to dismiss the FAC is denied.

**IT IS SO ORDERED.**

Dated: November 24, 2026

Virginia K. DeMarchi

VIRGINIA K. DEMARCHI
United States Magistrate Judge

United States District Court
Northern District of California